1

**Marquis & Aurbach**
John M. Sacco, Esq.

2  Nevada Bar No. 001585
Frank M. Flansburg III, Esq.

3  Nevada State Bar No. 006974
10001 Park Run Drive

4  Las Vegas, Nevada 89145
(702) 382-0711

5  Attorneys for Defendants
SOUTHERN HIGHLANDS/CHRISTOPHER HOMES, LLC

6  and CHRISTOPHER STUHMER

**ORIGINAL**

7

## UNITED STATES DISTRICT COURT

8

## DISTRICT OF NEVADA

9

10  STEVEN FERGUSON,

Case No. CV-S-05-0103 JCM-PAL

Plaintiff,

11

vs.

**MOTION FOR DISMISSAL/SUMMARY
JUDGMENT**

12

13  SOUTHERN HIGHLANDS GOLF CLUB,
LLC, SOUTHERN

14  HIGHLANDS/CHRISTOPHER HOMES,
LLC, Nevada Limited Liability Companies,

15  CHRISTOPHER COMMUNITIES AT
SOUTHERN HIGHLANDS GOLF CLUB

16  HOMEOWNERS ASSOCIATION, THE
ESTATE AT SOUTHERN HIGHLANDS

17  GOLF CLUB COMMUNITY
ASSOCIATION; SOUTHERN

18  HIGHLANDS COMMUNITY
ASSOCIATION; GARRY GOETT an

19  individual; CHRISTOPHER STUHMER, an
individual; and JAY BECKMAN, an

20  individual,

21  Defendants.

22

23

24

25

26

27

28

*MARQUIS & AURBACH*
*10001 Park Run Drive*
*Las Vegas, Nevada 89145*
*702-382-0711  FAX: 382-5816*

M&A:02213-020 304961.1 0404051052

36



I. **INTRODUCTION**.

While Ferguson labors to sustain baseless allegations like Sisyphus pushes rocks,[1] this Court should not legitimize Ferguson's unsupported claims.  Each of Ferguson's 12 Causes of Action against Southern Highlands/Christopher Homes I ("SHCH") and Christopher Stuhmer ("Stuhmer") should be dismissed:

- Ferguson cannot sustain any Fair Housing Act claim because SHCH actually *entered into a contract* to sell the property to Ferguson; SHCH *actually sold* the Property according to the Contract with Ferguson; any claim would have arisen over three years ago *beyond the statute of limitations*; Ferguson's *allegations against the Golf Club* do not impact SHCH  or Stuhmer; all of Ferguson's requested *repairs were made* to the Property over an 18 month period; and there is *no evidence of coercion*, intimidation, or threats against Ferguson by SHCH  or Stuhmer;

- Ferguson cannot sustain a claim for a breach of the covenant of quiet enjoyment because the covenant of quiet enjoyment is only recognized *between a lessor and lessee*; there is *no covenant of quiet enjoyment* implied in the sale of real property pursuant to NRS 111.170; and there is *no lessor/lessee relationship* between Ferguson and SHCH  or Stuhmer.

- Ferguson has failed to state a claim for intentional infliction of emotional distress because Ferguson has *not suffered any severe emotional distress*; Ferguson has *not suffered any physical impact* of any alleged emotional distress; and the alleged *failure to make repairs does not rise to the level of extreme and outrageous conduct.*

- Ferguson's breach of contract claims are without merit because Ferguson has *no contract whatsoever with Stuhmer*; SHCH *sold the Property* in accordance with the Contract; and SHCH made *18 months of repairs* pursuant to the Contract.

- Ferguson has not stated a claim for the breach of the implied covenant of good faith and fair dealing because Ferguson has *no contract with Stuhmer* whatsoever; SHCH *sold the Property* pursuant to the terms of the Contract; and SHCH performed in the spirit of the Contract by *continuing to make repairs to the Property beyond the one-year limited warranty*.

- Ferguson cannot state an independent cause of action for punitive damages because *punitive damages are a remedy* and not an independent cause of action.

- Ferguson's claim for fraud against SHCH should be dismissed because Ferguson has not stated any claims of fraud with *any particularity* and Ferguson cannot sustain the burden of proving fraud *by clear and convincing evidence*.

Taken together, Ferguson's baseless allegations that he has labored to push upon this Court are not supported and will roll back against Ferguson.

---

[1] According to Greek mythology, Sisyphus was condemned by the Gods to spend an eternity pushing boulders uphill, only to have the boulders roll back down the hill as a result of their own insurmountable weight.

M&A:02213-020 304961.1 0404051052

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711  FAX: 382-5816

## II.   THE UNDISPUTED FACTS.[2]

Ferguson has filed a Complaint and an Amended Complaint against several defendants including Christopher Stuhmer ("Stuhmer") and Southern Highlands/Christopher Homes, LLC ("SHCH"). Compl. and First Am. Compl.[3] Notwithstanding the several claims against SHCH and Stuhmer, the issues raised in court are more directed at other parties in the litigation, particularly Southern Highlands Golf Club, LLC and Garry Goett. Pl.'s Mot. For T.R.O. Careful review of the facts and Ferguson's claims in his Complaint require the filing of this Motion. Compl. and First Am. Compl.

### A.   THE SALE OF THE HOME TO FERGUSON.

On December 4, 2001, Ferguson contracted with SHCH to purchase 12047 Oakland Hills Drive (the "Property"). Exhibit 1, 480-488. On each page of the Offer and Acceptance Agreement and Earnest Money Receipt (the "Contract"), Ferguson and a representative for SHCH initialed each page and various paragraphs showing their agreement to its terms. Id. On the signature page, Ferguson signed in his individual capacity and the Executive Vice President (Katherine S. Foley) signed on behalf of Christopher Homes, LLC as the manager for SHCH, LLC. Exhibit 1 at 488. The nine page Contract (and attachments) constituted the entire integrated agreement between Ferguson and SHCH. Exhibit 1 at 487, ¶ 34.[4]

#### 1.   The Warranty Terms.

Consistent with the Contract, SHCH made certain limited warranties concerning the Property to Ferguson. Exhibit 1 at 484, ¶ 24. In text that was emphasized with all capitals to set it apart from other text in the Contract, SHCH described in detail the limits and scope of the warranty being provided to Ferguson concerning the Property. Id.

---

[2] Each fact is cited to a specific document pursuant to LR 56.

[3] Although the Complaint does not specify which Southern Highlands/Christopher Homes entity is the defendant, it is presumed that Ferguson intended to name SHCH, which is the entity that contracted with Ferguson. The Offer and Acceptance Agreement showing the parties to the transaction bearing bate stamps 480 through 488 is attached as **Exhibit 1**.

[4] The Contract also included the Option Selection Policy and Option Feature Price Addendums executed subsequent to the original Contract.

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711  FAX: 382-5816

M&A:02213-020 304961.1 0406051136

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711   FAX: 382-5816

1   Seller shall provide *a limited warranty on the residence*, pursuant to which, Seller
2   warrants that *for the period of one year following the date of the close of escrow* of the residential unit, *Seller shall repair any constructional defect that materially and adversely affects the value or use of the residential unit*, not including minor defects,
3   provided, however, that such defect is promptly identified by written notice from Buyer to Seller, and subject to Buyer providing reasonable access for the repair
4   thereof. Exhibit 1, 484 at ¶ 24 [Emphasis of Caps omitted and other emphasis added].

5   Thus, SHCH warranted to Ferguson that it would provide a one year limited warranty on the Property

6   for any defects that would materially and adversely effect the property. Id.

7   The warranty, however, had its limitations. Id. In addition to excluding warranties for wear

8   and tear, SHCH made certain limitations abundantly clear.

9   Sellers warranty shall in no event extend to: (a) *any tree or plant installed by Seller*;
10   (b) structural or cosmetic damage caused by sprinkler over spray or over watering; (c) damage to pipes and fittings, or leaks in the sprinkler system, caused by maintenance
11   or traffic; and/or (d) frost damage or frozen pipes and sprinkler systems. Id. [Emphasis of caps omitted and other emphasis added].

12   In addition to specifically excluding certain warranties, SHCH expressly disclaimed *and Ferguson*

13   *expressly waived* all other representations and warranties, express or implied. Id.

14   **2.    The Representations Concerning Southern Highlands Golf Club.**

15   As a condition to the sale of the Property to Ferguson, it was a condition that Ferguson be

16   accepted for a golf and social membership at Southern Highlands Golf Club. Exhibit 1, 487, ¶ 37.

17   To that end, Ferguson was relieved of his obligation to purchase the Property if he was not accepted

18   into the Golf Club. Id. While being accepted into the Southern Highlands Golf Club was a condition,

19   the Contract specifically distinguished SHCH's role from the Southern Highlands Golf Club. Exhibit

20   1, 485-486.

21   In fact, Ferguson made several representations acknowledging that Southern Highlands Golf

22   Club was not owned, operated, influenced, governed, controlled, or otherwise directed by SHCH.

23   Exhibit 1, 485-486, ¶29.

24   Buyer understands that Southern Highlands Golf Club (the Golf Course) is a privately
25   owned golf club, *sole and separate from* both the Southern Highlands Community Association and the Christopher Communities At Southern Highlands Golf Club Homeowners Association and is *owned by a separate and distinct entity from the*
26   *Seller*. Id. [Emphasis added].

27   Buyer further understands and acknowledges that *property ownership* at The Christopher Collection at Southern Highlands Golf Club *does not entitle Buyer*
28   access to the use of any Golf Course club facilities, nor does property ownership

M&A:02213-020 304961.1 0404051052

MARQUS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711  FAX: 382-5816

1  entitle Buyer to join the Golf Course or golf club, excepting such certain limited
2  instances where Seller may have offered in writing to the Buyer the right to apply for
certain limited rights to access limited clubhouse facilities at the Golf Course
3  clubhouse as a Asocial [sic] user thereof (social membership) where the Seller has
agreed to provide Buyer with certain incentives upon acceptance by the Golf Course
4  of any such membership application. *Id.* [Emphasis added].

5  Buyer further acknowledges and understands that the ***purchase of the Property does
not guaranty, vest in Buyer*** or otherwise cause to create in the Buyer any right to use
6  the Golf Course except in connection with a social membership, if applicable, and ***if
the Buyer is accepted***. Id. [Emphasis added].

7  Further, no property owner, including the Buyer, shall acquire any interest in the Golf
Course by virtue of taking title to the property in The Christopher Collection at the
8  Southern Highlands Golf Club. Id.

9  Buyer specifically acknowledges and understands that the ***Seller does not own the
Golf Course***, and therefore, the Seller cannot control whether the Golf Course will in
10  fact always be a Golf Course or used for Golf Course purposes. Id. [Emphasis added].

11  In this regard, Buyer acknowledges and understands that ***neither the Seller***, any sales
representative of Seller or anyone claiming to act or acting on behalf of Seller is
12  authorized to ***make any representation on behalf of the Seller*** regarding the use or
***continued use of the Golf Course***. Id. [Emphasis added].

13  Therefore, the Contract made it abundantly clear that SHCH is in no way in control of the Golf

14  Course, its membership, or a member's continued membership. Id.

15
16  ### 3.   Ferguson's Other Acknowledgments About the Southern Highlands Golf Club.

17  In addition to signing the Contract, Ferguson affirmed his agreement and acknowledgment

18  concerning the autonomy of the Golf Club in several attachments to the Contract. Exhibit 1, 487.

19  Indeed, by initialing each attachment, Ferguson represented that he had thoroughly read the

20  attachments and approved of their contents. Id.

21  ### a.   The Public Offering Statement.

22  Ferguson initialed that he had read and agreed to the Public Offering Statement. Exhibit 1,

23  487.[5]  Within the Public Offering Statement, Ferguson initialed certain facts concerning the Golf

24  Course:

25  The Golf Course/Golf Club/Health Club (collectively "Golf Course") is NOT A
PART of the Common Elements of Shared Common Elements, and NOT A PART
26  OF THIS COMMUNITY. **NEITHER MEMBERSHIP IN THE COMMUNITY
ASSOCIATION NOR OWNERSHIP OR OCCUPANCY OF A UNIT SHALL**

27
28

---

[5]The Public Offering Statement bate stamped 503-519 is attached as **Exhibit 2**.

M&A:02213-020 304961.1 0404051052

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711  FAX: 382-5816

1  |  **CONFER ANY MEMBERSHIP, OWNERSHIP, OR ANY OTHER INTEREST IN OR RIGHT TO USE THE GOLF COURSE (EXCEPT ONLY IN THE EVENT AND TO THE EXTENT, IF ANY, SPECIFICALLY SET FORTH IN WRITING SIGNED BY THE GOLF COURSE OWNER).** The Golf Course is owned by a separate entity, and neither Declarant nor Master Declarant can make any representation that the Golf Course will always be a golf course or used for golf course purposes. No sales person, agent, employee or other individual is authorized to make any representation on behalf of Declarant or Master Declarant regarding these matters.  Exhibit 2 at 511 [emphasis in original].

Ferguson initialed not only that he had read the attachment but also initialed the page on which the disclosures were contained.  Id.

### b.      The Home Buyer's Notice.

In addition, Ferguson also initialed that he had read and agreed to the Southern Highlands Home Buyer's Notice.  Exhibit 1, 487.[6]  Within the Southern Highlands Home Buyer's Notice, Ferguson again acknowledged certain disclosures concerning the Southern Highlands Golf Club. Exhibit 3 at 525, ¶ 9.

Southern Highlands Golf Club is located generally within The Enclave area; however, Southern Highlands Golf Club is not an amenity of The Enclave area nor an amenity for the Community in general.  Southern Highlands Golf Club is a private 18-hole golf, dining, and health facility club.  *Neither the purchase of a home or homesite within Southern Highlands shall provide the purchaser with any rights or privileges to become a member of Southern Highlands Golf Club,* to play golf on the Southern Highlands Golf Club course or use any other facility inhering to Southern Highlands Golf Club, *except the right to apply for membership on the same basis as all other unsolicited membership candidates.*  Purchasers of homes or homesites in The Enclave will have their property subject to the Enclave Declaration which contain various additional covenants and specific disclosures, waivers and disclaimers concerning the Golf Club as more fully set forth therein.  Id. [Emphasis added].

SHDC does not own the Golf Club, therefore, SHDC *cannot control that the Golf Club* will, in fact, always be a golf course or used for golf course purposes.  No sales person, agent, employee or other individual is authorized to make any representation on behalf of SHDC regarding the use, or continued use of the Golf Club as a golf course.  Purchasers of homes or homesites in The Enclave should carefully consider the foregoing when contemplating the purchase or construction of the home or homesite in such area. Exhibit 3, 525-526, ¶ 9. [Emphasis added].

As such, Ferguson again acknowledged that the Golf Course entity was its own separate entity. Id.

---

[6]The Southern Highlands Home Buyer's Notice bate stamped 521-531 is attached as **Exhibit 3**.

M&A:02213-020 304961.1 0404051052

c.     **Christopher Communities Public Offering Statement.**

Once again, Ferguson acknowledged certain limitations concerning the golf course in Christopher Communities' Public Offering Statement. Exhibit 1, 487.[7]

> Golf Course Use and Access. A private 18 hole golf course, dining and private club, and related improvements and facilities, known as the Southern Highlands Golf Club (all collectively the "Golf Course") is or may be shown in the master plan of Southern Highlands, but the Golf Course is NOT A PART of the Southern Highlands Master Community and is NOT A PART of the Master Association Property. Neither ownership of property within the CHRISTOPHER COMMUNITIES nor membership in The Christopher Communities at Southern Highlands Golf Club Homeowners Association or the Southern Highlands Community Association will entitle any Owner or Resident to any use or ownership interest in the Golf Course or its related facilities. Further there is no assurance that the Golf Course always will be owned by its present owner or always will be used as a golf course. In the future, it is possible that the Golf Course may be conveyed to other owner(s) and its use may be changed to a use other than a golf course. Exhibit 4. [Emphasis in original].

Like the other documents, Ferguson executed the acknowledgment of the Golf Course use and access. Id.

Taken together, SHCH made it overwhelmingly clear to Ferguson that it had no control or ownership interest in the Golf Course. Exhibits 1, 2, 3 and 4. In addition to SHCH's representations, Ferguson agreed and acknowledged that (by initialing and signing the Contract and its attachments) SHCH had no control or ownership over the Golf Course. Id.

**B.     THE REPAIRS TO FERGUSON'S HOME PURSUANT TO THE WARRANTY.**

SHCH made a limited warranty to Ferguson concerning the Property to extend one year from the date of closing. Exhibit 1, 486. Given that Ferguson closed on his home on January 18, 2002, the warranty expired January 18, 2003. Id. Nevertheless, SHCH's Homeowner Service Request List shows that warranty repairs were being made to Ferguson's property well into June 2003. Exhibit 5.[8]

**1.     The Homeowner Service Request List.**

The Homeowner Service Request List identifies ***all the repairs requested by Ferguson***, the description of the repairs, and ***the date the repairs were completed***. Exhibit 5. The following table

---

[7] The Christopher Community Southern Highlands Golf Club's Public Offering Statement bate stamped 534 is attached as **Exhibit 4.**

[8] The Homeowner's Service Request List is attached as **Exhibit 5** and bates stamped 1-14.

M&A.02213-020 304961 1 0404051052

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711   FAX: 382-5816

summarizes the Homeowner Service Request List.  Exhibit 5.

| Request No. | Description | Request Date | Completion Date |
|---|---|---|---|
| 17515 | Tile, door hardware, HVAC, and electrical | 2-12-02 | 2-15-02 |
| 17584 | Miscellaneous | 3-4-02 | 3-8-02 |
| 17631 | Electrical, painted surface, plumbing | 3-12-02 | 3-21-02 |
| 17701 | Plumbing | 4-1-02 | 4-5-02 |
| 17725 | Electrical, plumbing, painted surface, painted surface, electrical, doors/hardware | 4-5-02 | 4-12-02 |
| 17863 | painted surface, electrical, doors/hardware | 5-8-02 | 5-10-02 |
| 17934 | Ceramic/marble floors, plumbing, roof leaks | 5-24-02 | 5-31-02 |
| 17979 | Ceramic/marble floors, plumbing | 6-7-02 | 6-14-02 |
| 18169 | Plumbing | 7-29-02 | 8-8-02 |
| 18261 | Electrical | 8-27-02 | 8-30-02 |
| 18320 | HVAC | 9-3-02 | 9-20-02 |
| 18468 | Fireplace, roofing/sky light | 10-23-02 | 10-25-02 |
| 18468 | Drywall | 10-23-02 | 10-25-02 |
| 18605 | Plumbing | 11-27-02 | 12-6-02 |
| 18787 | Plumbing, door/hardware, fireplace, cabinets, stucco, siding, painted surface | 1-23-03 | 1-31-03 |
| 18888 | Plumbing, door/hardware, painted surface, cabinet | 2-26-03 | 3-7-03 |
| 18922 | Plumbing | 3-7-03 | 3-24-03 |
| 18949 | Plumbing | 3-25-03 | 4-7-03 |
| 19002 | Plumbing, grout/caulk | 4-9-03 | 4-14-03 |
| 19068 | Plumbing | 4-28-03 | 4-28-03 |
| 19104 | Plumbing | 5-8-03 | 5-16-03 |
| 19206 | Electrical | 6-12-03 | 7-3-03 |

Therefore, according to the Homeowner Service Request List, warranty repairs were made to the Property at Ferguson's request nearly every month for a year and a half.  Id.

M&A/02213-020 304961-1 0407051354

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711   FAX: 382-5816

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 891 45
702-382-0711  FAX: 382-5816

2.    **Ferguson's Continued Complaints.**

As late as April 1, 2003, Ferguson continued making complaints concerning repairs at the Property and sent a letter directed to Stuhmer. Exhibit 6. In Ferguson's letter, he suggested that he had left messages for Stuhmer and still had issues to be resolved at the Property. Id.[9] On April 7, 2003, Brad Martin, Director of Construction, responded to Ferguson. Exhibit 7.[10] Martin responded that after reviewing Ferguson's file, *there were no other repair items open other than replacing a palm tree*. Id.[11] Further, Martin suggested that if there were other issues that had not been resolved, Ferguson should place them in writing and direct them to the Customer Service Department. Id.

C.    **FERGUSON'S LAWSUITS.**

After voluntarily dismissing the state court action, Ferguson filed a Complaint followed by an Amended Complaint with this court. Compl., First Am. Compl. The Complaint and Amended Complaint allege several claims against Stuhmer and SHCH. Id.

1.    **The Complaint.**

Supported by 30 general allegations, Ferguson asserted seven causes of action against all defendants. Compl. Ferguson represented that he was subjected to a pattern and practice of racial discrimination perpetrated and ostensibly condoned by the defendants. Compl., ¶ 19. Although Ferguson referenced an obviously offensive poster placed on his door, Ferguson did not claim that any of the defendants were responsible for posting the poster, and only alleged that he brought the poster to the attention of Garry Goett. Compl., ¶¶ 20-21. While Ferguson further referenced to a racially hostile living environment, the only allegation unrelated to the Golf Course, was the alleged refusal to perform repairs Ferguson's property. Compl., ¶ 24(e).

On those allegations alone, Ferguson made seven claims for relief against SHCH and Stuhmer individually: (1) Federal Fair Housing Act Violations; (2) Breach of the Covenant of Quiet

---

[9]Ferguson's letter was copied to Johnnie L. Cochran, Esq. as well as Gerry Gillock, Esq.

[10]Brad Martin's correspondence to Ferguson is attached as **Exhibit 7**.

[11]Trees planted by Sellers were *specifically excluded from the warranty*. Exhibit 1, 484, ¶ 24.

M&A:02213-020 304961.1 0404051052

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711   FAX: 382-5816

1  Enjoyment; (3) Intentional Infliction of Emotional Distress; (4) Breach of Contract; (5) Breach of

2  Good Faith and Fair Dealing; (6) Punitive Damages; and (7) Attorney's Fees. Compl.

### 2.    The Request for Clarification.

4    Following the Court's injunction hearing where Ferguson's allegations seemed to focus upon

5  the Golf Club, SHCH and Stuhmer's counsel contacted Ferguson's counsel *requesting clarification*

6  *of the Complaint.* Exhibit 8.[12] In the request, it was suggested that it was unclear what Ferguson was

7  alleging against SHCH and Stuhmer individually. Id. In fact, it was represented that there appeared

8  to be no allegations addressing any wrongdoing as a result of Stuhmer's actions or omissions. Id.

9  Working toward the court's stated goal of distilling the proper parties to the lawsuit, it was requested

10  that Ferguson consider clarifying the allegations and perhaps not including Stuhmer (since there were

11  no allegations directly against Stuhmer). Id.

### 3.    Ferguson's Amended Complaint.

13    The Amended Complaint was filed by Ferguson on February 25, 2005. First Am. Compl.[13]

14  In the First Am. Compl., Ferguson alleged 12 causes of action supported by 30 general allegations.

15  First Am. Compl. The only apparent difference between the First Amended Complaint and the

16  Complaint's first 30 allegations is that the refusal to perform the repairs are alleged specifically

17  against Stuhmer. First Am. Compl., ¶24(e).

18    With *no significant change in the general allegations*, Ferguson drafted *additional claims*

19  against SHCH, Ferguson alleged the following causes of action: (1) Federal Fair Housing Act

20  Violations; (2) Breach of Covenant of Quiet Enjoyment; (3) Breach of Contract; (4) Breach of

21  Covenant of Good Faith and Fair Dealing; (5) Punitive Damages; (6) Attorney's Fees; (7) Breach of

22  Contract; (8) Fraud; and (9) Violation of 42 U.S.C. §3617. Against Stuhmer individually, Ferguson

23  alleged the following causes of action: (1) Federal Fair Housing Act Violations; (2) Breach of

24  Covenant of Quiet Enjoyment; (3) Intentional Infliction of Emotional Distress; (4) Punitive Damages;

25

26

27

28

[12] Correspondence of counsel to Ferguson's counsel is attached as **Exhibit 8**.

[13] The First Amended Complaint, Complaint and Summons were served on March 14, 2005.

M&A:02213-020 304961.1 0406051136

(5) Attorney's Fees; (6) Breach of Contract; (7) Breach of Covenant of Good Faith and Fair Dealing; (8) Fraud; and (9) Violation of 42 U.S.C. §3617.  First Am. Compl.

## III.  ARGUMENT.

Ferguson's claims cannot survive dismissal and/or summary judgment.  This Court may dismiss Plaintiff's Complaint if "it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001) [Emphasis added].  While all material allegations of the complaint are accepted as true, "*[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim*." Cahil v. Liberty Mt. Ins. Co., 80 F.3d 335, 338 (9th Cir. 1996); In re Verifone Sec. Litig., 11 F.3d 865, 868 (9th Cir. 1993) [Emphasis added].

"Summary judgment procedure is properly regarded not as a disfavored procedural short cut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555 (1986). "[I]f the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," summary judgment is proper.  F.R.C.P. 56.  Initially, the moving party for summary judgment has the burden of showing the absence of a genuine issue of material fact.  Adickes v. S.H. Cress & Co., 398 U.S. 144, 90 S.Ct. 1598 (1970).  Once the moving party has met its burden, *the burden shifts to the respondent to set forth specific facts* demonstrating that there is a genuine issue of material fact or trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986).  Although facts and inferences are viewed in a light most favorable to the responding party, *the responding party cannot stand on their pleadings* and must demonstrate that there is a material issue of fact. Poller v. CBS, Inc., 368 U.S. 464, 82 S.Ct. 486 (1962); Admiralty Fund v. Hugh Johnson & Co., Inc., 677 F.2d 1301, 1305 (9th Cir. 1982).

MARQUS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711  FAX: 382-5816

M&A:02213-020 304961 1 0404051052

**MARQUIS & AURBACH**
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711  FAX: 382-5816

1     In this case, dismissal[14] and/or summary judgment[15] is appropriate on each of Ferguson's

2 claims against  SHCH and Stuhmer individually.  First, given the sale of the Property without

3 incident, no claim can be made for a Fair Housing Act ("FHA") violation, particularly when ***all***

4 ***claims of racial animus are directed elsewhere***. Second, Ferguson's Breach of the Covenant of Quiet

5 Enjoyment is misstated because ***no such covenant is implied***.  Third, there could be no breach of

6 contract when ***there is no contract with Stuhmer individually*** and ***SHCH performed consistent with***

7 ***its Contract*** with Ferguson.  Fourth, there is no Breach of the Covenant of Good Faith and Fair

8 Dealing because Stuhmer has no contract with Ferguson and SHCH always acted in good faith and

9 dealt with Ferguson fairly.  Fifth, Ferguson's claim for Intentional Infliction of Emotion Distress

10 against Stuhmer is improper.  Sixth, ***Punitive Damages are a remedy*** -- not an independent cause of

11 action.   Finally, ***Ferguson's claim for Fraud is unintelligible*** and unsupported by any facts.  Taken

12 together, even at the early stages of the litigation, Ferguson's causes of action against Stuhmer and

13 SHCH should be dismissed.

14     **A.      FERGUSON'S CLAIM FOR VIOLATION OF THE FHA IS UNSUPPORTED.**

15     Ferguson's First and Twelfth Causes of Action assert that all defendants (including Stuhmer

16 and  SHCH) violated §3604 and §3617 of the FHA.  First Am. Compl. ¶¶ 31-33; 65-67.  According

17 to the FHA, it is unlawful to discriminate against any person in the terms, conditions, or privileges

18 of sale or rental of a dwelling, or in the provision of services or facility in connection with such sale

19 or rental because of race or color.  42 U.S.C. §3604(b).  ***Congress intended that the FHA would***

20 ***extirpate the poisonous influence of racial prejudice in the nation's housing market***. Fair Housing

21 Council of Bergen County, Inc., v. Eastern Bergen County MLS, Inc., 422 F.Supp. 1071 (D.C.N.J.

22 1976).

23     To avoid summary judgment under the FHA, the Plaintiff ***must establish a prima facie case***

24 ***of discrimination were pretextual***.  Reynolds v. Quarter Circle Ranch, Inc., 280 F.Supp.2d 1235

25

26     [14]Dismissal of Ferguson's Second, Third, Sixth, Seventh and Twelfth Causes of Action against Stuhmer is appropriate.  Similarly, dismissal of Ferguson's Second, Sixth, Seventh, Tenth, and Twelfth Causes of Action SHCH is

27 appropriate.

28     [15]Summary judgment on Ferguson's First, Eighth, and Ninth Causes of Action against Stuhmer is appropriate.  Similarly, summary judgment on Ferguson's First, Fourth, Fifth, Eighth, and Ninth Causes of Action is appropriate.

M&A:02213-020 304961.1 0404051052

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711   FAX: 382-5816

1   (D.Colo. 2003). Establishing a prima facie case of discrimination and violation of the FHA requires

2   proof of four typical elements: (1) the plaintiff is a *member of protected class*; (2) the plaintiff sought

3   and was *qualified to rent or purchase an apartment or dwelling*; (3) the plaintiff was *denied the*

4   *opportunity* to rent or purchase a dwelling; and (4) the apartment or dwelling *remained available*

5   *thereafter*. Keeney v. Kemper Nat. Ins. Companies, 960 F.Supp. 617 (E.D.N.Y. 1997); Secretary,

6   U.S. Dept. of Housing and Urban Development, on Behalf of Herron v. Blackwell, 908 F.2d 864 (11th

7   Cir. 1990) (acknowledging a prima facie case required proof of the same four elements); Asbury v.

8   Broughman, 866 F.2d 1276 (10th Cir. 1989) (recognizing that a prima facie case required proof of all

9   four elements); Robinson v. City of Friendswood, 890 F.Supp. 616 (S.D. Tex 1995) (concluding that

10  a prima facie case of discrimination means *the plaintiff must prove that the challenged practice*

11  *actually or predictably results in discrimination*). Equally as significant, *the FHA Plaintiff has*

12  *the initial burden of proof* to prove a prima facie case of discrimination by a preponderance of the

13  evidence. Id.; Radecki v. Joura, 114 F.3d 115 (8th Cir. 1997).

14       Here, Ferguson cannot prove a prima facie case of discrimination in the sale of housing

15  against SHCH or Stuhmer. Specifically in contrast to the wrongs that §3604 was enacted to combat

16  against, *SHCH entered into the Contract with Ferguson and sold him the Property*. While

17  Ferguson purchased the Property from SHCH, Stuhmer is neither the manager of SHCH nor the

18  manager of the managing company (Christopher Homes, LLC). Moreover, there is no evidence of

19  intimidation that would violate §3617 of the FHA. Taken together, Ferguson is unable to provide a

20  prima facie case, requiring that his First and Twelfth Causes of Action be dismissed against SHCH

21  and Stuhmer individually.

22       **1.**       **Ferguson Has Failed to Establish a Prima Facie Case That SHCH
                       Violated §3604(b).**

23

24       Unlike most cases brought under §3604 of the FHA, Ferguson cannot claim that SHCH

    discriminated against him in selling him the Property. It is without doubt that Ferguson contracted

25  with SHCH to purchase the Property. Exhibit 1. *It is also undisputed that SHCH sold the Property*

26  *according to the Contract*.

27

28

**MARQUIS & AURBACH**
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711   FAX: 382-5816

1       **a.      Any Claim Concerning Purchase of the Property is Time Barred.**

2       Even if Ferguson were making a claim that there was discrimination in the sale of the

3   Property, ***the sale of the Property occurred December 4, 2001 – over three years before this lawsuit***

4   ***was filed***. Claims under the FHA must be initiated "not later than 2 years after the occurrence or the

5   termination of an alleged discriminatory housing practice." 42 U.S.C. §3613(a)(1)(A). Given that

6   the Property was sold 3 years and 1 month before the instant complaint was filed, a claim concerning

7   the sale of the Property is time barred.

8       **b.      Ferguson's Claims Against the Golf Club Do Not Impact SHCH.**

9       Although Ferguson raises several allegations concerning his treatment at the Golf Club and

10  his continued membership at the Golf Club, ***the Southern Highlands Golf Club is distinct and***

11  ***separate from SHCH***. Exhibit 1, 485-486, ¶ 29. Indeed, ***Ferguson acknowledged the distinction***

12  between SHCH and the Golf Club ***on nearly a half a dozen occasions*** – Exhibit 1, 485-486; Exhibit

13  1, 487; Exhibit 2 at 511; Exhibit 3 at 525; Exhibit 4.

14      **c.      Repairs Were Made to the Property in Accordance with the Contract.**

15

16      Ferguson cannot establish a prima facie case that repairs were not made to the Property in

17  accordance with the Contract. Exhibit 1, 484 at ¶ 24. Like all other contracts with SHCH provide,

    Ferguson's Contract provided a one-year limited warranty on repairs at the Property. Id. Given the

18  log of repairs for the Property, there can be no disputing that ***SHCH made monthly repairs to the***

19  ***Property at Ferguson's request***. Exhibit 5. In fact, the repairs by SHCH went above and beyond

20  the one year warranty, extending into June 12, 2003 – ***18 months of repairs***. Id.

21

22      **2.      Ferguson Cannot State a Prima Facie Case for Violation of §3604 of the**
        **FHA Against Stuhmer.**

23      It is hard to conceive of any set of facts in which Stuhmer allegedly violated § 3604 of the

24  FHA. Exhibit 1. ***Ferguson neither contracted with Stuhmer to purchase the Property nor to***

25  ***provide any services in connection with the sale of the Property***. In fact, the only allegation

26  Ferguson has made against Stuhmer is that Stuhmer allegedly failed to make repairs to the Property.

27  First Am. Compl. ¶ 24(e). In reality, however, ***Stuhmer had no contractual obligation to make***

28

1    *repairs to Ferguson's Property*.  Exhibit 1, 484, ¶ 24.  Besides, Ferguson's allegation omits the fact

2    that monthly repairs were made to Ferguson's Property by SHCH for nearly 18 months.  Exhibit 5.

### 3.    Ferguson Has Failed to Sustain a Prima Facie Case for Violation of §3617 of the FHA.

The FHA makes it unlawful to coerce, intimidate, threaten, or interfere with any person from

the exercise or enjoyment of any right granted or protected by §3604 of the FHA.  42 U.S.C. 3617.

To interfere in violation of §3617, the discriminary conduct *must be so severe or pervasive* that it has

the effect of *causing the protected person to abandon the exercise of his housing rights*.  Gorlay

v. Forest Lake Estate Civic Ass'n. of Port Richey, Inc., 276 F.Supp.2d 1222 (M.D.Fla. 2003).

Moreover, the words 'coerce,' 'intimidate,' and 'threaten' require either *violent* conduct or

*threatening* conduct.  Id.  Similarly, intimidation for the purpose of the FHA requires a showing that

a defendant's activities *generated genuine fear in the Plaintiff*.  Walker v. City of Lakewood, 272

F.3d 1114 (9th Cir. 2001). Perhaps most important, *individuals cannot be liable under the FHA for*

*failing to stop individual racially motivated harassment following the purchase of the Property*.

Lawrence v. Courtyards at Deerwood Ass'n, Inc., 318 F.Supp.2d 1133 (S.D. Fla. 2004) (concluding

that a homeowner's association and property manager *could not be liable for failing to stop*

*neighbor's alleged racially motivated harassment* against African-American homeowners after

homeowners purchased their home).

In this case, Ferguson once again cannot state a prima facie case for violating §3617 of the

FHA.  Since *Ferguson executed the Contract and purchased the Property* from SHCH, there was

no intimidation or interference connected with the sale of the Property.  Exhibit 1.  Moreover, because

*SHCH made 18 months of repairs* to the Property pursuant to the Contract, Ferguson cannot claim

that SHCH and Stuhmer interfered or intimidated Ferguson into not requesting repairs.  Exhibit 5.

### B.    NO COVENANT OF QUIET ENJOYMENT IS IMPLIED IN A GRANT, BARGAIN AND SALE DEED.

For over half a century, Nevada law has been clear – "the covenant of quiet enjoyment

generally is interpreted to secure the *lessee* against the acts or hindrances of the *lessor* and thus

requires the *lessor* refrain from voluntarily impairing the character and value of the *leased premises*."

Ripps v. Kline, 70 Nev. 510, 275 P.2d 381 (1954) [emphasis added].  Moreover, the Nevada

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711  FAX: 382-5816

M&A:02213-020 304961.1 0404051052

1  legislature was specific in limiting the number of warranties to be implied in a conveyance of real

2  property. NRS 111.170.1.

3      The words "grant, bargain and sell" in all conveyances made after December 2, 1861,
       in and by which any estate of inheritance or fee simple is to be passed, shall, unless
4      restrained by express terms contained in such conveyances, be construed to be *the*
       *following express covenants, and none other* on the part of the grantor, for himself
5      and his heirs to the grantee, his heirs, and assigns:
       (a) That previous to the time of the execution of the conveyance the grantor has not
6      conveyed the same property, or any right, title or interest therein, to any person other
       than grantee.
7      (b) That the real property is at the time of the execution of the conveyance, free from
       encumbrances, done, made or suffered by the grantor or any person claiming under
8      him.

9  NRS 11.170.1(a)-(b). [Emphasis added.]

10 Indeed, the only liability of grantors on a grant, bargain and sale deed is that contained in NRS

11 111.170 (and none other). See Lee v. Goodwin, 39 Nev. 315, 115 P. 934 (1916). Therefore, Nevada

12 law recognizes that the covenant for quiet enjoyment is only implied between lessors and lessees.[16]

13      In this case, Ferguson cannot sustain a claim against SHCH or Stuhmer for the breach of

14 covenant of quiet enjoyment – *no such covenant was implied*. First, it bears repeating that Stuhmer

15 did not enter into any contract with Ferguson – *Stuhmer did not sell Ferguson the Property;*

16 *Stuhmer did not enter into a contract with Ferguson*; and *Stuhmer is not Ferguson's landlord*.

17 To that end, there is no covenant of quiet enjoyment that could be implied to Stuhmer for the benefit

18 of Ferguson. Second, *SHCH sold the Property to Ferguson and no more*. SHCH is *not Ferguson's*

19 *landlord* and Ferguson *is not SHCH's tenant*. Given that there is *no lessor/lessee relationship* and

20 that *no covenant of quiet enjoyment is implied* in the sale of real property pursuant to NRS 111.170,

21 Ferguson's Second Cause of Action for the breach of the covenant of quiet enjoyment is wholly

22 without merit.

23

24

_____

25 [16]Other jurisdictions similarly recognize that a covenant for quiet enjoyment only exists if it was stated in the
covenant itself. See, e.g., Mann v. Zabolotny, 615 N.W. 2d 526, 531, fn 1 (N.D. 2000). In Mann, the North Dakota
26 Supreme Court recognized that the trial court had erred in determining that a covenant of quiet enjoyment was implied
in conveyance of real property. Id. Specifically, the Supreme Court recognized that the North Dakota statute did not
27 require every transfer of real property to include a covenant of quiet enjoyment, but merely provided that if such covenant
was included it would run with the land. Id. Like the Nevada Statutes, the court recognized that only the North Dakota
28 Statutes specified which covenants automatically were implied in a grant of real property, and *a covenant of quiet
enjoyment was not automatically included in such grant*. Id.

M&A:02213-020:304961.1:0404051052

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711  FAX: 382-5816

## C.    NO CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS EXISTS.

Generally, the elements of intentional infliction of emotional distress in Nevada are: (1) *extreme and outrageous conduct* with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's *having suffered severe or extreme emotional distress*, and (3) actual or proximate causation. Star v. Rabello, 97 Nev. 124, 625 P.2d 90 (1981); Switzer v. Rivera, 174 F.Supp.2d 1097 (D. Nev. 2001). The distress suffered must be "so severe and of such intensity that **no reasonable person could be expected to endure it**." Alam v. Reno Hilton Corp., 819 F.Supp. 905, 911 (D. Nev. 1993) [Emphasis added]; Nelson v. City of Las Vegas, 99 Nev. 548, 665 P.2d 1141, 1145 (1983). When there is a failure to establish a prima facie for outrageous conduct, the tort for intentional infliction of emotional distress should properly be dismissed. Maduike v. Agency Rent A Car, 114 Nev. 1, 953 P.2d 24 (1998).

Initially, *it is for the court to determine what the conduct alleged is extreme and outrageous and whether each plaintiff has suffered severe emotional distress.* Id.; Hutton v. General Motors Corp., 775 F.Supp. 1373, 1381 (D. Nev. 1991). "[T]he less extreme the outrage the more appropriate it is to *require evidence of physical injury* or illness from emotional distress." Alam, 819 F.Supp. at 911 [emphasis added]. To withstand summary judgment on a claim of emotional or reckless infliction of emotional distress, a plaintiff must present *affirmative evidence of the emotional distress.* Hutton, 775 F.Supp. at 1381 (granting summary judgment for defendant where plaintiff failed to allege any evidence of severe emotional distress beyond allegation in complaint).

Here, there is no evidence of extreme or outrageous conduct by SHCH or Stuhmer; and there is no evidence that Ferguson has suffered any severe emotional distress. Although Ferguson's complaint makes allegations of racist conduct, none of the racist conduct was alleged to have been perpetrated by SHCH or Stuhmer. Indeed, *the only allegation against Stuhmer was the failure to make repairs to the Property*. First Am. Compl. ¶ 24(e). In and of itself, the failure to make repairs (which is not supported by the evidence) does not amount to extreme and outrageous conduct. Moreover, there is no allegation even suggesting that Ferguson suffered any physical impact. First Am. Compl. Thus, the Third Cause of Action should be dismissed.

M&A:02213-020 304961 1 0404051052

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711  FAX: 382-5816

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711   FAX: 382-5816

**D.   FERGUSON'S MULTIPLE CONTRACTUAL CLAIMS AGAINST SHCH AND STUHMER BOTH FAIL.**

In Nevada, a party must prove seven essential elements to establish a breach of contract claim: (1) the *existence of a valid contract*; (2) a breach of contract (a *failure to render performance* of obligations when due); (3) that the breach, if any, did not excuse performance by the other party; (4) that the alleged breach was not a result of the party's failure to perform as the conditions precedent; (5) damages; (6) the amount of damages can be proved to a reasonable degree of certainty; and (7) the damages were a foreseeable consequence of the particular breach. Dachner v. Union Lead Mining and Smelter Co., 65 Nev. 313, 195 P.2d 208 (1948). Ferguson is without the aid of any facts to show that either Stuhmer or SHCH breached any contract.

**1.   Stuhmer Cannot Breach Contracts that Do Not Exist.**

The first and primary element of any breach of contract claim is the existence of a valid contract. Id. Here, *there is no contract in existence between Ferguson and Stuhmer*. Without any contract between Stuhmer and Ferguson, Ferguson cannot under any set of circumstances sustain a breach of contract claim. The only entity that contracted with Ferguson was SHCH. Without an actual contract, Ferguson's Eighth Cause of Action against Stuhmer for breach of contract should be dismissed.

**2.   SHCH Performed in Accordance with the Contract.**

Although there is one valid Contract between SHCH and Ferguson, Ferguson cannot state a claim for breach by SHCH. Exhibit 1. In fact, *SHCH complied with the Contract*, by *selling the Property* and *honoring the one year limited warranty*. Exhibit 1, 484, ¶ 24. As shown in detail by Exhibit 5, SHCH made *repair after repair to Ferguson's residence for 18 months*. Exhibit 5. From repairing toilets to repainting and repairing the roof, SHCH responded timely and promptly to all repair requests by Ferguson. Id. Therefore, given that Ferguson's Property was repaired in accordance with the warranty provisions of the Contract, *SHCH delivered its performance when due under the Contract*. Taken together, the Fourth and Eighth Causes of Action against SHCH should be dismissed.

M&A:02213-020 304961.1 0404051052

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711   FAX: 382-5816

**E.   THERE HAS BEEN NO BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.**

It is uncontested in Nevada every contract or agreement contains an implied promise of good faith and fair dealing; and, it is clear that no promise has been broken in this case. Hotels Court v. Butch Lewis Production, Inc., 107 Nev. 226, 234, 808 P.2d 919 (1991). While the terms of the contract may be literally complied with, one party may deliberately contravene the intention and spirit of the contract and incur liability for the breach of the covenant of good faith and fair dealing. Id. at 233, 808 P.2d 919. As such, each party impliedly agrees not to do anything to destroy or injure the right of the other to receive the benefits of the contract and must not prevent or hinder performance of the other party. Id. at 234, 808 P.2d 919.

In the present case, there has been no breach of the implied covenant of good faith and fair dealing. First, Stuhmer cannot be held to breach the implied covenant of good faith and fair dealing because *there is no contract in existence between Stuhmer and Ferguson*. Without a the existence of a valid contract between Stuhmer and Ferguson, there is no implied covenant of good faith and fair dealing. Second, while there is a Contract between SHCH and Ferguson, *SHCH performed the Contract in good faith*. No only did SHCH sell the Property as promised by the Contract, SHCH made dozens of repairs on Ferguson's Property over the course of 18 months at Ferguson's request *six months beyond the one year warranty*. Exhibit 5. Therefore, Ferguson's Fifth and Ninth Causes of Action for breach of the implied covenant of good faith and fair dealing against both Stuhmer and SHCH fail.

**F.   THERE IS NO INDEPENDENT CAUSE OF ACTION FOR PUNITIVE DAMAGES.**

Nevada law does not provide for an independent cause of action for punitive damages. NRS 42.005. Rather, punitive damages *are a recoverable remedy* where an underlying tort claim is characterized by aggravating circumstances. See, e.g., Clark v. Lubriz, 113 Nev. 1089, 1098, 944 P.2d 861, 867 (1997) (underlying claim for breach of fiduciary duty); Bigelow v. Bullard, 111 Nev. 1178, 1190, 901 P.2d 630, 637 (1995) (underlying claim of tortious assault and battery). It is a basic legal principle that "there is no cause of action for punitive damages. *Punitive or exemplary damages are remedies* . . . punitive damages are merely incident to a cause of action, and never be

M&A:02213-020 304961.1 0404051052

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711  FAX: 382-5816

1    the basis thereof." Grieves v. Superior Court of Orange County, 157 Cal.App.3d 159, 163-164 (1984)

2    [emphasis added]; Hilliard v. A.H. Robins Co., 148 Cal.App.3d 374, 391 (1983).[17]  Therefore,

3    Ferguson cannot sustain his Sixth Cause of Action for punitive damages against SHCH or Stuhmer.

4    ### G.    FERGUSON'S FRAUD CLAIM AGAINST SOUTHERN HIGHLANDS/ CHRISTOPHER HOMES I SHOULD BE DISMISSED.

5    
6    To prove a fraudulent misrepresentation, Ferguson must prove four essential elements: (1) the

7    defendant made a false representation; (2) the defendant knew or believed that the representation was

8    false or the defendant had an insufficient basis for making the representation; (3) the defendant

9    intended to induce the plaintiff to act or refrain from acting upon the misrepresentation; and (4) that

10   the plaintiff was damaged as a result of the misrepresentation. Barmettler v. Reno Air, Inc., 114 Nev.

11   441, 956 P.2d 1382 (1998). In Nevada, the plaintiff must prove each element of the fraudulent

12   misrepresentation claim by *clear and convincing evidence*.  Id.  Equally as important, for all

13   averments of fraud or mistake, the circumstances constituting fraud *shall be stated with particularity*.

14   Fed.R.Civ.P. 9(b).

15   Here, Ferguson has made *no detailed allegations* against either SHCH concerning fraud – *no*

16   *representations* were identified; *no time* of misrepresentations were identified; *no place* of

17   misrepresentations were identified; *no description* of the misrepresentations were identified; *no*

18   *reliance* by Ferguson was identified; *no identity* of the speaker was set forth; and *no damages* as a

19   result of the alleged mysterious misrepresentations were identified.  Taken together, Ferguson's

20   skeleton Tenth Cause of Action in no way satisfies his obligations to sustain a fraud claim against

21   SHCH.

### IV.    CONCLUSION.

22   Each of Ferguson's causes of action against Stuhmer and SHCH are unsupported by any facts

23   or law.  There is no basis for an FHA claim against SHCH or Stuhmer when Ferguson entered into

24   a Contract to purchase the Property, the Property was sold pursuant to the Contract, and repairs were

---

[17] Although it appears that no Nevada court previously has had an occasion to adopt the published opinion of the principle that punitive damages cannot be alleged as an independent cause of action, the "Nevada statute on punitive damages is a verbatim copy of California's punitive damage statute . . . [Nevada courts] have adhered to the rule of statutory interpretation *where a statute is derived from a sister state, it is presumably adopted with the construction given it by the highest court of the sister state*." Clark, 113 Nev. at 1098, Note 6, 944 P.2d 865 [emphasis added].

M&A:02213-020 304961.1 0404051052

made to the Property in accordance with the Contract. Ferguson's claim for the breach of implied covenant of quiet enjoyment cannot be sustained because he is not a tenant of SHCH or Stuhmer and no such warranty is included in the transfer of real property. Moreover, given that there is no contract between Stuhmer and Ferguson and SHCH complied with the terms of the Contract, there can be no breach of contract claim. Similarly, because there is no contract with Stuhmer specifically, and SHCH went above and beyond the Contract by continuing to make repairs beyond the limited warranty period, Ferguson cannot sustain a claim for breach of the implied covenant of good faith and fair dealing. Given Ferguson's lack of allegations and evidence, Ferguson cannot sustain a claim for intentional infliction of emotional distress. Furthermore, Ferguson's punitive damages cause of action is not supported by law because punitive damages, if ever available, are a remedy. Finally, Ferguson's attempt at asserting fraud against SHCH is unsupported by any evidence or allegations. Consequently, Ferguson's baseless causes of action against SHCH and Stuhmer in his amended complaint should be dismissed.

Dated this 4th day of April, 2005.

Marquis & Aurbach

_____
John M. Sacco, Esq.
Nevada Bar No. 001585
Frank M. Flansburg III, Esq.
Nevada State Bar No. 006974
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711
Attorneys for Defendants
SOUTHERN HIGHLANDS/
CHRISTOPHER HOMES, LLC and
CHRISTOPHER STUHMER

M&A:02213-020 304961.1 0404051119

## AFFIDAVIT OF STEVEN T. HACKNEY

State of Nevada        )
                       )        ss.
County of Clark        )

Steven T. Hackney, manager of Christopher Homes, LLC, being first duly sworn, does depose and say:

1.      I am the manager of Christopher Homes, LLC, which is the manager of Southern Highlands/Christopher Homes I, LLC.  As the manager of Christopher Homes, LLC, I have personal knowledge of business practices of Southern Highlands/Christopher Homes I, LLC.

2.      Each property sold by Southern Highlands/Christopher Homes I is documented by a contract. After execution of the contract, Southern Highlands/Christopher Homes I maintains a copy of the contract and its attachments in its ordinary course of business.

3.      Like all other contracts with Southern Highlands/Christopher Homes I Steven Ferguson's contract was maintained in the ordinary course of business and is attached to the Motion as Exhibit 1. Each attachment represented by Exhibits 2-4 were attached to Mr. Ferguson's contract and maintained in the ordinary course of business.

4.      After the property is sold to a homebuyer, Southern Highlands/Christopher Homes I honors its one year limited warranty pursuant to the contract.  In honoring the one year limited warranty, Southern Highlands/Christopher Homes I maintains an ongoing log of repairs made at the property.  Typically, when a resident requests repairs, the date of the request, the description of the request, and the date of the completion of the repairs are noted.  All the repairs made to an individual's property is maintained in the ordinary course of business.

//
//
//
//
//
//
//

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711   FAX: 382-5816

M&A 02213-020 306870.1 0404051129

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711 FAX: 382-5816

1    5.    Each repair requested by Mr. Ferguson during the warranty period of the Property was

2    maintained in a repair log.  Exhibit 5 is the summary of repairs requested by Mr. Ferguson and

3    completed by Southern Highlands/Christopher Homes I. For each repair, there is voluminous backup

4    documentation to show that the repairs were performed.  The summaries along with the detailed

5    backup documentation are maintained in Southern Highlands/Christopher Homes I, LLC's ordinary

6    course of business.

7        FURTHER YOUR AFFIANT SAITH NAUGHT.

8                                                    STEVEN F. HACKNEY

9

10   SUBSCRIBED AND SWORN to before me
     this 6ᵗʰ day of April, 2005.

11

12   

13   NOTARY PUBLIC in and for said
     County and State

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

P. A. CAVA
NOTARY PUBLIC
STATE OF NEVADA
Date Appointment Exp: 11-22-2005
Certificate No: 93-3382-1

M&A:02213-020 306870.1 0404051129

**CERTIFICATE OF MAILING**

I hereby certify that on April 5th, 2005, I served a copy of the foregoing **MOTION FOR DISMISSAL/SUMMARY JUDGMENT** upon each of the parties by depositing a copy of the same in a sealed envelope in the United States Mail, Las Vegas, Nevada, First-Class Postage fully prepaid, and addressed to:

Ian E. Silverberg, Esq.
Del Hardy, Esq.
Hardy and Associates
96 Winter Street
Reno, NV 89503

Mark Ferrario, Esq.
O'Reilly & Ferrario, LLC
325 South Maryland Parkway
Las Vegas, NV 89101

David Johnson, Esq.
Santoro, Driggs, Walch,
Kearney, Johnson & Thompson
400 S. 4th Street, 3rd Floor
Las Vegas, NV 89101

and that there is a regular communication by mail between the place of mailing and the place(s) so addressed.

An employee of Marquis & Aurbach

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
702-382-0711   FAX: 382-5816

M&A:02213-020 304961 1 0404051052

.FFER AND ACCE     ANCE AGREEMENT and E.    .NE    MONEY RECEIPT

RECEIVED FROM Steven M. Ferguson the sum of Thirty Thousand DOLLARS ($30,000.00) IN THE FORM OF
[      ] CASH [X] CHECK(S) TO BE DELIVERED TO SOUTHERN HIGHLANDS/CHRISTOPHER HOMES I,
L.L.C., a Nevada Limited Liability Company, UPON ACCEPTANCE OF THIS AGREEMENT, and in accordance with
the terms hereof, to secure and apply toward the purchase price of the following described Property: 12047 Oakland Hills
Dr. and known as Plan Name: Cambria, Lot:92of THE CHRISTOPHER COLLECTION AT SOUTHERN HIGHLANDS
GOLF CLUB.

THE PURCHASE PRICE is comprised of the following components:

|  |  | Money Deposited |
|---|---|---|
| BASE PRICE: | $479,900.00 | $ 1,000.00 |
| LOT PREMIUM: (Additional Cost Item) | $  29,210.00 | $ 29,000.00 |
| SELECTED UPGRADED OPTIONS AND MODIFICATIONS TO BE DETERMINED AND SUPPLEMENTED HEREAFTER | $ 290,890.00 | |
| SALES PRICE AS OF 12-01, 2001 | $800,000.00 | |

**(THE TOTAL SALES PRICE WILL BE SUPPLEMENTED, CALCULATED AND COMPLETED AFTER
BUYER HAS SELECTED UPGRADED OPTIONS AND MODIFICATIONS IN ACCORDANCE WITH THE
OPTION SELECTION POLICY EXECUTED HEREWITH AND MADE A PART HEREOF AND OPTIONAL
FEATURE PRICE ADDENDUMS)**

1.  Sales Agent acknowledges receipt of the money deposits for the items referred to above.  Buyer agrees to pay all fees, costs and charges connected with any financing to be obtained by Buyer, including but not limited to the cost for credit reports, loan application fees, loan inspection fees, loan origination fees, tax service, recording fees, mortgage insurance, and all other financing related fees and costs, which Buyer agrees to pay on or before the close of escrow.  In addition to the sales price components listed above, Buyer also agrees to pay and fund required impounds at close of escrow for future taxes and fire and extended coverage insurance as required by Buyers lender.  Buyer also agrees to pay Buyers share of fees, costs, expenses and charges according to local custom and the customary practices of the escrow holder in Clark County, Nevada.  Buyer also agrees to pay the prorated amounts, to the close of escrow, of general and special and county taxes, assessments, levies, or other charges pursuant to the Special Improvement District defined hereinbelow, and applicable fees, assessments, capital contributions, transfer or other charges or costs of whatever nature as contemplated by the Master Declaration of Covenants, Conditions and Restrictions and the Supplemental Declaration.

2.  Buyer acknowledges that it is the sole obligation of Buyer to seek and obtain a loan for the purchase of the Property as set forth herein.  Buyer represents that he/she is qualified to obtain the loan and agrees that the Seller may proceed in reliance upon that representation and incur costs, obligations and expenses necessary for the Seller to comply with the terms and conditions provided in this Offer and Acceptance Agreement, including the option items referred to above.  It is specifically agreed that the Buyers ability to obtain a loan is solely the obligation of the Buyer, and is not a condition precedent of the Buyers obligation to timely close escrow and to perform all obligations set forth in this Offer and Acceptance Agreement and the contract documents between the Parties.

3.  Concurrently with Buyers execution of this Offer and Acceptance Agreement and Earnest Money Receipt, Buyer shall deliver to Seller funds from Buyer in the amounts set forth hereinabove as deposits toward the Lot Premium and for selected upgraded options and modifications.  In addition to the foregoing, Buyer shall also deliver funds payable to and for deposit with Nevada Title Company in the amount set forth hereinabove for the Base Price for the purchase of the Property which funds shall be deposited into an escrow account which shall be opened with Nevada Title Company.  Within five (5) days after request by the escrow agent or the Seller, the Buyer shall forthwith execute and deliver to the escrow agent Escrow Instructions as prepared by the escrow agent, which Escrow Instructions shall conform to this Offer and Acceptance Agreement.  In the event of any conflict between provisions of this Offer and Acceptance Agreement and Escrow Instructions, the provisions of this Offer and Acceptance Agreement shall prevail.

4.  Seller shall convey good and marketable title to the Property to the Buyer at the close of escrow by the delivery and recording of a Grant, Bargain, Sale Deed free and clear of any monetary encumbrance other than assessments imposed by the Special Improvement District, property taxes which are not then due and payable, any encumbrance recorded against the property by or on behalf of the Buyer, and any other document or instrument which is contemplated by this Agreement.  Except as otherwise provided above, the Property will be delivered subject to all rights, rights-of-way, restrictions, reservations, conditions, easements of record, if any, and other title exceptions then of record, if any, affecting the use and occupancy of the Property, including but not limited to the Master Declaration of CC&R's, Supplemental Declaration, and any Easement Agreement if applicable for Lots adjoining the Golf Course.  Seller shall provide Buyer at close of escrow with a standard form CLTA Owners policy of title insurance in the amount of the purchase price at close of escrow, otherwise subject to normal title policy exclusions and exceptions.

5.  Seller's obligations shall be subject to delays occasioned by work stoppages, strikes, lock-outs, unavailability of labor, craftsmen and/or material, war, insurrection, fire, inclement weather, acts of God and other events, occurrences and conditions which are beyond the reasonable control of the Seller.

6.  In the event the Buyer has not personally inspected the Unit listed above, the Buyer may cancel this agreement by giving written notification to the Seller no later than midnight of the fifth calendar day following the date of Buyer's execution of this agreement.

7.  Title and possession of the Property shall remain in the name of and with the Seller until close of escrow.  Final vesting shall be determined prior to close of escrow.  Buyer agrees to submit any and all instruments and documents required to complete the transaction and fund all impounds and all other monies necessary to close this escrow within ten (10) business days following notification by Seller that the residence is available for the Buyer's walk-through inspection and that the Residence is substantially complete.  Buyer specifically acknowledges and agrees that the Residence shall be deemed substantially complete for purposes of

Initials: _____  _____
Buyer _____  Buyer
Seller

2213-20          000480

Buyers obli_ __n to close escrow, notw_ __nding the existence of punch list item_ __ the __ of close of escrow. Further, Buyer specifically acknowledges and agrees that ___ existence of punch list items shall not entitle o_ __thorize the Buyer to delay close of escrow. Buyer understands and agrees that if the Buyer fails to fund the payment of the purchase price and fails to close the escrow within said ten (10) day period, then Seller's obligations under this Offer and Acceptance Agreement shall cease, and the Seller shall have the right to exercise its rights under the immediately following paragraph. In the alternative, Seller shall have the right and option, but not the obligation, to increase the purchase price for the Property, prior to utilizing the Sellers remedies set forth in Paragraph 8 herein below, to assess the Buyer with a per diem late charge of $500.00 per day for each day that the Buyer is in default and fails to close escrow.

8. Buyer and Seller recognize that each lot within the Seller's subdivision is unique, and that the Buyer's selection of a plan and Buyers selection of upgraded options and modifications are unique to the Buyers taste, and that in connection with the Buyers selection of the lot, plan and upgraded options and modifications, the Seller will advance considerable time, effort and costs which the Seller may not be able to recoup from a subsequent purchaser in the event that Buyer defaults or otherwise fails to complete the purchase as set forth in the Agreement between the parties. Accordingly, the parties acknowledge that it will be impractical or extremely difficult to arrive at Sellers actual damages in the event that the Buyer fails to complete this transaction, or if the Buyer otherwise breaches or defaults with respect to any obligation of the Buyer set forth herein or incorporated herein as part of the agreement between the parties. Therefore, in the event that the Buyer should fail to complete the purchase as agreed to between the parties, and/or in the event that the Buyer breaches or defaults with respect to any obligation of the Buyer set forth herein or incorporated as a part of the agreement, then Seller shall have the right, but not the obligation, in its sole discretion to terminate this transaction and the Sellers further obligations to the Buyer under the agreement between the parties. In such event, the parties agree that the Sellers actual damages will be impractical or extremely difficult to determine, and the parties accordingly agree that all earnest monies deposited herewith and all deposits of additional funds paid for upgraded optional items and modifications shall constitute a reasonable and good faith estimate of the Sellers damages which would ensue from a breach or default of Buyer.

Therefore, in such event, the Buyer and Seller agree that all earnest monies deposited herewith and all deposits of funds paid for upgraded optional items and modifications may be retained by the Seller as liquidated damages, which amounts are agreed to constitute a fair and good faith estimate of the actual damages sustained by the Seller, and Seller shall be entitled to retain said amounts in payment of its damages. The parties further agree that the amounts, which the Seller is entitled to retain as liquidated, damages are not a penalty, and that said amounts are not to be considered disproportionate to the actual damages sustained by the Seller. In the event that said amounts are retained by the Seller as liquidated damages in accordance with the Agreement of the parties, then Seller shall be responsible for the fees and costs incurred by the escrow agent, if any.



Initials: _____

Buyer _____   Buyer _____

9. Seller reserves the right to require that Buyer complete, sign and notarize a Buyer Acceptance Affidavit prior to close of escrow. The "Buyer Acceptance Affidavit" shall constitute a confirmation that the residence is completely acceptable to the Buyer and that materials, workmanship and the home itself are within allowable and acceptable tolerances. In the event that the Buyer or Seller disagree on what constitutes allowable tolerances, then the Seller, and solely at Seller's option, may declare this contract null and void by notifying the Buyer in writing by registered mail of Sellers intention to cancel the contract, and all earnest money held by Seller will be refunded less such escrow, credit report and loan charges incurred and neither party shall have any further obligation or liability under this Agreement.

10. Time is of the essence of this Offer and Acceptance Agreement and each obligation of Buyer incorporated by reference herein. This Offer and Acceptance Agreement shall bind and inure to the benefit of the respective heirs, representatives, and successors of the parties hereto, provided, however, that Buyer shall not assign its rights under this Agreement without the prior written approval of the Seller, which approval may be withheld by Seller for any reason. Any such attempt at assignment or sale by Buyer shall render this contract null and void at the option of the Seller. In the event that Seller should elect to declare this contract null and void because of an assignment or sale of the Buyer's interest under this contract, then the Seller shall have the right to retain the entire amount deposited herewith as liquidated damages. This document shall constitute an offer to purchase on the part of the Buyer and shall not be binding upon Seller until such time as it is accepted by the Seller as evidenced by the signature of Seller.

11. Buyer acknowledges and understands that the property being purchased is located in Southern Highlands, a Nevada master residential common interest planned community, and through recordation of suitable annexation amendments as of the close of escrow will be subject to, among other matters, a document entitled Master Declaration of Covenants, Conditions and Restrictions for Southern Highlands recorded on or about January 6, 2000 in Book No. 2000106, Instrument No. 01678, of Official Records of Clark County, Nevada, and that First Amendment to Master Declaration of Covenants, Conditions and Restrictions for Southern Highlands recorded on or about January 6, 2000 in Book 20000106, Instrument No. 01679, and that Second Amendment to Master Declaration of Covenants, Conditions and Restrictions for Southern Highlands, recorded on or about October 9, 2000, in Book 20001009, as Instrument No. 01232, which documents are collectively referred to as the Master CC&R's Supplemental Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Christopher Communities at Southern Highlands Golf Club, sometimes referred to herein as the Supplemental Declaration.

12. As the owner of the Property, Buyer will automatically be a member of the Southern Highlands Community Association as defined and contemplated by the Master CC&R's (the Southern Highlands Community Association), along with other Owners of residential property in Southern Highlands, and Buyer will also be a Member of the Christopher Communities At Southern Highlands Golf Club Homeowners Association as defined and contemplated by the Supplemental Declaration, along with other Owners of residential property in The Christopher Collection at Southern Highlands Golf Club and other communities. Buyer acknowledges and understands that Buyer shall be responsible for all fees, assessments, capital contributions or other charges of the Master CC&R's and Supplemental Declaration as more fully set forth therein. By way of illustration and not in limitation of the preceding, escrow holder shall collect from Buyer at the close of escrow the pre-payment of the monthly assessments due to the Southern Highlands Community Association and Christopher Communities At Southern Highlands Golf Club Homeowners Association for the first month after the month in which the close of escrow occurs and any other fees, capital contributions or charges then due. Thereafter, and on each successive first day of each following month, Buyer shall continue to be responsible for all other amounts, including but not limited to monthly assessments payable to the Southern Highlands Community Association and monthly assessments payable to Christopher Communities At Southern Highlands Golf Club Homeowners Association. Assessments may increase for each of the foregoing associations in accordance with the terms of the Master CC&R's and the Supplemental Declaration.

Initials: _____

Buyer _____   Buyer _____
Seller _____

2213-20          000481

13. The Pr..., .ty is a part of the Clark ... ty, Nevada Special Improvement Dis... .No. ... recorded on or about November 19, 1999 in Book No. 991119, Instrument No. ...0328 and any subsequent Amendments thereto (Special Improvement District) and is subject to the terms and conditions of a Development Agreement between the County of Clark and Southern Highlands Development Corporation recorded on or about March 2, 1999 in Book No. 990302, Instrument No. 01676, and that First Amendment to Development Agreement between the County of Clark and Southern Highlands Development Corporation recorded on or about January 6, 2000 in Book 2000106, Instrument No. 00458 (collectively, the Development Agreement). The Property will be subject to certain billings and/or assessments of the Special Improvement District on a regular basis by Clark County, Nevada.

14. Buyer acknowledges and understands that the slopes and general configuration, dimensions and boundaries of the Property, including any common area associated therewith, may vary from those shown on topographical exhibits, plot plans or any other form or medium provided to the Buyer, if any. Additionally, Buyer acknowledges and understands that Buyer has been given an adequate opportunity to inspect all such items and that Buyer has approved all slopes, fences and walls, if any, including, without limitation, the location thereof, and the general configuration, dimensions and boundaries of the Property. Buyer acknowledges and understands that the Property being purchased may be subject to the terms and conditions of a certain document entitled Easement Agreement Between Adjoining Land Owners (Easement agreement) which may be recorded against the Property at the close of escrow, for those properties which adjoin the Golf Course. Among other things, the Easement Agreement formally recognizes that any shared or common boundary line between the Property, if it adjoins the Golf Course, and that of the Golf Course, is not the formal dividing line or property line between the property and the Golf Course. The shared or common boundary line between the Property is demarked by a decorative fence as such term is defined in the Easement Agreement. Additionally, the Easement Agreement may create and establish easements for the Property as more specifically set forth therein. Buyer shall upon request by Seller execute and deliver to Seller a fully executed and acknowledged original of the Easement Agreement, if applicable, in suitable form for recordation by escrow agent on the date of close of escrow. The boundary lines or property lines concerning the Property as it relates to any other adjoining parcel of real property may be further affected by operation of the Master CC&R's and Supplemental Declarations as more fully set forth therein.

15. Buyer acknowledges and understands that The Christopher Collection at Southern Highlands Golf Club shall have non-exclusive easements of ingress, egress, use and enjoyment of Shared Common Elements with The Estates Community Association and the New Community including, but not necessarily limited to Vintage Valley, subject to the allocation formula for common expenses, all as set forth in detail in the Supplemental Declaration. In addition, Buyer acknowledges and understands that the streets within the Christopher Collection at Southern Highlands Golf Club are private and are not City or County government maintained streets. The private streets will be maintained by Christopher Communities At Southern Highlands Golf Club Homeowners Association. A portion of the private streets within the Christopher Collection at Southern Highlands Golf Club are subject to non-exclusive easements of ingress, egress, access, use and enjoyment by The Estates Community and the New Community, as more specifically defined in the Supplemental Declaration. Such streets are referred to as the Christopher Thoroughfare which are not deemed to be Shared Common Elements and are to be maintained and repaired by The Christopher Communities At Southern Highlands Golf Club Homeowners Association at its sole and individual expense.

16. Buyer acknowledges and understands that the security services to be provided for The Christopher Collection at Southern Highlands Golf Club are Shared Security Expenses as more specifically defined in the Supplemental Declaration. Agreements for shared security services may be determined by the Estates Community Association, acting through its Board of Directors, which has reserved the right to enter into agreements with security guard provides for shared security services, if and as deemed reasonably necessary or appropriate to enter into agreements with other homeowners associations, including but not limited to the Master Association and/or Christopher Communities at Southern Highlands Golf Club Homeowners Association. Accordingly, Buyer understands and acknowledges that Seller makes no representations or warranties whatsoever concerning such shared security services and expenses except to the extent provided in the Supplemental Declaration. Buyer understands that Seller shall not in any way be financially responsible for the cost of any such security personnel or security services.

17. Buyer hereby acknowledges that Seller, by installation of a security alarm system in the subject premises, does not represent or warrant that the alarm system will not be compromised or circumvented. Buyer further acknowledges that Seller does not represent or warrant that the system will prevent any loss by burglary, hold-up, fire or other similar loss, or that the system will in all cases provide the protection and detection for which it is intended. The Buyer acknowledges that Seller is not an insurer, and that insurance, if any, shall be obtained by the Buyer. Buyer further acknowledges that Seller makes no guarantee or warranty, express or implied, including any implied warranty of merchantability or fitness for a particular purpose that the security alarm system and equipment supplied and installed by the Seller will avert or prevent loss by burglary, fire, robbery or any other cause or the consequences therefrom, and in the event of such loss, Buyer hereby agrees and acknowledges that Seller shall not be held liable for such loss.

Buyer hereby assumes all risk for loss or damage to Buyers premises and to its contents, and to all persons therein and Buyer agrees that it has not relied upon any representations or warranties, express or implied, verbal or written, except as specifically set forth herein. Buyer further acknowledges that he/she/they have read and understand this Disclaimer, and further agree that in the event any person or entity, including the Buyer, or a person or entity who is not a party to this Agreement, shall make any claim or file any lawsuit against Seller for any reason whatsoever, including but not limited to the installation, operation or non-operation of the security alarm system, then Buyer agrees to indemnify, defend and hold Seller harmless from any and all such claims and lawsuits including the payment of all damages, expenses, costs and attorneys fees whether such claims are based upon alleged intentional conduct, active or passive negligence, strict liability or product liability on the part of Seller, its agents and employees.

18. The Property may have a view or location advantage at the present time. The view may at present or in the future include adjacent or nearby single family homes, multi-family residential structures, commercial structures, utility facilities, landscaping and other items. The Supplemental Declaration of Covenants, Conditions and Restrictions for the Christopher Communities At Southern Highlands Golf Club Homeowners Association may or may not regulate future construction of improvements and landscaping by homeowners in The Christopher Collection at Southern Highlands Golf Club which could affect the views of Property Owners. Moreover, depending on the location of the Property, adjacent or nearby residential or other structures, whether within The Christopher Collection at Southern Highlands Golf Club or outside, could potentially be constructed or modified in a manner that could block or impair all or part of the view from the Property and/or diminish any location advantage or perceived location advantage of the Property. Buyer acknowledges and agrees that Seller has not made any representations, warranties, covenants or agreements to or with Buyer concerning the preservation or permanence of any view or location advantage for the Property, and Buyer hereby acknowledges and understands that Seller shall not be responsible for any impairment of such view or location advantage, or for any perceived or actual loss of value of the Property resulting from any such impairment or claim thereof. Buyer is and shall be solely responsible for analyzing and determining the current and future value and permanence of any such view from or location advantage of the Property.

19. Buyer acknowledges and agrees and affirms that prior to signing this Offer and Acceptance Agreement that Buyer, or an authorized representative of Buyer, has conducted a personal and on-site inspection of the Lot referred to above. Buyer acknowledges

Initials: _____

Buyer       Buyer

Seller

2213-20          000482

that it has be___ given an adequate oppor____ to investigate and become familiar v____ all ____'s and components of the Property and any common area associated therewith, in___ ___ing the surrounding and nearby areas, neighbo___oods, services and facilities. Buyer further represents that Buyer has been given an adequate opportunity to inspect the common area, if any in the Subdivision, and that Buyer is relying solely on such investigation and inspection. Buyer is not relying on any warranties, promises, guarantees or representations other than as set forth in this Offer and Acceptance Agreement. Buyer further represents that Buyer has neither received nor relied on advice of a legal nature from the Seller, any sales representative of Seller and that in the event of questions regarding this Offer and Acceptance Agreement or the transaction referenced herein, Buyer has been advised to retain its own legal counsel.

20.  Buyer acknowledges and agrees that the Lot and Residence to be constructed thereon are located in the Subdivision known as the Christopher Collection at Southern Highlands Golf Club, which is contiguous to a Golf Course and its driving range and amenities, now known as the Southern Highlands Golf Club. Buyer acknowledges that Seller has neither made nor makes any representation whatsoever regarding the manner in which the Southern Highlands Golf Club and Golf Course was designed or constructed, and Seller specifically disclaims any and all responsibility therefore. Buyer further acknowledges that Seller makes no claim or representation, and extends no warranties whatsoever, express or implied, with respect to the operation of said Golf Course, including the existence or non-existence of any rules, regulations or safety precautions or procedures, or with respect to the maintenance of said Golf Course. Buyer further acknowledges that the operation and maintenance of said Golf Course may include early morning and/or late night maintenance procedures including the operation of equipment and personnel thereon, and further may involve the application or use of pesticides, effluent water, fertilizer and other liquid or solid materials applied by the Golf Course for maintenance purposes. In connection therewith, Buyer acknowledges that they understand and appreciate the fact that the operation of a Golf Course and the use of the Golf Course by golfers and others will generate noise and other inconveniences which may be considered by some persons to constitute a nuisance. Further, Buyers acknowledge that they understand, agree and appreciate the fact that persons who play golf, including players at the Southern Highlands Golf Club exhibit various degrees of skill and competence, and that golf balls frequently leave their intended line of flight by players at the Golf Course. Buyers further acknowledge and agree that the Seller neither has nor will undertake any responsibility, duty or obligation to construct, erect or maintain any screen, curtain or any other protective barrier or device to protect the Buyers or their property or persons on their property from golf balls which are errant, or which cross into or onto the Property being purchased by the Buyer. Buyer specifically acknowledges, understands, agrees to and appreciates the fact that the subject property is within range of golf balls from the Southern Highlands Golf Club. Accordingly, the Buyer specifically acknowledges that he/she/they understand and appreciate the existence of the danger and possibility that persons and property may be struck by golf balls, in or on the subject Lot and residence and within the Subdivision in which the Lot and residence is located, which danger is acknowledged by the undersigned as obvious and foreseeable. The undersigned Buyer further acknowledges that he/she/they have been adequately warned about the danger of being struck by golf balls, and that the undersigned expect no further warnings from the Seller, and that the Buyer has made an independent decision and has voluntarily chosen to proceed with this transaction after consideration of the factors set forth herein. The undersigned hereby expressly, and with full knowledge assumes the risk for any nuisance and for any injuries to persons or damage to property which may be sustained in the use of the Lot and Residence by the Buyer, their families, invitees, guests, contractors and subcontractors. Buyer further acknowledges and agrees that Seller shall not be liable, in any manner whatsoever, and Buyer hereby releases and waives all claims for nuisance, injury or damage to persons or property sustained by the Buyer, or any user or occupant with respect to the operation of the Golf Course, including golf balls which cross into or onto the subject Lot and Residence. Buyer assumes full responsibility for all injuries and damages which may occur in or about the subject Lot and Residence, and Buyer further agrees to indemnify and hold harmless the Seller, its employees and agents, from any and all claims, demands, damages, rights of action or causes of action, present or future, whether the same be now known, anticipated or unanticipated, resulting from or arising from the operation, design or maintenance of the Southern Highlands Golf Club, or the use thereof, including without limiting the generality of the foregoing, damage or injury caused by any golf balls which cross into or onto the Lot and Residence being purchased by the purchaser.

Buyer's Initials: _____  _____

21.  The Buyer acknowledges and agrees that models, when available, at The Christopher Collection at Southern Highlands Golf Club, or at other communities, subdivisions or locations, reflect typical floor plans, workmanship and methods of construction, and illustrate various options and possibilities for future interior decoration and exterior landscaping. Buyer further specifically acknowledges and agrees that the Models, when available, whether at The Christopher Collection at Southern Highlands Golf Club or at other communities, subdivisions or locations, are not representative of the residence which shall be constructed for the Buyer, and that Buyers residence shall not necessarily conform to the Models and will not include decorator items and options and upgrades which exist in the Models. Further, Buyer specifically acknowledges and agrees that the Seller may substitute other materials, fixtures, or methods of construction and may make changes to the plans and specifications of the Buyers Residence, if, in Sellers judgment, such substitutions and changes become necessary or desirable. Buyer acknowledges, understands and agrees that the base price set forth hereinabove, includes only the items set forth on the document entitled Base Floor Plan and Elegant Appointments Addendum to be signed by Buyer as a part of this Offer and Acceptance Agreement. Buyer acknowledges receipt of a copy of the Base Floor Plan and Elegant Appointments Addendum, and Buyer further agrees and understands that all other modifications, changes, upgrades, selections and options different than or in addition to those set forth on the Base Floor Plan and Elegant Appointments Addendum shall be at additional cost to Buyer over the amount specified for the Base Price set forth above.

22.  Fiberglass, which is also known as glass wool, is used for insulation in homes. It is used to prevent the movement of heat and sound in or out of buildings, particularly residences. SOUTHERN HIGHLANDS/CHRISTOPHER HOMES I, L.L.C. uses fiberglass for insulation in its residential construction.

The Seventh Annual Report on Carcinogens, prepared by the Department of Health and Human Services, lists fiberglass as a substance which may be reasonably anticipated to be a carcinogen. The Report identifies substances selected for further study because of their potential carcinogenic risk. The listing of a substance in the Report is not an assessment by the Department of Health and Human Services that there is a causal connection between fiberglass and human cancer.

For and in consideration of the sale of the subject real property to Buyers, and by entering into the Purchase Agreement and Earnest Money Receipt with Southern Highlands/Christopher Homes I, L.L.C., and by acknowledging this Notification and Disclaimer, the undersigned Buyers agree that their contractual agreement to purchase the subject property from Southern Highlands/Christopher Homes I, L.L.C. is not contingent or conditional upon the absence of fiberglass in the home being constructed by Southern Highlands/Christopher Homes I, L.L.C. The Buyers agree and acknowledge that fiberglass shall be used in the construction of the Residence which they are purchasing, and the Buyers further agree that they shall not be entitled to nor shall they demand any

Initials: _____  _____

Buyer _____    Buyer _____

Seller _____

2213-20          000483

extension for the closing date of the property or withhold from Southern Highlands/Christopher Homes I, L.L.C. any payment of any portion thereof of the contract price because of the presence of fiberglass in the residence constructed by Southern Highlands/Christopher Homes I, L.L.C.

By closing escrow for the purchase of the property, the Buyers shall be deemed to have released Southern Highlands/Christopher Homes I, L.L.C. from any and all claims and liabilities, now known or existing in the future, which relate to or arise from the presence of fiberglass on or in the property being purchased by the Buyers. Further, the Buyers acknowledge that Southern Highlands/Christopher Homes I, L.L.C. disclaims all warranties, express or implied, including but not limited to warranties of good workmanship, habitability, merchantability, and fitness of purpose and including any warranties that could be construed to cover the presence of fiberglass. All other limited warranties extended by Southern Highlands/Christopher Homes I, L.L.C. shall remain unaffected by this Disclaimer of Warranty with respect to the presence of fiberglass.

Each of the undersigned has carefully read and understands the foregoing notification of fiberglass and Disclaimer Warranties.

Buyers Initials: _____     _____

23. The Seller will endeavor to take reasonable steps to have the residence fully constructed within twelve (12) months of stake date. Notwithstanding the foregoing, the Buyers acknowledge that the scheduling and completion of construction is difficult and oftentimes unpredictable. The Seller shall attempt to keep the Buyers informed of the construction progress and schedule. Buyers acknowledge that Seller will attempt to provide information regarding scheduling of construction upon (1) completion of the foundation of the residence; (2) in or about the time of completion of framing; and (3) with approximately four (4) weeks from the anticipated date of the first walk-through. Notwithstanding the foregoing, Buyers acknowledge that the scheduling and construction referenced herein may vary from time to time. Furthermore, Buyers specifically acknowledge and agree that the Seller makes no express or implied representation as to the actual date of completion of the residence, and that Seller shall not be responsible for any claim of inconvenience, loss, damage or expense to the Buyers resulting from any delay or change in scheduling or the completion of construction.

24. THE PROPERTY, INCLUDING THE UNIT/RESIDENCE TO BE CONSTRUCTED THEREON, AND THE COMMON ELEMENTS REASONABLY SHALL MEET THE ORDINARY STANDARDS OF THE SOUTHERN NEVADA HOMEBUILDING INDUSTRY FOR IMPROVEMENTS OF A COMPARABLE NATURE AND PRICE IN THE LAS VEGAS VALLEY, CLARK COUNTY, NEVADA. SELLER SHALL PROVIDE A LIMITED WARRANTY ON THE RESIDENCE, PURSUANT TO WHICH, SELLER WARRANTS THAT FOR THE PERIOD OF ONE YEAR FOLLOWING THE DATE OF CLOSE OF ESCROW OF THE RESIDENTIAL UNIT, SELLER SHALL REPAIR ANY CONSTRUCTIONAL DEFECT THAT MATERIALLY AND ADVERSELY AFFECTS THE VALUE OR USE OF THE RESIDENTIAL UNIT, NOT INCLUDING MINOR DEFECTS, PROVIDED, HOWEVER, THAT SUCH DEFECT IS PROMPTLY IDENTIFIED BY WRITTEN NOTICE FROM BUYER TO SELLER, AND SUBJECT TO BUYER PROVIDING REASONABLE ACCESS FOR THE REPAIR THEREOF. BUYER SHALL PROVIDE SELLER, AND/OR ITS EMPLOYEES, AGENTS AND SUBCONTRACTORS WITH REASONABLE ACCESS TO THE RESIDENTIAL UNIT FROM TIME TO TIME UPON REQUEST, FOR ANY SUCH REPAIRS AND/OR RELATED INSPECTIONS. BUYER SHALL HAVE INSPECTED AND EVALUATED THE RESIDENTIAL UNIT AND COMMON ELEMENTS AND SHALL HAVE LISTED ANY AND ALL DEFECTS CLAIMED ON THE BUYERS PUNCH LIST; AND, FOLLOWING THE CLOSE OF ESCROW, THE RESIDENTIAL UNIT AND COMMON ELEMENTS WILL BE SUBJECT TO ITEMS WHICH DO NOT MATERIALLY AFFECT STRUCTURAL INTEGRITY OR SAFETY, INCLUDING BUT NOT LIMITED TO: REASONABLE WEAR, TEAR OR DETERIORATION; REASONABLE SHRINKAGE, SWELLING, EXPANSION OR SETTLEMENT; REASONABLE SQUEAKING, PEELING, CHIPPING, CRACKING OR FADING; TOUCH-UP PAINTING, MINOR FLAWS OR CORRECTIVE WORK; AND SUCH LIKE ITEMS, ALL OF WHICH SHALL BE DEEMED MINOR DEFECTS AND ARE NOT DEEMED TO BE CONSTRUCTION DEFECTS, AND WHICH ARE NOT COVERED BY THIS LIMITED WARRANTY. FURTHER, BUYER ACKNOWLEDGES THAT MINOR CRACKS IN CONCRETE, MASONRY AND STUCCO ARE UNAVOIDABLE AND CONSIDERED NORMAL DUE TO EXPANSION AND CONTRACTION OF RIGID MATERIALS. NON-STRUCTURAL CRACKS IN CONCRETE, STUCCO, GROUT, WOOD, DRYWALL, PLASTER AND OTHER MATERIALS ARE, IN THE SAME MANNER, CONSIDERED AND ACKNOWLEDGE BY THE BUYER TO BE NORMAL DUE TO SHRINKAGE AND SETTLING OF NEWLY CONSTRUCTED MATERIALS. THIS LIMITED WARRANTY SHALL NOT APPLY TO ANY CONDITIONS CAUSED BY, OR ARISING FROM, CLIMATIC CONDITIONS OR FROM THE NORMAL CHARACTERISTICS OF CERTAIN BUILDING MATERIALS, EXPANSION, CONTRACTION, MOISTURE, HUMIDITY, OR ANY DAMAGE RESULTING FROM NEGLIGENCE, IMPROPER MAINTENANCE OR ABNORMAL USE. SELLERS WARRANTY SHALL IN NO EVENT EXTEND TO:

A)    ANY TREE OR PLANT INSTALLED BY SELLER;
B)    STRUCTURAL OR COSMETIC DAMAGE CAUSED BY SPRINKLER OVER SPRAY OR OVER WATERING;
C)    DAMAGE TO PIPES AND FITTINGS, OR LEAKS IN THE SPRINKLER SYSTEM, CAUSED BY MAINTENANCE OR TRAFFIC; AND/OR
D)    FROST DAMAGE OR FROZEN PIPES AND SPRINKLER SYSTEMS.

SELLER EXPRESSLY DISCLAIMS, AND BUYER EXPRESSLY WAIVES ALL OTHER REPRESENTATIONS AND WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE AND/OR WORKMANSHIP, WITH RESPECT TO THE RESIDENTIAL UNIT AND/OR THE COMMON ELEMENTS, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AND THE STATUE OF LIMITATIONS THEREFOR SHALL NOT EXCEED TWO YEARS. BUYER HEREBY ACKNOWLEDGES, UNDERSTANDS, AGREES AND AFFIRMS THAT EXCEPT FOR THE LIMITED WARRANTIES SET FORTH HEREIN, SELLER DOES NOT AND SHALL NOT BY THE EXECUTION AND DELIVERY OF THIS AGREEMENT, OR BY ANY INSTRUMENT EXECUTED AND DELIVERED IN CONNECTION WITH THE CLOSE OF ESCROW, MAKE ANY OTHER WARRANTY, EXPRESS OR IMPLIED, OF ANY OTHER KIND OR ANY NATURE WHATSOEVER WITH RESPECT TO THE RESIDENTIAL PROPERTY AND THE COMMON ELEMENTS. NO EXPRESS WARRANTY IS MADE BY: (A) ANY AFFIRMATION OF FACT OR PROMISE THAT THE RESIDENTIAL UNIT, COMMON ELEMENTS, OR ANY RIGHT OR USE RELATED THERETO WILL CONFORM TO THE AFFIRMATION OF FACT OR PROMISE MADE; (B) THE DISPLAY OF ANY MODEL OR THE CONTENTS THEREIN, OR THE DESCRIPTION OF ANY PHYSICAL CHARACTERISTIC OF THE IMPROVEMENTS OR THE COMMUNITY, PROVIDED THAT THE UNIT SHALL BE CONSTRUCTED SUBSTANTIALLY IN CONFORMANCE WITH, BUT NECESSARILY IN A MANNER IDENTICAL TO THE PARTICULAR PLANS AND SPECIFICATIONS FOR THE RESIDENTIAL UNIT; (C) ANY DESCRIPTION OF THE QUANTITY OR EXTENT OF THE

Initials: _____
Buyer _____  Buyer _____
Seller _____

REAL EST. __ COMPRISING THE C __ UNITY, INCLUDING PLOTS OR __ VE __ AND (D) ANY REPRESENTATION MADE BY ANY AGENT OF DECLARA__T THAT PURCHASER MAY PUT THE PROPERTY TO A SPECIFIED USE, OTHER THAN RESIDENTIAL.

SELLERS WARRANTY SHALL IN NO EVENT EXTEND TO ANY CONSUMER PRODUCT, APPLIANCE, AIR CONDITIONING UNIT, FURNACE OR WATER HEATER INCLUDED IN OR FOR THE EXCLUSIVE USE OF THE RESIDENTIAL UNIT (CONSUMER PRODUCT), IF A WARRANTY IS PROVIDED BY THE MANUFACTURER OF THE CONSUMER PRODUCT. BUYER SHALL HAVE NO RIGHT TO RECOVER FOR ANY CONSEQUENTIAL DAMAGES SUFFERED AS A RESULT OF ANY DEFECTIVE MATERIALS OR WORKMANSHIP. WITHOUT LIMITING ANY OF THE FOREGOING, THERE SHALL BE NO WARRANTY ON ANY LANDSCAPING INSTALLED BY THE SELLER ON ANY UNIT OR COMMON ELEMENT. FURTHER, SELLERS FOREGOING LIMITED ONE YEAR WARRANTY SHALL NOT BE TRANSFERABLE AND SHALL EXTEND ONLY TO THE ORIGINAL BUYERS, AND TO NO OTHER PERSONS. SELLER MAKES, AND BUYER SPECIFICALLY ACKNOWLEDGES AND AGREES THAT THE FOREGOING DISCLAIMERS SHALL BE EFFECTIVE AND BINDING UPON THE BUYER TO THE FULL EXTENT PERMITTED BY LAW.

Buyers Initials: 

25. Buyer understands, acknowledges and agrees that depending on market and other conditions and circumstances, Seller may at any time raise or lower the price of lots and improvements in or outside the Development, sell unimproved or improved Lots in The Christopher Collection at Southern Highlands Golf Club, some of which lots may be similar to the Property and that Seller has made no price protection or similar commitment to Buyer regarding the Property, the Development, or any other property, and shall not have any obligation or liability to Buyer in the event any such events, circumstances or price changes directly or indirectly result in a perceived or actual diminution in the value of the Property. Buyer further understands and acknowledges: (i) that Seller considers this Agreement to be separate from and in no way connected with any other agreements Seller may have for the sale of lots and residences to third persons; (ii) that Seller may offer prices, concessions and incentives that vary in amount or type to different buyers; and (iii) that Seller is not obligated to provide to Buyer, and has not represented that it has provided to Buyer, and at different times, the same price, concessions or incentives that Seller may offer to another buyer.

26. Buyer acknowledges and agrees that Buyer may be conditionally permitted to enter upon the Lot and Residence which is the subject matter of this Agreement, which presently is or may be under construction in the future. In consideration of the Sellers execution of this Agreement, the undersigned hereby unconditionally releases, waives and discharges Southern Highlands/Christopher Homes I, L.L.C., and its officers, employees, agents, representatives, subcontractors and materialmen, from any and all liability to the Buyer, from any and all actions, suits, damages, claims or judgments which may result from any injury to persons or property, and for any and all loss or damage, or claim of loss or damages which may be sustained or claimed to have been sustained while Buyer was or is on the above-described Lot and Property, whether caused by the negligence of Seller or its agents or employees, or otherwise caused by the acts or omissions of others, at or in the construction site referred to hereinabove. The undersigned Buyer, for himself, herself and themselves, individually and for their respective spouses, children, legal representatives, heirs and assigns, hereby acknowledge that dangerous and/or hazardous conditions may exist at the aforesaid construction site, which conditions present or may present a risk of harm and injury to persons and property. The undersigned Buyer further acknowledges and understands the significance of the dangerous and hazardous conditions which exist or may exist, and the Buyer fully acknowledges that he/she/they understand the risks, and fully assume the risk of any injuries to persons or property damage that may be sustained at, in or upon the Property or any of the improvements referenced herein. Buyer further hereby agrees to indemnify the Seller, and hold the Seller harmless from any claim, loss, liability, damage, judgments or costs, including attorneys fees which may be made, caused or incurred as a result of the entry in or upon the property by the Buyer and all persons who may accompany the Buyer, and/or persons who go upon the subject property with the express or implied authority of the Buyer. Buyer hereby expressly acknowledges and agrees that the permission to enter upon the subject property is conditional, temporary and subject to revocation by Southern Highlands/Christopher Homes I, L.L.C., which reserves the right to revoke any permission granted hereunder, or to limit the same for any reason whatsoever within the sole discretion of Seller. In the event of any revocation of permission by Seller, which may be given to the Buyer either orally or in writing, the Buyer, for himself, herself and themselves, and their respective spouses, children, legal representatives, heirs and assigns, hereby agree to immediately cease and desist from further entry upon the subject Lot and Property until the property has been conveyed to the Buyer following close of escrow. Buyer further acknowledges and agrees that in the event that Seller revokes the permission to enter upon the Property as given herein, that Seller may invoke the jurisdiction of any Court at law or in equity, in order to obtain an injunction, among other remedies which may be available to the Seller for the violation or default by the Buyer, or any of them, of the terms of this Paragraph of the Offer and Acceptance Agreement and Earnest Money Receipt. The undersigned acknowledge that they have read and fully understand the above Paragraph and have initialed this Paragraph as set forth below.

Buyers Initials:

27. Each provision of this Agreement is independent and severable, and the invalidity or partial invalidity of any provision or portion hereof shall not affect the validity or enforceability of any other provision hereof.

28. The waiver by Seller of any term or obligation under this Agreement shall not be construed as a waiver of any other or subsequent term or obligation under this Agreement.

29. Buyer understands that Southern Highlands Golf Club (the Golf Course)is a privately owned golf club, sole and separate from both the Southern Highlands Community Association and the Christopher Communities At Southern Highlands Golf Club Homeowners Association and is owned by a separate and distinct entity from the Seller. Buyer further understands and acknowledges that property ownership at The Christopher Collection at Southern Highlands Golf Club does not entitle Buyer access to or the use of any Golf Course club facilities, nor does property ownership entitle Buyer to join the Golf Course or golf club, excepting such certain limited instances where Seller may have offered in writing to the Buyer the right to apply for certain limited rights to access limited clubhouse facilities at the Golf Course clubhouse as a Associate user thereof (social membership) where the Seller has agreed to provide Buyer with certain incentives upon acceptance by the Golf Course of any such social membership application. Buyer further acknowledges and understands that purchase of the Property does not guaranty, vest in Buyer or otherwise cause to create in the Buyer any right to use the Golf Course except in connection with a social membership, if applicable, and if the Buyer is accepted. Further, no property owner, including the Buyer, shall acquire any interest in the Golf Course by virtue of taking title to the property

Initials

Buyer   Buyer

Seller

in The Clu...ner Collection at the So...i Highlands Golf Club. Buyer speci...ly ac...ledges and understands that the Seller does not own the Golf Course, and therefore, the Seller cannot control whether the Golf Course will in fact always be a Golf Course or used for Golf Course purposes. In this regard, Buyer acknowledges and understands that neither the Seller, any sales representative of Seller or anyone claiming to act or acting on behalf of Seller is authorized to make any representation on behalf of the Seller regarding the use or continued use of the Golf Course. Buyer further agrees to refrain from, and to cause all members of Buyers family, guests and invitees to refrain from entering upon the Golf Course property without permission of the Golf Course owner or operator, and Buyer acknowledges and understands that any authorized entry may be deemed a trespass. Buyer further acknowledges and understands that the proximity of The Christopher Collection at Southern Highlands Golf Club to the Golf Course results in certain foreseeable risks, including the risk of damage or injury from errant golf balls and other matters relating to the use or operation of the Golf Course, and that the Buyers use and enjoyment of the subject Property may be limited as a result. Buyer further acknowledges and understands that the Property is subject to certain covenants, disclosures, waivers and disclaimers as more fully set forth in the Master CC&R's and the Supplemental Declaration, which such covenants, disclosures, waivers and disclaimers are fully incorporated herein by this reference. Buyer acknowledges and understands that neither Seller nor the Golf Course owner or operator shall have any obligation to take steps to remove or alleviate such risks, nor shall they have any liability whatsoever to Buyer or Buyers family, guests or invitees for damage or injury resulting from errant golf balls being hit upon any property within Southern Highlands or any other matter relating to the use or operation of the Golf Course. Buyer further acknowledges and understands that the Golf Course owner may, in its sole and absolute discretion, add to, remove or otherwise modify the landscaping, trees and other features on the Golf Course property including changing the location, configuration, size and elevation of the bunkers, fairways and greens, installing or removing trees or other vegetation, and that such modifications may diminish or destruct views of the Golf Course or any other perceived desirable views from the Property. Buyer acknowledges and understands that there are no express or implied easements for view purposes, and no guaranty or representation is made by Seller or any other person that any view over and across the Golf Course will be preserved without impairment. Neither the Golf Course owner, nor operator of the Golf Course shall have any obligation to prune or thin trees or other landscaping to preserve views from the Property over the Golf Course within Southern Highlands.

30.    Buyer acknowledges, understands and recognizes that the Buyer may be purchasing the Property prior to completion of construction of all other property in The Christopher Collection at Southern Highlands Golf Club. Accordingly, Buyer acknowledges that there may be certain inconveniences until construction is completed, and Buyer waives all claims with respect thereto.

31.    Buyer acknowledges and agrees that it is the responsibility of the Buyer to apply for and establish an account for utilities to be provided to the subject Property. For convenience only, Seller has listed the telephone numbers and addresses of the utilities which the Buyer will be required to contact in order to establish utility services as follows:

| | |
|---|---|
| Sprint Central Telephone | Silver State Disposal |
| 2340 E. Tropicana Avenue | 770 E. Sahara Avenue |
| Las Vegas, Nevada 89121 | Las Vegas, Nevada 89104 |
| (702) 244-7400 | (702) 735-5151 |
| | |
| Las Vegas Valley Water District | Southwest Gas Company |
| 3700 W. Charleston Blvd. | 4300 E. Tropicana Avenue |
| Las Vegas, Nevada 89102 | Las Vegas, Nevada |
| (702) 870-4194 | (702) 365-1555 |
| | |
| Nevada Power Company | Post Office/Silverado Station |
| 6226 W. Sahara Avenue | 445 Pebble Road |
| Las Vegas, Nevada | Las Vegas, Nevada |
| (702) 367-5555 | (800) 275-8777 |
| | |
| Cox Communications | Clark County Sanitation |
| 121 South Martin Luther King Blvd. | 5857 E. Flamingo Road |
| Las Vegas, Nevada | Las Vegas, Nevada |
| (702) 383-4000 | (702) 458-1180 |

Seller will disconnect utility services under the name of Seller three (3) working days after the date of close of escrow. Buyer acknowledges that it is Buyers responsibility to transfer utilities or make other arrangements for the foregoing utilities to provide services within three (3) days after the date of close of escrow in order to avoid any interruption of utility services. Buyer acknowledges that its failure to establish an account to provide for utilities to the subject property may result in damage to the Residence due to seasonal temperature changes in Las Vegas, Clark County, Nevada. Any damage caused by, or repairs which are required by virtue of the Buyers failure to establish an account to provide utilities for the subject property, including but not limited to the cracking of tile or grout or any other interior finishes, will be excluded by Seller from the limited one year warranty provided by the Seller, and such items will be the responsibility of the Buyer. Buyer acknowledges that the utility companies referenced hereinabove may require a letter of credit from the Buyers previous utility provider or otherwise may require a deposit. Utilities may also require a personal visit and application including a picture identification and a copy of the Purchase Agreement in order to initiate service. Buyer acknowledges and agrees that it may be required to visit the United States Post Office in order to pick-up a mailbox key, which the United States Postal Service may issue only upon presentation of a picture identification and a copy of closing documents. Buyer further acknowledges that the security alarm system in the residence cannot be initiated until after telephone service has been established.

Buyers acknowledge, agree and understand that Seller makes no representation with respect to the date the cable and telephone services will be available to the residence being purchased by Buyer herein. Seller has been informed and hereby discloses that cable and/or telephone services may not be available at the time set for close of escrow. Notwithstanding the foregoing, Buyers agree to timely close escrow and to otherwise comply with Buyers' obligations as set forth in Paragraph 7 hereinabove, and Buyers further agree that the lack of telephone and/or cable service, if any, shall not abrogate or delay Buyers' obligation to close escrow.

32. The laws of the State of Nevada shall govern the validity, construction, performance and effect of this agreement. In the event that legal action or arbitration is instituted by any party hereto with respect to the rights or obligations of any party to this agreement, then the prevailing party in such action shall be entitled to recover from the non-prevailing party, its reasonable attorney's fees and costs of suit as determined by the Court or Arbitrators in such action.

Initials:

Buyer           Buyer

Seller

33. All ...es and disagreements be... u the parties arising out of this cont... / an... vision thereof shall be submitted to and settled by arbitration, if the parties are un...te to settle the same between themselves. A Board of Arbitrators composed of one person selected by the Seller, one person selected by the Buyer, and a third person selected by the other two arbitrators shall hear and decide such disputes. If the parties fail to reach an agreement as to any dispute under the contract, then either party may request submission to arbitration. Upon selection of the Board of Arbitrators, the arbitration shall proceed in accordance with the rules and procedures of the American Arbitration Association. The decision of the Arbitrators shall be final and conclusive upon the parties unless fraudulent, capricious, or arbitrary. The decision and award of the Arbitrators may be entered in any Court of competent jurisdiction, and enforced by due proceedings in such Court. If the decision and award of the Arbitrators includes a finding of default or failure to perform on the part of either party, costs and expenses of the arbitration shall be assessed against such party, including a reasonable allowance for attorneys' fees to the other party.

34. This Offer and Acceptance Agreement, the Option Selection Policy, and the Optional Feature Price Addendums executed hereafter, as well as all Exhibits, schedules and addendums thereto contain the entire agreement between the parties with respect to subject property and the residence to be constructed thereupon and the transaction which is the subject of this agreement, and as such supersedes and replaces any and all prior understandings, discussions and negotiations between the parties. The contract documents may only be modified by written agreement signed by both the Buyer and the Seller. There are no collateral or side understandings, representations or agreements other than those which are contained herein or attached hereto or which are otherwise agreed to in writing.. By execution hereof, the Buyer hereby acknowledges that no representations have been made by the Seller, its employees or agents in order to induce the Buyer to enter into this Offer and Acceptance Agreement unless such representations are set forth specifically in writing herein.

35. Any notice required or permitted to be given under this Offer and Acceptance Agreement and Earnest Money Receipt may be given and shall be deemed to be complete and effective in any of the following ways: 1. Personal delivery effective as of the date of delivery; 2. Certified mail and regular mail, effective as of the third business day following the date of mailing; 3. Electronic or telefax transmission accompanied by a confirmation receipt, effective as of the date of transmission. With respect to personal delivery and mailing referred to hereinabove, notification shall be deemed sufficiently given if directed to the Buyers at the address set forth for the Buyers on page 4 of the Offer and Acceptance Agreement and Earnest Money Receipt.

36. Buyer acknowledges and understands that Christopher Homes Custom Home Division, Inc., a Nevada corporation is the Manager of Southern Highlands/Christopher Homes I, L.L.C., a Nevada limited liability company, and that the Members of said Limited Liability Company have the right to remove Christopher Homes Custom Home Division, Inc. as Manager. Buyer further acknowledges, understands and agrees that in the unlikely event that Christopher Homes Custom Home Division, Inc. is removed as Manager of Southern Highlands/Christopher Homes I, L.L.C., said removal shall not abrogate, limit or in any manner cancel the Buyers obligation to fully and timely complete all of the Buyers obligations hereunder to purchase the subject property.

37. Special conditions or agreements: Seller to reduce the lot premium from $74,000.00 to $29,210.00 as reflected in the total purchase price shown on Page 1 of the Offer and Acceptance Agreement. This contract subject to Buyer being accepted for a Golf and Social Membership at the Southern Highlands Golf Club. Buyer to close escrow on or before December 20, 2001.

38. The Buyer acknowledges that they have read and understand the terms and conditions set forth in this Offer and Acceptance Agreement, have received a copy hereof and agree to the purchase of the property at the price and on the terms and conditions stated herein.

ALL OF THE DOCUMENTS LISTED BELOW ARE IMPORTANT TO THE PURCHASE OF THE PROPERTY AND SHOULD BE THOROUGHLY READ BY BUYER AND SHALL BE DEEMED TO HAVE BEEN READ AND APPROVED BY BUYER. BUYER IS ADVISED TO RETAIN ALL DOCUMENTS FOR FUTURE REFERENCE. COPIES OF THESE DOCUMENTS SHOULD BE GIVEN TO ANY PERSON(S) WHO MAY IN THE FUTURE PURCHASE THE PROPERTY FROM BUYER. BY EXECUTING THIS AGREEMENT AND INITIALING BELOW, BUYER HEREBY ACKNOWLEDGES RECEIPT OF COPIES OF THE FOLLOWING:

Initials



1. Option Selection Policy
2. Base Floor Plan and Elegant Appointments Addendum
3. Duties Owed by a Nevada Real Estate Licensee
4. Public Offering Statement
5. Attachment 'A' – Christopher Collection at Southern Highlands Golf Club Statutory Statement
6. Attachment 'B' – Southern Highlands Homebuyer's Notice
7. Attachment 'C' – Supplemental Declaration of Covenants, Conditions & Restrictions and Reservation of Easements for Christopher Collection at Southern Highlands
8. Attachment 'D' – Christopher Community at Southern Highlands Golf Club Homeowner's Association Articles of Incorporation
9. Attachment 'E' – Christopher Community at Southern Highlands Golf Club Homeowner's Association Bylaws
10. Attachment 'F' – Association's Current Balance Sheet and Projected budget for First Fiscal Year
11. Attachment 'G' – Southern Highlands Community Association Master Declaration; First Amendment to Master Declaration of Covenants, Conditions, and Restrictions for Southern Highlands; Annexation Amendment Southern Highlands Master Declaration
12. Attachment 'H' – Southern Highlands Community Association Articles of Incorporation
13. Attachment 'I' – Southern Highlands Community Association Bylaws
14. Attachment 'J' – Southern Highlands Community Association Rules.
15. Attachment 'K' – Southern Highlands Community Association Current Balance Sheet and Projected Sheet
16. Soils Report
17. Clark County Special Improvement District #121 Information Sheet
18. Easement Agreement between adjoining Landowners, if applicable
19. Acknowledgement regarding Southern Highlands Golf Club Social Membership Application
20. Notice of Zoning Designation and Gaming Enterprise District Map; Copies of certain statutes and Notice of Soils Report; Waivers

Initials:

Buyer _____ Buyer _____

Seller

2213-20        000487

THE UNDE____ED HAVE EACH REA___ ___ UNDERSTAND THIS OFFER AND ,___ ___PT, ___ AGREEMENT AND EARNEST MONEY RECEIPT AND OFFER TO PURC___ ___E THE SUBJECT PROPERTY SUBJECT TO TH___ ___RMS AND CONDITIONS, CONTAINED HEREIN. THE UNDERSIGNED FURTHER ACKNOWLEDGES AND UNDERSTANDS THAT THIS OFFER IS NOT A BINDING CONTRACT UNTIL IT IS ACCEPTED BY THE SELLER.

DATE: _12/1/01_

Buyer's Signature: _Steven M. Ferguson_          Buyer's Signature: _____

Mailing Address: _345 North Maple Dr._   _Beverly Hills, CA.   90210_
                                                            City                          State    Zip

Phone: _310-860-6595_          _310-860-9212_
                 Home #              Work #1              Work #2                    Fax #

THE RECEIPT OF THE DEPOSIT WHICH IS SET FORTH HEREINABOVE IS HEREBY ACKNOWLEDGED, AND THE PRESENTATION OF THIS OFFER AND ACCEPTANCE AGREEMENT AND EARNEST MONEY RECEIPT TO THE SELLER IS BEING MADE BY THE FOLLOWING SALES AGENT:

                                  Sales Agent

The Seller hereby accepts the Offer represented by the foregoing agreement on the terms and conditions stated herein.

DATE: _12/4/01_

                              SOUTHERN HIGHLANDS/CHRISTOPHER HOMES I, L.L.C.
                              a Nevada Limited Liability Company

                              By: _____
                              CHRISTOPHER HOMES L.L.C.
                              a Nevada Limited Liability Company - Manager
                              By: KATHERINE S. FOLEY
                              Executive Vice President

Initials:
Buyer _____   Buyer _____
Seller

2213-20          000488

# CHRISTOPHER COMMUNITIES
# AT SOUTHERN HIGHLANDS GOLF CLUB

## PUBLIC OFFERING STATEMENT
## AND
## INFORMATION BROCHURE

---

*THIS PUBLIC OFFERING STATEMENT AND INFORMATION BROCHURE, WITH ALL ATTACHMENTS, IS DELIVERED BY DECLARANT TO THE PURCHASER OF A UNIT AS OF THE DATE OF THE PURCHASE AGREEMENT.  THIS PUBLIC OFFERING STATEMENT IS CURRENT AS OF THE DATE OF THE PURCHASE AGREEMENT.*

---

**PLANNED COMMUNITY:**
("Community")

**CHRISTOPHER COMMUNITIES
AT SOUTHERN HIGHLANDS GOLF CLUB**
Robert Trent Jones Lane & Oakland Hills Drive
Clark County, Nevada

**NEIGHBORHOODS:**
("Neighborhoods")

**CHRISTOPHER COLLECTION
& THE VILLAS**

**DECLARANT:**
("Builder")

**SOUTHERN HIGHLANDS/CHRISTOPHER HOMES I, L.L.C.**
a Nevada limited-liability company
9500 Hillwood Drive
Las Vegas, Nevada 89134
*(as to the Christopher Collection Neighborhood)*

**DECLARANT:**
("Builder")

**SOUTHERN HIGHLANDS/CHRISTOPHER HOMES II, L.L.C.**
a Nevada limited-liability company
9500 Hillwood Drive
Las Vegas, Nevada 89134
*(as to The Villas Neighborhood)*

## GENERAL DESCRIPTION OF CHRISTOPHER COMMUNITIES:

CHRISTOPHER COMMUNITIES AT SOUTHERN HIGHLANDS GOLF CLUB is a detached, single-family Nevada residential common-interest planned community, comprised of two Neighborhoods: Christopher Collection, and The Villas.

The CHRISTOPHER COLLECTION Neighborhood consists of three residential units ("Units") which have been annexed of record by the applicable Declarant and/or subjected to the Declaration to date, which number of Units may be expanded from time to time.  THE VILLAS Neighborhood consists of residential units ("Units") which have been annexed of record by the applicable Declarant and/or subjected to the Declaration to date, which number may be expanded from time to time. The CHRISTOPHER COLLECTION and THE VILLAS Neighborhoods together comprise the CHRISTOPHER COMMUNITIES Community. The aggregate total of Units in the CHRISTOPHER COLLECTION and THE VILLAS shall not exceed five hundred (500) Units, if all annexable area is annexed and all subsequent phases are completed by Declarant in this Community. The term "Declarant" and/or "Builder" as used in this Public Offering Statement shall refer to the applicable Declarant or Builder, as set forth on the first page hereof.

PURCHASER INITIALS

A "Unit" consists of a residential lot ("Lot") within the Community, encumbered by the Declaration and platted as the site for a dwelling ("Dwelling") (whether or not the Dwelling has yet been constructed), together with any and all improvements on the Lot.

—    The initial phase in the Community included one (1) Unit, and non-exclusive easements for enjoyment and use of Common Elements, including private entry area and monumentation, private streets, street lights, sidewalks, curbs and gutters, and portions of perimeter walls and certain common element landscaping.

—    Subsequent phases, subject to the "Additional Disclaimers" below, may include additional Units, subject to the following numerical limitation, non-exclusive easements as set forth below, and certain Common Elements.

The estimated maximum total number of Units which may be constructed in the CHRISTOPHER COMMUNITIES is not to exceed five hundred (500) Units.

## DECLARATION OF COVENANTS, CONDITIONS & RESTRICTIONS:

The Community is subject to a Supplemental Declaration of Covenants, Conditions and Restrictions and Reservation of Easements, recorded in Book 20000717, as Instrument No. 01661, Official Records, Recorder of Clark County, Nevada, as may be supplemented and/or amended from time to time, including by The Villas Supplement (see below section) (all, collectively, the "Declaration"), a copy of which is attached hereto.  Each purchaser ("Purchaser") of a Unit should thoroughly review the Declaration, which provides, among other items, for management of the Community, voting, maintenance and repair of the Properties, powers and duties of the Community Association, use and enjoyment of the Properties, assessments to Owners, and certain special and developmental rights reserved by Declarant. A copy of the Declaration is attached to this Public Offering Statement (which Declaration, by not later than the date of the close of escrow of the first Unit in the Community, shall be duly recorded in the Office of the County Recorder of Clark County, Nevada). The Community "Governing Documents," copies of which are attached, include the Declaration, Articles, Bylaws, Plat, Rules and Regulations, and Design Criteria. Governing Documents are in addition to Master Association Documents.

## THE VILLAS SUPPLEMENT:

Pursuant to specific reservation in the Declaration, Declarant has recorded "The Villas" Neighborhood Supplement to the Declaration and an Assignment of Certain Rights of Declarant, recorded in Book 20010716, as Instrument No. 2042, Official Records, Recorder of Clark County, Nevada (collectively, "The Villas Supplement") a copy of which is attached hereto as Attachment E-1.  Among other things, The Villas Supplement provides for: (1) a separate neighborhood or special benefits and assessments area ("The Villas"), consisting of "resort villas" or "cluster homes" within a portion of the Annexable Area to be annexed to the Properties; (2) additional specified levels of landscaping, maintenance, repair and replacement, by the Community Association, of Common Elements and specified portions of Units within The Villas ("The Villas Services"); (3) supplemental Neighborhood Assessments, to fund The Villas Services; (4) Private Areas and Easement Areas; (5) specified landscaping, maintenance, repair, and replacement obligations of Owners of Units within The Villas; (6) supplemental restrictions specific to The Villas; (7) additional easements specific to The Villas; (8) supplemental Common Elements and/or limited common elements specific to The Villas; (9) subsequent annexation of other portions of the Annexable Area to The Villas area of the Properties; (10) any supplemental insurance requirement for The Villas; (11) provisions for supplemental Rules and Regulations; (12) allocations of Assessments and one (1) equal vote allocated to each Unit in The Villas as a part of the Community; and (13) certain other matters connected with or related to The Villas, including, but not limited to, assignment of Development Rights and Special Declarant's Rights, pertaining to The Villas, to Southern Highlands/Christopher Homes II, L.L.C., a Nevada limited liability company, as Declarant for The Villas. Each Purchaser of a Unit within The Villas should carefully review The Villas Supplement, in addition to

PURCHASER INITIALS _____/_____                    -2-                    wmr\2252.5\2.pos.01.wpd(08/22/01)

the other Governing Documents.  For further information regarding The Villas and The Villas Supplement, refer to The Villas Supplement attached hereto as Attachment E-1.

## COMMUNITY ASSOCIATION:

The owner(s) ("Owner") of each Unit will automatically be a member of the CHRISTOPHER COMMUNITIES AT SOUTHERN HIGHLANDS GOLF CLUB HOMEOWNERS ASSOCIATION, a Nevada non-profit corporation ("Community Association" or "Association"), established to maintain the Common Elements of the Community and to administer the Declaration.  Pursuant to the Governing Documents, each Owner shall be a member of the Community Association, and shall be entitled to the benefits, and subject to the obligations (including the obligation to pay Community Association assessments and any other amounts from time to time which may be assessed or due under the Declaration) arising from such membership. Each Owner will be entitled to cast one vote (per Unit owned) on Community Association matters, as further provided in the Community Association's Articles of Incorporation and Bylaws, copies of which are attached hereto.

## MASTER DECLARATION; MASTER ASSOCIATION:

The Community also is subject to any and all applicable provisions of the Master Declaration of Covenants, Conditions, Restrictions and Reservation of Easements for SOUTHERN HIGHLANDS, as amended from time to time ("Master Declaration"), recorded by Southern Highlands Development Corporation ("Master Declarant"), the Southern Highlands Community Association ("Master Association") Articles of Incorporation, Bylaws, and Rules (all, collectively, "Master Association Documents"). Copies of the Master Association Documents are attached hereto.  Pursuant to the Master Declaration, each Owner shall also be a member of the Master Association, and shall be entitled to the benefits, and subject to the obligations (including the obligation to pay Master Association assessments, capital contributions, transfer fees, and any other amounts which may be assessed under the Master Declaration) arising from such membership.  Further information regarding the Master Association may be obtained therefrom.

## GENERAL DESCRIPTION OF SOUTHERN HIGHLANDS:

The following information has been provided by Master Declarant for general reference purposes and is subject to change or modification at any time and from time to time without notice. The Community is located in the separately gated Enclave area of the Southern Highlands Master Community.  The Enclave area also encompasses or may encompass the nearby Estates and Vintage Valley residential communities. There may be an aggregate total of not more than 9,000 residential Units in the entire Master Community if all phases of the Master Community are completed.  However, these are all preliminary estimates only, and may not be followed or developed.  No anticipated completion date for the Master Community or the Enclave area has been established.  The Master Community is governed by the Southern Highlands Community Association, a Nevada nonprofit corporation (the "Master Association"). Pursuant to the Master Declaration, commercial and apartment properties within the Southern Highlands master plan will not be part of the residential Planned Community, nor subject to the Master Declaration, nor governed by the Master Association.  The amenities within the Master Community consist of various parks and open spaces, which will be owned either by the Master Association or Clark County. The Private Amenities (as such term is defined in Section 2.47 of the Master Declaration) (including, but not necessarily limited to, any golf course and health club and their respective components and related facilities and features) are NOT A PART OF the Master Community or this Community, and ARE NOT a Common Element or Master Association Property. Private Amenity ownership, membership, use and access are separate from, and not included in, the Master Community or this Community.  Refer to the Homebuyer's Acknowledgment, Waiver and Release of Certain Golf Course Matters, attached hereto as Attachment D.  For further information regarding the Master Community, refer to the Southern Highlands Homebuyer's Notice attached hereto as Attachment B.

PURCHASER INITIALS ____ / _____          -3-

## INCIDENTS OF OWNERSHIP:

Each purchaser in CHRISTOPHER COMMUNITIES AT SOUTHERN HIGHLANDS GOLF CLUB will receive fee simple title to his or her Unit. The elements of each Unit are bounded by the Unit's lot lines, as shown on the recorded plat ("Plat") of the Community, and as set forth in the Declaration. Each Owner will enjoy non-exclusive easements over the Common Elements of the Community (in all phases of the Community, should there ever be more than one phase) and over all real property belonging to the Community Association; liability for Assessments and pro-rata for Common Expenses in all phases; and one vote (per Unit) in the Community Association; all as pursuant to the provisions and restrictions set forth in the Declaration and other Governing Documents.

## DESIGN CRITERIA; ARCHITECTURAL REVIEW COMMITTEE:

No Owner shall or may commence construction or installation of any improvements (including, but not limited to landscaping) in the Christopher Communities without first having fully complied with all applicable Design Criteria and Architectural Review Committee ("ARC") requirements, and having received prior approval from the ARC.

## COMMUNITY COMMON ELEMENTS:

The Community Common Elements shall include any common lot; private main entry gate and entry areas for the Community; Private Streets; landscape, irrigation and/or sidewalk easements; public utility easements; public sewer and/or water easements; and any drainage easement areas; all as respectively designated as such on the Plat, and any landscaping and other improvements thereon. Without limiting the foregoing, Common Elements, portions of which may constitute or be comprised of easements on certain Lots, shall or may include private entry gate, private streets, sidewalks, certain street lighting, street signs, curbs and gutters, certain drainage and sewer easement areas delineated as common areas, and certain perimeter walls around the exterior boundaries of the Community. Common Elements will be maintained by the Community Association, and the Community Association may establish rules and regulations for use of the Common Elements. The Community Association may retain a professional manager to perform its various functions. There presently is no plan to charge the Owners any user fees in connection with general use of the Common Elements; provided, however, that a fee may be charged for replacement of entry-gate access cards or remote openers, as applicable, if such are misplaced. Master Association common areas shall be maintained by the Master Association.

## COMMUNITY BALANCE SHEET & ANNUAL BUDGET:

Each year, the Community Association's Board of Directors will submit a proposed budget for ratification by the Owners as provided in the Declaration. The Community Association's current balance sheet and projected budget for the first fiscal year of the Community Association are attached hereto.

## COMMUNITY CAPITAL CONTRIBUTIONS:

At the close of escrow for the initial purchase of each Unit from Declarant ("Initial Closing"), the Purchaser will be required to make a capital contribution to the Community Association, in the sum of Nine Hundred Fifty Dollars ($950.00), which sum may be increased from time to time by Declarant for Units thereafter to be sold. Additionally, at the close of escrow for each resale of a Unit by a Purchaser or subsequent Owner, other than Declarant ("Resale Closing"), the purchaser of such Unit ("Resale Purchaser") shall be required to pay a resale capital contribution to the Community Association, in the sum of Nine Hundred Dollars ($900.00), as such sum may be changed from time to time prospectively (but not retroactively) by Declarant. These capital contributions, which are in addition to all assessments and transfer fees (and all amounts due to Master Association), shall be deposited into a Community

PURCHASER INITIALS _____ / _____          -4-          wmr\2252.5\2.pos.01.wpd(08/22/01)

Association fund, and may be applied to the Community Association reserve fund and/or working capital needs.

## COMMUNITY TRANSFER FEES:

At the Initial Closing, the Purchaser will be required to pay to the Community Association an initial transfer fee in the sum of Seventy-Five Dollars ($75.00). Additionally, at each Resale Closing, the Resale Purchaser shall be required to pay a resale transfer fee to the Community Association, in the sum of Seventy-Five Dollars ($75.00). Both or either of such sums may be changed from time to time prospectively (but not retroactively) by Declarant. These transfer fees, which are in addition to all assessments and capital contributions (and all amounts due to Master Association), shall be deposited into a Community Association fund, and may be used for Community Association reserve fund and/or working capital purposes.

## COMMUNITY ASSESSMENTS; NEIGHBORHOOD ASSESSMENTS:

Pursuant to the Declaration, the Community Association will levy assessments against each Unit for the purpose of financing the maintenance of the Common Elements and other Community Association functions. The assessments shall constitute a lien on each Unit against which the assessments are levied. If the assessments are not timely paid, the Community Association will have the right to enforce payment by legal action or by foreclosing upon the assessment lien. The maximum amount of the monthly Community Base Assessment which may be levied in the first year following the first sale of a Unit in the Community is One Hundred Ninety-Three ($193.00) per month (of which approximately Nineteen Dollars and Twenty Cents ($20.00) is to be used toward the Community Association reserve fund per Unit each month). The maximum allowable Base Assessment may be increased by not more than twenty-five percent (25%) during each subsequent fiscal year, unless a greater increase is approved by a majority of the voting power of the Community Association. Also, Neighborhood Assessments are or may be levied against Units in The Villas, pursuant to The Villas Supplement. Information regarding Neighborhood Assessments may be obtained from Builder. Additionally, the Master Association shall levy against each Unit and its Owner, mandatory Master Association assessments, Master Association capital contributions, and Master Association transfer fees. Information regarding Master Association assessments and any Master Association capital contributions and transfer fees may be obtained from the Master Association.

## MASTER ASSOCIATION ASSESSMENTS, CAPITAL CONTRIBUTIONS & TRANSFER FEES:

Pursuant to the Master Declaration, the Master Association will levy assessments against each Lot for the purpose of financing the maintenance of common elements of the Master Association and other Master Association functions. The assessments shall constitute a lien on each Lot against which the assessments are levied. If the assessments are not timely paid, the Master Association will have the right to enforce payment by legal action or by foreclosing upon the assessment lien. The maximum amount of the monthly Master Association Base Assessment which may be levied in the first year following the first sale of a Lot in the Community is Thirty-Five Dollars ($35.00) (of which approximately Six Dollars and Twenty-Four Cents ($6.24) is to be used toward the Master Association reserve fund) per Lot per month, which Master Association Base Assessment is subject to increase by the Master Association at any time during the current fiscal year of the Master Association. The maximum allowable Master assessment may be increased by not more than twenty-five percent (25%) during each subsequent fiscal year, unless a greater increase is approved by a majority of the voting power of the Master Association.

Additionally, at the Initial Closing, the Purchaser will be required to contribute to the account of the Master Association a capital contribution in a sum equal to two months Master Association Base Assessments (i.e., Seventy Dollars ($70.00) currently). Additionally, at each Resale Closing, the Resale Purchaser shall be required to pay a resale capital contribution to the Master Association, in a sum equal to two months Master Association Base Assessments (i.e., Seventy Dollars ($70.00) currently). Both or

PURCHASER INITIALS _____ / _____                -5-                wmr\2252.5\2.pos.01.wpd(08/22/01)

either of such sums may be changed from time to time prospectively (but not retroactively) by Declarant. These capital contributions, which are in addition to all assessments and transfer fees (and all amounts due to the Community Association), shall be deposited into a Master Association fund, and may be applied to the Master Association reserve fund and/or working capital needs.

Additionally, at the Initial Closing, the Purchaser will be required to pay to the Master Association an initial transfer fee in the sum of Seventy-Five Dollars ($75.00). Additionally, at each Resale Closing, the Resale Purchaser shall be required to pay a resale transfer fee to the Master Association, in the sum of Two Hundred Twenty-Five Dollars ($225.00). Both or either of such sums may be changed from time to time prospectively (but not retroactively) by the Master Association. These transfer fees, which are in addition to all assessments and capital contributions (and all amounts due to the Community Association), shall be deposited into a Master Association fund, and may be used for Master Association reserve fund and/or working capital purposes.

Further information regarding Master Association assessments and any Master Association capital contributions and transfer fees may be obtained from the Master Association

### SHARED COMMON ELEMENTS/EXPENSES:

Certain shared common elements within the Enclave area are owned by the nearby Estates Community Association (including up to two major entry gates and areas, certain private streets, and landscaping) constitute "Shared Common Elements" and are subject to non-exclusive easements of ingress and egress for the benefit of this Community, the neighboring Estates Community, and Vintage Valley Community, and Golf Course, among others, and are subject to payment of monthly allocations of "Shared Common Expenses" as set forth in detail in the Declaration.

### CHRISTOPHER THOROUGHFARE:

The major thoroughfare through this Community (sometimes referred to as the "Christopher Thoroughfare"), from the north to the south, is a Common Element, which must be maintained and repaired by the Community Association as a Common Expense, and also is subject to non-exclusive easements of ingress and egress for the benefit of certain other developments. There shall be no "interior" gate installed across or any other hindrance of passage through and over the Christopher Thoroughfare. Certain assessment premiums of certain neighboring developments (if and when developed as a residential communities) shall be credited against this Community Association's share of Shared Common Expenses, as set forth in detail in the Declaration.

### SHARED SECURITY SERVICES/EXPENSES:

Certain security services, including major entry gate guard services and roving patrol services ("Shared Security Services") are allocable to this Community and to the Golf Course and certain other developments, and are subject to payment of monthly allocations of "Shared Security Services" as set forth in detail in the Declaration.

### CALNEV AGREEMENT & SHARED COSTS:

Under an Amended and Restated Superseding Right-of-Way Grant, Additional Right-of-Way Grant and Common Use Agreement ("ROW Agreement"), CALNEV Pipe Line Company has been granted a perpetual non-exclusive subsurface easement fifty feet (50') in width under certain right-of-way property ("ROW Property", as defined and otherwise set forth in the ROW Agreement), and certain permitted uses. Under the ROW Agreement, Grantor Parties (including the Community Association) have certain duties and obligations, which may include certain special cost sharing provisions. There are no

PURCHASER INITIALS _____/_____          -6-          wmr\2252.5\2.pos.01.wpd(08/22/01)

such amounts due currently. To the extent, if any, the Community Association from time to time is required to share certain costs as required by the ROW Agreement ("CALNEV Shared Costs"), the portion of such costs allocable to the Community Association shall be Common Expenses.

## SOUTHERN HIGHLANDS SPECIAL IMPROVEMENT DISTRICT:

Units in the Christopher Communities are also subject to a Special Improvement District, as set forth in further detail in the Southern Highlands Homebuyers Notice attached hereto as Attachment "B" and in the Special Improvement District No. 121 Information Form, attached as Attachment "C". For further information regarding SID 121, contact the Director of Finance of the Clark County Finance Department at 500 South Central Parkway, P.O. Box 554000, Las Vegas, Nevada 89155-4000.

## SOUTHERN HIGHLANDS TELECOMMUNICATIONS NETWORK:

In cooperation with one or more telecommunication service provider(s), Master Declarant may, but shall not be required to, develop an integrated broadband network linking homes, offices, schools, health care and public facilities to provide the necessary transport platform for network-based services such as integrated voice, messaging, data, CATV, and interactive multimedia applications. The technology vision for the Community is to provide high speed data connectivity, video teleconferencing, video transport, and interactive multimedia services such as movies on demand, distance learning, remote diagnostic health care, and energy information services to help address the needs of an interactive community, where home, office, retail and commercial needs are met through cooperative and centrally managed network strategies. In addition, it is envisioned that a community server platform will create an intranet of electronic connections between all homes, offices, schools and other facilities. Master Declarant may, in its sole and absolute discretion, require each Dwelling to be pre-wired in accordance with specifications furnished by a telecommunication service provider selected by Master Declarant. It is expressly understood that such system, including all components thereof as so installed, shall become the property of Master Declarant, or, at the option of Master Declarant, of a telecommunication service provider selected by Master Declarant. Master Declarant reserves ownership of such system, and further reserves a non-exclusive easement in gross on, over, under or across the Lot for purposes of installation and maintenance of such system and for the benefit of Master Declarant or such other telecommunication service provider as may be selected by Master Declarant. Pursuant to agreement with the telecommunication service provider, each Owner in the Master Community, including, but not limited to Purchaser, may be subject to mandatory monthly service fees for the minimum period required by the provider, and Master Declarant or an affiliate may receive a fee under agreement with the telecommunication service provider.

## LIMITED WARRANTY; DISCLAIMERS:

THE UNIT AND COMMON ELEMENTS REASONABLY SHALL MEET THE ORDINARY STANDARDS OF THE SOUTHERN NEVADA HOMEBUILDING INDUSTRY FOR IMPROVEMENTS OF A COMPARABLE NATURE AND PRICE IN THE LAS VEGAS VALLEY, CLARK COUNTY, NEVADA.

DECLARANT SHALL PROVIDE A LIMITED WARRANTY ON THE UNIT (INCLUDING THE DWELLING), PURSUANT TO WHICH, DECLARANT WARRANTS THAT, FOR THE PERIOD OF ONE YEAR FOLLOWING CLOSE OF ESCROW OF THE DWELLING UNIT, DECLARANT SHALL REPAIR ANY CONSTRUCTIONAL DEFECT THAT MATERIALLY AND ADVERSELY AFFECTS THE VALUE OR USE OF THE DWELLING UNIT, NOT INCLUDING MINOR DEFECTS, PROVIDED THAT SUCH DEFECT IS PROMPTLY IDENTIFIED BY WRITTEN NOTICE FROM PURCHASER TO DECLARANT, SUBJECT TO PURCHASER PROVIDING REASONABLE ACCESS FOR THE REPAIR THEREOF. PURCHASER SHALL PROVIDE DECLARANT, AND/OR ITS EMPLOYEES, AGENTS AND SUBCONTRACTORS, WITH REASONABLE ACCESS TO THE UNIT FROM TIME TO TIME UPON REQUEST, FOR ANY SUCH REPAIRS AND/OR RELATED INSPECTIONS. PURCHASER SHALL

PURCHASER INITIALS _____ /_____          -7-

HAVE INSPECTED AND EVALUATED THE UNIT AND COMMON ELEMENTS AND SHALL HAVE LISTED ANY AND ALL DEFECTS ON PURCHASER'S "PUNCH LIST", AND, FOLLOWING CLOSING, THE UNIT AND COMMON ELEMENTS WILL BE SUBJECT TO ITEMS WHICH DO NOT MATERIALLY AFFECT STRUCTURAL INTEGRITY OR SAFETY (INCLUDING, BUT NOT LIMITED TO; REASONABLE WEAR, TEAR OR DETERIORATION; REASONABLE SHRINKAGE, SWELLING, EXPANSION OR SETTLEMENT; REASONABLE SQUEAKING, PEELING, CHIPPING, CRACKING, OR FADING; TOUCH-UP PAINTING; MINOR FLAWS OR CORRECTIVE WORK; AND LIKE ITEMS) AND SUCH ITEMS SHALL BE DEEMED "MINOR DEFECTS," ARE NOT CONSTRUCTIONAL DEFECTS, AND ARE NOT COVERED BY WARRANTY.

DECLARANT'S WARRANTY SHALL IN NO EVENT EXTEND TO: (A) ANY TREE OR PLANT INSTALLED BY DECLARANT (OTHER THAN CORRECTION OF ANY DEFECTS LISTED ON PURCHASER'S "PUNCH LIST"); (B) STRUCTURAL OR COSMETIC DAMAGE CAUSED BY SPRINKLER OVERSPRAY OR OVERWATERING; (C) DAMAGE TO PIPES AND FITTINGS, OR LEAKS IN THE SPRINKLER SYSTEM, CAUSED BY MAINTENANCE OR TRAFFIC; AND/OR (D) FROST DAMAGE OR FROZEN PIPES AND SPRINKLER SYSTEMS.

DECLARANT EXPRESSLY DISCLAIMS, AND PURCHASER EXPRESSLY WAIVES, ALL OTHER REPRESENTATIONS AND WARRANTIES, WHETHER EXPRESS OR IMPLIED (INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, AND/OR WORKMANSHIP), WITH RESPECT TO THE PROPERTY AND/OR COMMON ELEMENTS, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AND THE STATUTE OF LIMITATIONS THEREFOR SHALL NOT EXCEED TWO YEARS. NO EXPRESS WARRANTY IS MADE BY: (A) ANY AFFIRMATION OF FACT OR PROMISE THAT THE UNIT, COMMON ELEMENTS, OR ANY RIGHT OR USE RELATED THERETO WILL CONFORM TO THE AFFIRMATION OF FACT OR PROMISE MADE; (B) THE DISPLAY OF ANY MODEL OR THE CONTENTS THEREIN, OR THE DESCRIPTION OF ANY PHYSICAL CHARACTERISTIC OF THE IMPROVEMENTS IN THE COMMUNITY, PROVIDED THAT THE UNIT SHALL BE CONSTRUCTED SUBSTANTIALLY IN CONFORMANCE WITH, BUT NOT NECESSARILY IN A MANNER IDENTICAL TO, THE PARTICULAR PLANS AND SPECIFICATIONS FOR THE UNIT; (C) ANY DESCRIPTION OF THE QUANTITY OR EXTENT OF THE REAL ESTATE COMPRISING THE COMMUNITY, INCLUDING PLOTS OR SURVEYS; AND (D) ANY REPRESENTATION MADE BY ANY AGENT OF DECLARANT THAT PURCHASER MAY PUT THE PROPERTY TO A SPECIFIED USE, OTHER THAN RESIDENTIAL.

DECLARANT'S WARRANTY SHALL IN NO EVENT EXTEND TO ANY CONSUMER PRODUCT, APPLIANCE, AIR CONDITIONING UNIT, FURNACE OR WATER HEATER INCLUDED IN OR FOR THE EXCLUSIVE USE OF THE DWELLING UNIT ("CONSUMER PRODUCT"), IF WARRANTY IS PROVIDED BY THE MANUFACTURER OF THE CONSUMER PRODUCT. PURCHASER SHALL HAVE NO RIGHT TO RECOVER FOR ANY CONSEQUENTIAL DAMAGES SUFFERED AS A RESULT OF ANY DEFECTIVE MATERIALS OR WORKMANSHIP.

WITHOUT LIMITING ANY OF THE FOREGOING, THERE SHALL BE NO WARRANTY ON ANY LANDSCAPING INSTALLED BY DECLARANT ON ANY UNIT OR COMMON ELEMENT.

NOTWITHSTANDING THE FOREGOING, AND ANY OTHER PROVISION OF THIS PUBLIC OFFERING STATEMENT: (1) NO PROMISES, WARRANTIES, REPRESENTATIONS OR COMMITMENTS WILL BE BINDING ON MASTER DECLARANT OTHER THAN THOSE, IF ANY, SPECIFICALLY SET FORTH AS SUCH IN SEPARATE WRITING SIGNED BY MASTER DECLARANT; AND (2) MASTER DECLARANT IS NOT DEVELOPING, DESIGNING OR CONSTRUCTING ANY UNITS OR OTHER IMPROVEMENTS IN THE CHRISTOPHER COMMUNITIES AND IS NOT RESPONSIBLE FOR THE DESIGN, CONSTRUCTION OR WORKMANSHIP OF THE UNITS OR OTHER IMPROVEMENTS WITHIN THIS COMMUNITY (WHICH DESIGN, CONSTRUCTION AND WORKMANSHIP ARE SOLELY THE RESPONSIBILITY OF THE APPLICABLE BUILDER).

### _DISCLAIMERS REGARDING ANNEXATION:_

Pursuant to NRS § 116.4104, Declarant discloses that no assurances are made with respect to any of the following:

(a)     whether any annexable area may be annexed, or whether any phase(s) subsequent ("subsequent phase") to the initial phase may be developed;

PURCHASER INITIALS _____ / _____          -8-          wmr\2252.5\2.pos.01.wpd(08/22/01)

(b)     whether the buildings and other improvements in any subsequent phase, if developed, may be compatible with buildings and improvements in the initial phase in terms of architectural style, detail, quality of construction, landscaping and/or specific plant or building materials, and size;

(c)     where any buildings or other improvements in any subsequent phase, if developed, may be located; or

(d)     whether there may be any Limited Common Elements in any subsequent phase; or the types, sizes, or proportions of any such Limited Common Elements (as said term is defined in NRS Chapter 116).

### GOLF COURSE FENCE:

Declarant and/or the owner of the Golf Course ("Golf Course Owner") may from time to time install a fence ("Golf Course Fence"), which is not intended to mark the actual property boundary between the Golf Course and Lots located in the Christopher Collection Neighborhood, and which accordingly may be located: (i) on the property boundary between the Golf Course and a Lot; and/or (ii) on a portion of the Golf Course abutting a Lot.  Owners of Lots abutting the Golf Course are subject to certain duties and obligations, and certain easements in favor of the Golf Course, in connection with the Golf Course Fence, all as set forth in further detail in the Declaration and Easement Agreement Between Adjoining Landowners. Without limiting the foregoing, no Lot Owner who is not separately an authorized guest or member of the Golf Club shall be permitted upon the Golf Course or shall be entitled to use or enjoyment of the Golf Course or any of its playing elements. If a Lot Owner independently qualifies as an authorized guest or member of the Golf Club (subject to all rules and requirements of the Golf Course Owner in its sole discretion), then such authorized member or guest shall be permitted to use the Golf Course only at such times and in such manner as may be authorized by the Golf Course Owner in its sole discretion.

### GOLF COURSE DISCLOSURES AND DISCLAIMERS:

A.     The Golf Course/Golf Club/Health Club (collectively, "Golf Course") is NOT A PART of the Common Elements or Shared Common Elements, and NOT A PART OF THIS COMMUNITY. NEITHER MEMBERSHIP IN THE COMMUNITY ASSOCIATION NOR OWNERSHIP OR OCCUPANCY OF A UNIT SHALL CONFER ANY MEMBERSHIP, OWNERSHIP, OR ANY OTHER INTEREST IN OR RIGHT TO USE THE GOLF COURSE (EXCEPT ONLY IN THE EVENT AND TO THE EXTENT, IF ANY, SPECIFICALLY SET FORTH IN  WRITING SIGNED BY THE GOLF COURSE OWNER). The Golf Course is owned by a separate entity, and neither Declarant nor Master Declarant can make any representation that the Golf Course will always be a golf course or used for golf course purposes. No sales person, agent, employee or other individual is authorized to make any representation on behalf of Declarant or Master Declarant regarding these matters.

B.     There are additional detailed disclosures and disclaimers, easements, architectural review rights, and other matters related to the Golf Course and its owner, set forth in detail in the Declaration, including Sections 2.14, and 16.1 through 16.8, and 17.1(a) through (c), all of which should be read carefully by Purchaser, and which are incorporated herein by this reference.  Purchasers of homes in this Community should carefully consider all of the foregoing when contemplating the purchase of a Unit in this area.

### DISCLOSURES AND DISCLAIMERS OF CERTAIN OTHER MATTERS:

A.     The term "Properties" or "Community" (as used throughout these disclosure and disclaimer provisions shall include this Unit, other dwellings, and the Common Elements). The term(s) "Declarant" and/or "Builder" shall refer to the applicable Declarant and/or Builder, as identified on the first page hereof. All disclosures and disclaimers set forth in this Public Offering Statement shall be cumulative

PURCHASER INITIALS _____ / _____          -9-          wmr\2252.5\2.pos.01.wpd(08/22/01)

Declarant specifically disclaims any and all representations or warranties, express and implied, with regard to or pertaining to earthquake or seismic activities.

J.      The Properties also are or may be nearby underground petroleum products transmission pipelines (including, but not necessarily limited to, a major CALNEV petroleum products pipeline located underground within a fifty (50) foot wide easement under certain Common Elements), and malfunction of or damage to such underground pipelines may result in leakage, spillage, and/or migration of hazardous materials and pollution and/or other potentially dangerous conditions. Declarant hereby specifically disclaims any and all representations or warranties, express and implied, with regard to or pertaining to underground pipelines.

K.      The Properties are located adjacent to or nearby a certain parcel owned by a third party, on which is located a windmill which, when the wind blows, emits a loud noise which may be a nuisance, and that there may be other nuisances originating from said adjacent parcel.

L.      The Unit and other portions of the Properties from time to time may, but need not necessarily, experience problems with scorpions, bees, ants, spiders, termites, pigeons, or other insect or pest problems (collectively, "pests"); and each Purchaser must make its own independent determination regarding the existence or non-existence of any pests which may be associated with the Unit or other portions of the Properties.

M.      There is a high degree of alkalinity in soils and/or water in the Las Vegas Valley; such alkalinity tends to produce, by natural chemical reaction, discoloration, leaching and erosion or deterioration of concrete walls and other Improvements ("alkaline effect"); and the Unit and other portions of the Properties may be subject to such alkaline effect, which may cause inconvenience, nuisance, and/or damage.

N.      The Golf Course is or may be irrigated with reclaimed water or treated effluent water ("reclaimed water"), which may be sprayed or carried by the wind onto the Unit or other portions of the Properties. Also, portions of the Master Association Property, and/or other property and landscaping which the Master Association must maintain, are or may be irrigated with reclaimed water.  Pipes supplying reclaimed water may pass underground along the Community and/or across the Community entry way. Also, there may be (but need not necessarily) be a lake, or water detention area, located near the general vicinity of the Community, supplied all or in part with reclaimed water. Such reclaimed water may be malodorous and/or a potential hazard to health if ingested, and from time to time may be wind-blown across and upon the Community.

O.      The Properties, are located adjacent or nearby to certain undeveloped areas which may contain various species of wild creatures (including, but not limited to, coyotes and foxes), which may from time to time stray onto the Properties, and which may otherwise pose a nuisance or hazard.

P.      The Properties are or may be located adjacent to or within the vicinity of certain other property zoned to permit the owners of such other property to keep and maintain thereon horses or other "farm" animals, which may give rise to matters such as resultant noise, odors, insects, and other "nuisance"; additionally, certain other property located adjacent to or nearby the Properties may be zoned to permit commercial uses, and/or may be developed for commercial uses. Declarant makes no other representation or warranty, express or implied, with regard or pertaining to the future development or present or future use of property adjacent to or within the vicinity of the Properties.

Q.      Lots are subject to naturally occurring and man-made variations in elevation.  These changes in elevation gradient may result in the loss of privacy and other inconvenience or nuisance, particularly for lower Units. Declarant reserves the right to realign, relocate, or otherwise revise any parcel or lot layout design, which may detract from privacy for other Units in the area. Additionally, there may be a private heliport located nearby, but not within or not necessarily for use by this Community, which heliport, if constructed, would also result in varying degrees of loss of privacy, noise, and other inconvenience or nuisance.

PURCHASER INITIALS _____ / _____          -11-          wmr\2252.5\2.pos.01.wpd(08/22/01)

2213-20          000512

R.    Purchaser acknowledges having received from Declarant: (a) information regarding the zoning designations and the designations in the master plan regarding land use, adopted pursuant to NRS Chapter 278, for the parcels of land adjoining the Properties to the north, south, east, and west, together with (b) a copy of the most recent gaming enterprise district map made available for public inspection by the jurisdiction in which the Unit is located and related disclosures.  Declarant makes no further representation, and no warranty (express or implied), with regard to any matters pertaining to adjoining land or uses thereof or to any gaming issues.  Purchaser is hereby advised that the master plan and zoning ordinances, and gaming enterprise districts, are subject to change from time to time.  If Purchaser desires additional or more current information concerning these zoning designations, or gaming enterprise districts, Purchaser should contact the appropriate governmental planning department.  Purchaser acknowledges and agrees that Purchaser's decision to purchase a Unit is based solely upon Purchaser's own investigation and not upon any information provided by any sales agent.

S.    Purchaser understands, acknowledges and agrees that: (a) Declarant presently plans to develop only those Lots which have already been released for construction and sale, and that Declarant has no obligation with respect to future phases, plans,  zoning, or development of other real property contiguous to or nearby the Unit; (b) proposed or contemplated residential and other developments may have been illustrated in the plot plan or other sales literature in or from Declarant's sales office, and/or Purchaser may have been advised of the same in discussions with sales personnel; however, notwithstanding such plot plans, sales literature, or discussions or representations by sales personnel or others, Declarant is under no obligation to construct such future or planned developments or units, and such developments or units may not be built in the event that Declarant, for any reason whatsoever, decides not to build same; (c) Purchaser is not entitled to rely upon, and in fact has not relied upon, the presumption or belief that the same will be built; and (d) no sales personnel or any other person in any way associated with Declarant has any authority to make any statement contrary to the provisions set forth in this Public Offering Statement or in the Purchase Agreement.

T.    Declarant did not author the Master Declaration or other Master Governing Documents, and Declarant does not control Master Declarant  or the Master Association, which are independent and unrelated legal entities.  Accordingly, Declarant has no responsibility, obligation, or liability whatsoever to Purchaser or to the Association for: (1) the Master Declaration, or the provisions or enforcement thereof; (2) the actions or omissions of Master Declarant or Master Association, and/or (3) the use, regulation, operation, maintenance, improvement, or repair, of any property of the Master Association.  Each Purchaser, by acceptance of a deed to his or her lot, shall conclusively be deemed to have reviewed and understood the Southern Highlands Homebuyer's Notice prepared by Master Declarant (and attached to this Public Offering Statement) and the matters set forth therein.

U.    There are two separate and legally distinct Declarants (Builders) within this Community: one Declarant is responsible for the Christopher Collection, and improvements therein; and a different Declarant is responsible for the Villas and improvements therein. The Declarant for the Christopher Collection is not the same entity as, and is not responsible for the acts or omissions of, the Declarant for the Villas, and vice versa. Reference in this Public Offering Statement and/or Governing Documents to "Declarant" shall be deemed to apply to the applicable Declarant.

V.    Residential subdivision and new home construction are subject to and accompanied by substantial levels of noise, dust, construction-related traffic and traffic restrictions, and other construction-related "nuisances".  Purchaser acknowledges and agrees that it is purchasing a Unit which is within a residential subdivision (and Master Community) currently being developed, and that Purchaser will experience and accepts substantial levels of construction-related "nuisances" until the subdivision (and other portions of the Master Community) have been completed and sold out.

W.    Residential construction is an industry inherently subject to variations and imperfections and items which do not materially affect safety or structural integrity shall be deemed "expected minor flaws" (including, but not limited to: reasonable wear, tear or deterioration; shrinkage, swelling, expansion or settlement; squeaking, peeling, chipping, cracking, or fading; touch-up painting; minor flaws or corrective work; and like items) and not constructional defects; and Purchaser acknowledges that: (1) the finished

PURCHASER INITIALS _____ / _____          -12-          wmr\2252.5\2.pos.01.wpd(08/22/01)

construction of the Unit and the Common Elements, while within the standards of the industry in the Las Vegas Valley, Clark County, Nevada, and while in substantial compliance with the plans and specifications, will be subject to variations and imperfections and expected minor flaws; and (2) issuance of a Certificate of Occupancy by the relevant governmental authority with jurisdiction shall be deemed conclusive evidence that the improvement has been built within such industry standards.

X.    Indoor air quality of the Unit and Common Elements may be affected, in a manner and to a degree found in new construction within industry standards, by particulates or volatiles emanating or evaporating from new carpeting or other building materials, fresh paint or other sealants or finishes, and so on.

Y.    Model homes are displayed for illustrative purposes only, and such display shall not constitute an agreement or commitment on the part of Declarant to deliver the Unit in conformity with any model home, and any representation or inference to the contrary is hereby expressly disclaimed. None of the decorator items and other items or furnishings (including, but not limited to, decorator paint colors, wallpaper, window treatments, mirrors, upgraded carpet, decorator built-ins, model home furniture, model home landscaping, and the like) shown installed or on display in any model home are included for sale to Purchaser unless an authorized officer of Declarant has specifically agreed in a written Addendum to the Purchase Agreement to make specific items a part of the Purchase Agreement.

Z.    Declarant shall have the right, from time to time, in its sole discretion, to establish and/or adjust sales prices or price levels for new homes in the Community, and Declarant shall have the right, from time to time, to design and/or to build different or varying product types or designs for new homes on portions of the Annexable Area from time to time annexed hereto; and

AA.    Builder reserves the right, until the Close of Escrow of the last Unit in the Properties, to unilaterally control the entry gate(s) into the Community, and to keep all such entry gate(s) open during such hours established by Builder, in its sole discretion, to accommodate Builder's construction activities, and sales and marketing activities. Additionally, Master Declarant and/or Master Association reserve the right to unilaterally control the entry gate(s) into the Shared Entry Gate Area.

AB.    Declarant reserves the right, until the Close of Escrow of the last Unit in the Properties, to unilaterally restrict and/or re-route all pedestrian and vehicular traffic within or nearby the Properties, in Declarant's sole discretion, to accommodate Declarant's construction activities, and sales and marketing activities; provided that no Unit shall be deprived of access to a dedicated street adjacent to the Properties.

AC.    Purchaser understands, acknowledges, and agrees that Declarant has reserved certain rights, powers and easements in the Declaration, and that certain other developments have easements, powers and other rights as "Intended Beneficiaries" under the Declaration, and that such rights, powers and easements will or may limit certain rights of Owners and the Community Association.

AD.    The Southern Highlands Homebuyers Notice, attached hereto as Exhibit "B", is hereby incorporated by this reference, and all of the disclosures and disclaimers set forth therein shall additionally inure to the benefit of Declarant.

AE.    Builder and/or Master Declarant respectively reserve all other rights, powers, and authority of Builder and/or Master Declarant set forth in the Declaration and/or Master Declaration, respectively, and, to the extent not expressly prohibited by NRS Chapter 116, further reserves all other rights, powers, and authority, in the sole discretion of Builder and/or Master Declarant (as applicable), of a declarant under NRS Chapter 116 (including, but not necessarily limited to, all special declarant's rights referenced in NRS § 116.110385).

AF.    Purchaser understands, acknowledges, and agrees that Master Declarant has reserved certain rights, powers, and easements in the Master Declaration, and that the reserved rights of Master Declarant will limit certain rights of Owners and the Master Association. Purchaser further understands,

PURCHASER INITIALS _____ / _____                -13-                wmr\2252.5\2.pos.01.wpd(08/22/01)

2213-20                    000514

acknowledges, and agrees that Builder has reserved certain rights, powers, and easements in the Declaration, and that the reserved rights of Builder will limit certain rights of Owners and the Association.

## RELEASES OF DISCLOSED AND/OR DISCLAIMED ITEMS:

As an additional material inducement to Declarant to sell the Unit to Purchaser, and without limiting any provision in the Purchase Agreement or Declaration, Purchaser (for itself and all persons claiming under or through Purchaser) releases Declarant and its managers, employees, agents, suppliers and contractors, from any and all loss, damage or liability (including, but not limited to, any claim for nuisance or health hazards) related to or arising in connection with any disturbance, inconvenience, injury, or damage resulting from or pertaining to all and/or any one or more of the conditions, activities, occurrences described in the foregoing portions of this Public Offering Statement.

## USE RESTRICTIONS:

Use and occupancy of the Units and use of Common Elements are subject to certain restrictions specified in the Declaration and in the Master Declaration. Units in this Community may only be used for residential purposes. The use restrictions set forth in the Declaration and Master Declaration will be applicable to all phases of development. In the event of any irreconcilable conflict, the use restrictions set forth in the Master Declaration will prevail.

## SIGHT VISIBILITY RESTRICTION AREAS:

Certain areas, including certain portions of Common Elements located adjacent to streets or corners, are or may be designated on the Plat as Sight Visibility Restriction Easements. The maximum height of all improvements (including, but not necessarily limited to, landscaping) within such Sight Visibility Restriction Easements shall not exceed a maximum of twenty-four (24) inches or as otherwise set forth on the Plat.

## INSURANCE:

Detailed insurance provisions are set forth in the Declaration. Without in any way limiting or modifying the Declaration, the following information is provided. The Community Association will maintain, for its protection, general liability and casualty insurance covering personal injury and property damage occurring in the Common Elements, together with coverage on all persons handling Community Association funds. Each individual Owner is solely responsible for all insurance coverage on his or her individual Unit (including, but not necessarily limited to, fire, personal liability, and contents of dwelling insurance).

## JUDGMENTS:

There are no unsatisfied judgments or pending lawsuits against the Community Association and, to Declarant's knowledge, there are no pending lawsuits material to the Community.

## DECLARANT'S PERSONAL PROPERTY:

All of Declarant's tangible personal property used in the Community will remain the Declarant's property, and shall neither constitute nor be deemed property of the Community Association.

PURCHASER INITIALS _____/_____          -14-          wmr\2252.5\2.pos.01.wpd(08/22/01)

## PRIORITIES AND INCONSISTENCIES:

The Public Offering Statement and the Governing Documents and Master Association Documents shall be construed to be consistent with one another to the extent reasonably possible. If there exists any irreconcilable conflict or inconsistency, the terms and provisions of the Governing Documents and Master Association Documents shall prevail, subject to applicable law.

## CANCELLATION RIGHT:

Unless the prospective purchaser of a Unit or his or her agent has personally inspected the Unit to be purchased, the purchaser without penalty may cancel his or her purchase agreement by delivering written notice to the Declarant by midnight of the fifth (5th) calendar day following the date of execution of the purchase agreement.

## ATTACHMENTS:

A.  CHRISTOPHER COMMUNITIES AT SOUTHERN HIGHLANDS GOLF CLUB
    Statutory Statement
    *(to be signed separately by Purchaser)*

B.  SOUTHERN HIGHLANDS Homebuyer's Notice
    *(to be signed separately by Purchaser)*

C.  SPECIAL IMPROVEMENT DISTRICT #121 INFORMATION FORM
    *(to be signed separately by Purchaser)*

D.  Homebuyer's Acknowledgment, Waiver And Release of Certain Golf Course Matters
    *(to be signed separately by Purchaser)*

E.  Supplemental Declaration of Covenants, Conditions & Restrictions and Reservation of Easements
    for CHRISTOPHER COMMUNITIES AT SOUTHERN HIGHLANDS GOLF CLUB

E-1. "THE VILLAS" Neighborhood Supplement to Supplemental Declaration

F.  CHRISTOPHER COMMUNITIES AT SOUTHERN HIGHLANDS GOLF CLUB HOMEOWNERS
    ASSOCIATION Articles of Incorporation

G.  CHRISTOPHER COMMUNITIES AT SOUTHERN HIGHLANDS GOLF CLUB HOMEOWNERS
    ASSOCIATION Bylaws

H.  Community Association's Current Balance Sheet & Projected Budget for First Fiscal Year

I.  Community Association's Rules & Regulations

J.  Christopher Communities Design Criteria

K.  Southern Highlands Master Declaration

L.  Southern Highlands Master Association Articles of Incorporation

M.  Southern Highlands Master Association Bylaws

N.  Southern Highlands Master Association Rules & Regulations

PURCHASER INITIALS _____ / _____          -15-          wmr\2252.5\2.pos.01.wpd(08/22/01)

2213-20          000516

O.    Southern Highlands Master Association Current Balance Sheet and Projected Budget

P.    Notice of Zoning & Gaming Enterprise District Designation Map; Copies of Certain Statutes &
Notice of Soils Report; Waivers
*(to be signed separately by Purchaser)*

### *PURCHASER'S RECEIPT:*

THE UNDERSIGNED PURCHASER HEREBY ACKNOWLEDGES RECEIPT OF THE
ORIGINAL OF THIS PUBLIC OFFERING STATEMENT, WHICH IS SUMMARY IN NATURE, AND ALL
OF THE REFERENCED ATTACHMENTS, WHICH SHOULD BE THOROUGHLY REVIEWED. THE
UNDERSIGNED UNDERSTANDS THAT THESE ARE IMPORTANT DOCUMENTS WITH SERIOUS
LEGAL CONSEQUENCES. THE UNDERSIGNED REPRESENTS AND WARRANTS THAT HE
AND/OR SHE HAS HAD FULL AND FAIR OPPORTUNITY TO CONSULT WITH INDEPENDENT
LEGAL COUNSEL CONCERNING THIS TRANSACTION AND ALL OF THE ABOVE-DESCRIBED
DOCUMENTS, AND HAS REVIEWED ALL OF THE SAME TO THE EXTENT INDEPENDENTLY
DEEMED TO HAVE BEEN NECESSARY AND APPROPRIATE TO MAKE AN INFORMED DECISION
TO PURCHASE.

_____          _____
Signature (Purchaser)                             Signature (Purchaser)

_____          _____
Date                                                       Date

PURCHASER INITIALS _____ / _____          -16-          wmr\2252.5\2.pos.01.wpd(08/22/01)

## CHRISTOPHER COMMUNITIES AT SOUTHERN HIGHLANDS GOLF CLUB
PUBLIC OFFERING STATEMENT

ATTACHMENT "A"

CHRISTOPHER COMMUNITIES AT SOUTHERN HIGHLANDS GOLF CLUB
STATUTORY STATEMENT

*THE FOLLOWING STATEMENT STATUTORILY REQUIRED TO BE FURNISHED TO EACH HOME PURCHASER (PURSUANT TO SENATE BILL 451, 1999).*

**BEFORE YOU PURCHASE PROPERTY IN A COMMON-INTEREST COMMUNITY DID YOU KNOW . . .**

1. YOU ARE AGREEING TO RESTRICTIONS ON HOW YOU CAN USE YOUR PROPERTY? These restrictions are contained in a document known as the Declaration of Covenants, Conditions and Restrictions ("CC&Rs" or "Declaration") that should be provided for your review before making your purchase. The CC&Rs become a part of the title to your property. They bind you and every future owner of the property whether or not you have read them or had them explained to you. The CC&Rs, together with other "Governing Documents" (such as homeowners' association Articles, Bylaws and Rules and Regulations), are intended to preserve the character and value of properties in the community, but may also restrict what you can do to improve or change your property and limit how you use and enjoy your property. By purchasing a property encumbered by CC&Rs, you are agreeing to limitations that could affect your lifestyle and freedom of choice. You should review the CC&Rs and other Governing Documents before purchasing, to make sure that these limitations and controls are acceptable to you.

2. YOU WILL HAVE TO PAY OWNERS' ASSESSMENTS FOR AS LONG AS YOU OWN YOUR PROPERTY? As an owner in a common-interest community, you are responsible for paying your share of expenses relating to the common elements, such as landscaping, shared amenities and the operation of the homeowners' association ("Association"). The obligation to pay these assessments binds you and every future owner of the property. Homeowners' fees are usually assessed by the Association and due monthly. You have to pay dues whether or not you agree with the way the Association is managing the property or spending the assessments. The Association Board of Directors may have the power to change and increase the amount of the assessment and to levy special assessments against your property to meet extraordinary expenses. In some communities, major components of the community such as roofs and private roads must be maintained and replaced by the Association. If the Association is not well managed or fails to maintain adequate reserves to repair, replace and restore common elements, you may be required to pay large, special assessments to accomplish these tasks.

3. IF YOU FAIL TO PAY HOMEOWNERS' ASSESSMENTS, YOU COULD LOSE YOUR HOME? If you do not pay these assessments when due, the Association usually has the power to collect them by selling your property in a nonjudicial foreclosure sale. If fees become delinquent, you may also be required to pay penalties and the Association's costs and attorney's fees to become current. If you dispute the obligation or its amount, your only remedy to avoid the loss of your home may be to file a lawsuit and ask a court to intervene in the dispute.

4. YOU MAY BECOME A MEMBER OF A HOMEOWNERS' ASSOCIATION THAT HAS THE POWER TO AFFECT HOW YOU USE AND ENJOY YOUR PROPERTY? Many common-interest communities have a homeowners' association ("Association"). In a new development, the Association will usually be controlled by the developer until a certain number of units have been sold. After the period of developer control, the Association may be controlled by property owners like yourself who are elected by homeowners to sit on an executive board of directors and other boards and committees formed by the Association. The Association, and its Board of Directors, are responsible for assessing homeowners for the cost of operating the Association and the common or shared elements of the community and for the day to day operation and management of the community. Because homeowners sitting on the Board of Directors and other boards and committees of the Association may not have the experience or professional background required to understand and carry out the responsibilities of the association

2213-20                    000518

properly, or the time to do so, the Association may hire professional managers to carry out these responsibilities. Homeowner's associations operate on democratic principles. Some decisions require all homeowners to vote, some decisions are made by the Board of Directors or other boards or committees established by the Association or Governing Documents. Although the actions of the Association and its Board of Directors are governed by state laws, the CC&Rs and other documents that govern the common-interest community, decisions made by these persons will affect your use and enjoyment of your property, your lifestyle and freedom of choice, and your cost of living in the community. You may not agree with decisions made by the Association or its governing bodies even though the decisions are ones which the Association is authorized to make. Decisions may be made by a few persons on the Board of Directors or governing bodies that do not necessarily reflect the view of the majority of homeowners in the community. If you do not agree with decisions made by the Association, its Board of Directors or other governing bodies, your remedy is typically to attempt to use the democratic processes of the Association to seek the election of members of the Board of Directors or other governing bodies that are more responsive to your needs. If persons controlling the Association or its management are not complying with state laws or the Governing Documents, your remedy is typically to seek to mediate or arbitrate the dispute and, if mediation or arbitration is unsuccessful, to file a lawsuit and ask a court to resolve the dispute. In addition to your personal cost in mediation or arbitration, or to prosecute a lawsuit, you may be responsible for paying your share of the Association's cost in defending against your claim. There is no government agency in this state that investigates or intervenes to resolve disputes in homeowner's associations.

5.    YOU ARE REQUIRED TO PROVIDE PROSPECTIVE BUYERS OF YOUR PROPERTY WITH INFORMATION ABOUT LIVING IN YOUR COMMON-INTEREST COMMUNITY? The law requires you to provide to a prospective purchaser of your property, before you enter into a purchase agreement, a copy of the community's Governing Documents (including the CC&Rs, Association Bylaws, and Rules and Regulations), as well as a copy of this document. You are also required to provide a copy of the Association's current financial statement, operating budget and information regarding the amount of the monthly assessment for common expenses, including the amount set aside as reserves for the repair, replacement and restoration of common elements. You are also required to inform prospective purchasers of any outstanding judgments or lawsuits pending against the Association of which you are aware. You are also required to provide a copy of the minutes from the most recent meeting of the Association or its Board of Directors. For more information regarding these requirements, see Nevada Revised Statutes § 116.4103.

6.    YOU HAVE CERTAIN RIGHTS REGARDING OWNERSHIP IN A COMMON-INTEREST COMMUNITY THAT ARE GUARANTEED YOU BY THE STATE? Pursuant to provisions of Chapter 116 of Nevada Revised Statutes, you have the right: (a) to be notified of all meetings of the Association and its Board of Directors, except in cases of emergency; (b) to attend and speak at all meetings of the Association and its Board of Directors, except in some cases where the executive board is authorized by statute to meet in closed, executive session; (c) to request a special meeting of the Association upon petition of at least 10 percent of the homeowners; (d) to inspect, examine, photocopy and audit financial and other records of the Association; (e) to be notified of all changes in the community's rules and regulations and other actions by the Association or its Board that affect you.

7.    QUESTIONS? Although they may be voluminous, you should take the time to read and understand the Governing Documents that will control your ownership of a property in a common-interest community. You may wish to ask your real estate professional, lawyer or other person with experience to explain anything you do not understand. You may also request assistance from the ombudsman for owners in common-interest communities, Nevada Real Estate Division, at (702) 486-4033.

_____
Signature (Purchaser)                                          _____
                                                              Signature (Purchaser)

_____                                      _____
Date                                                          Date

2213-20        000519

## TO BE SIGNED AT CONTRACT SIGNING

**BUILDER:** _Christopher Homes_

**NEIGHBORHOOD:** _Christopher Collection_

**LOT/BLOCK:** _92_

**BUYER'S NAME:** _Mr Ferguson_

*Southern Highlands*

---

### SOUTHERN HIGHLANDS HOMEBUYER'S NOTICE

Southern Highlands is a master planned community of approximately 2,050 total acres located in the southwest Las Vegas Valley bounded by Jones Boulevard on the west to Cactus Avenue on the north and Interstate 15 on the east nestled along desert mountains in the south and westerly parts of the Community. Southern Highlands is located entirely within unincorporated Clark County (the "County").

Southern Highlands Development Corporation ("SHDC") is principally the master developer of Southern Highlands. SHDC has or is in the process of selling portions of the land in Southern Highlands to homebuilders and other residential developers, including the builder of your home referred to above (the "Builder"). SHDC is not responsible for the design, construction or workmanship of these homes, which are solely the responsibility of the Builder. The balance of the land within Southern Highlands may be retained by SHDC for future residential or commercial opportunities.

The purpose of this Notice is to provide general information about SHDC's plans for future development of Southern Highlands and other general information that may be relevant to your decision to purchase a home or homesite within the Community.

1.    COMMUNITY ASSOCIATION.

The Southern Highlands Community Association (the "Community Association") is a nonprofit corporation which is primarily responsible for the management and maintenance of landscaped common areas, and other common element community facilities within Southern Highlands. The Community Association is also responsible for the enforcement of use restrictions and rules and regulations for Southern Highlands.

Buyer's Initials:

As a Southern Highlands homeowner or homesite owner, you will be automatically a member of the Community Association. Your home and lot will be subject to fees ("Assessments") and to the restrictions on use described in (i) a Master Declaration of Covenants, Conditions and Restrictions for Southern Highlands which has been recorded in the land records of Clark County, Nevada on January 6, 2000 in Book 20000106, Instrument No. 01678, a First Amendment To Master Declaration Of Covenants, Conditions And Restrictions For Southern Highlands which has been recorded in the land records of Clark County, Nevada on January 6, 2000 in Book 20000106, Instrument No. 01679 and any other subsequent amendments thereto (collectively, the "Master Declaration for Southern Highlands"), and (ii) any Supplemental Declaration of Covenants, Conditions and Restrictions that may relate specifically to the neighborhood in which you live.

You should receive copies of each of these documents from your Builder's sales representative before you sign a contract to purchase a home or homesite. If you have not received copies, please contact the property manager of Southern Highlands Community Association, RMI Property Management, attention Kevin Wallace at (702) 737-8580. You will be charged monthly for your share of the annual Assessments to the Community Association. The amount of the annual Assessments is subject to increase by the Community Association according pursuant to the terms of the Master Declaration for Southern Highlands. Your home or homesite may also be part of a sub-association or neighborhood which may charge additional fees for the maintenance of your particular neighborhood. You should ask your sales representative for the current Assessment for your home or homesite and inquire to determine whether your home or homesite may also be part of a sub-association or neighborhood which may charge additional fees for the maintenance of your particular neighborhood.

2.      SOUTHERN HIGHLANDS USE AREAS.

Southern Highlands has been divided generally into three use areas, each of which has its own unique character and intended use. The three areas comprising Southern Highlands are referred to generally as the "Village Area," the "Enclave Area" and "Commercial Area." For convenience, a depictive rendering ("Rendering") of Southern Highlands is attached hereto as Exhibit A. The Rendering is attached for convenience purposes only and shall not impose any duty or obligation upon SHDC to construct any portion of the matters shown thereof in accordance with the depiction.

THE VILLAGE AREA

The northerly portion of Southern Highlands, located generally north of the old Starr Avenue alignment and south of Cactus Avenue, is a mixed use 900 acre residential area that is expected to include single family detached houses, single family attached dwellings, rental apartments and a neighborhood commercial/convenience component. The rental apartments and the commercial/convenience component will not be encumbered by the Master Declaration for Southern Highlands. The Villages features landscaped traffic arterials, parks (which may include both active recreation and passive recreation) and open spaces and a portion of walking trails meandering through the Community. Ultimately, SHDC intends to dedicate certain public parks

Buyer's Initials:

to the Clark County Parks Department and the ongoing maintenance and operation of the appropriate parks and recreational areas located within The Villages. The remaining open space, common areas and other park areas shall ultimately be conveyed by SHDC to the homeowners association which will be responsible for the ongoing maintenance and operation of such areas located within The Villages. The Villages is expected to be primarily developed by various residential "production" homebuilders. Located just to the south of The Villages at the expected intersection of the Southern Highlands Parkway and Valley View will be the Village Center providing commercial retail opportunities to the residents of Southern Highlands.

Depending on your Builder, a purchaser of a homesite in The Villages may have their property subjected to additional covenants, conditions and restrictions or similar matters affecting their use and enjoyment of their homesite through the recordation of a "community subassociation" or through a "neighborhood assessment." The purpose of these instruments is to provide a mechanism for the assessment and payment of and governance of differing levels of amenities affecting a particular portion of The Villages. Your Builder should provide you with copies of all documentation relating to either a "community subassociation" or "neighborhood assessment," if applicable, before you sign a contract to purchase a homesite in The Villages subject to any such additional restrictions.

## THE ENCLAVE AREA

The Enclave is a 500 acre mixed use luxury residential, commercial and golf course area generally located to the south of the Starr Avenue alignment, west of Southern Highlands Parkway and north of the Bruener Avenue alignment along the desert mountains. The Enclave contains two distinct residential opportunities. The Enclave at Southern Highlands Golf Club contains private custom homesites, while the Christopher Communities at Southern Highlands Golf Club contain a "semi-custom" residential component and a villa product. Also located within The Enclave area is Southern Highlands Golf Club, which is a private 18-hole golf, dining and health facility club. The golf course will not be encumbered by the Master Declaration for Southern Highlands. The Enclave features landscaped traffic roadways and various open spaces. Common areas and open spaces shall ultimately be conveyed by SHDC to the homeowners association which will be responsible for the ongoing maintenance and operation of such areas located within The Enclave. Located just to the northeast of The Enclave will be the Village Center providing commercial retail opportunities to the residents of Southern Highlands.

Purchasers of homesites in The Enclave will have their property subjected to additional covenants, conditions and restrictions relating to The Enclave, which will be recorded in the land records of Clark County, Nevada against the homesites within The Enclave ("Enclave Declaration"). You should receive copies of the Enclave Declaration from your lot sales representative before you sign a contract to purchase a homesite or home in The Enclave area subject to the Enclave Declaration.

## COMMERCIAL AREA

Southern Highlands has a designated commercial area of approximately 475 acres mixed use commercial located generally to the east of The Enclave, south of the old Starr Avenue

Buyer's Initials

alignment and extending generally to the southernmost portion of the Community. The commercial area is ultimately expected to be developed by SHDC or sold by SHDC to developers who shall undertake the development thereof. A portion of the commercial area located generally at Lake Mead Boulevard west of Interstate 15 is a proposed resort/casino area or gaming overlay zone. The commercial area will not be encumbered by the Master Declaration for Southern Highlands.

3.     SOUTHERN HIGHLANDS SPECIAL IMPROVEMENT DISTRICT.

Affecting the real property comprising Southern Highlands, including all residential areas, is Southern Highlands Special Improvement District No. 121 recorded in the official land records of Clark County, Nevada on December 17, 1999 in Book 991217 as Instrument No. 00909. The purpose of the Special Improvement District is to provide low cost financing through the issuance of tax-exempt county bonds for some of the major public improvements in the District. All of the projects financed by the District will ultimately be owned, operated and maintained by the County, the State of Nevada and the Las Vegas Valley Water District. All billings for the District will be billed to you by the County on a semi-annual basis. The exact amount of your bill will depend on the size of your lot and the interest rate in effect at the time the bonds were sold prior to your closing date. Your payments will be substantially the same from year to year and are not subject to any significant change. For further information regarding Southern Highlands Special Improvement District No. 121, you should contact the Director of Finance of the Clark County Finance Department at 500 South Grand Central Parkway, P.O. Box 554000, Las Vegas, Nevada 89155-4000.

4.     PUBLIC SCHOOLS.

SHDC does not construct or finance public schools, but works closely with the Clark County School District (the "District") throughout the community planning process to propose a school site to be located in Southern Highlands. The Clark County School District Board of Trustees then considers any such possible site or sites for approval and raises funds for construction of new schools. The District is the public agency which selects the individual school sites, arranges for the funding, designs, facilitates and constructs the schools. In the event public schools are constructed within Southern Highlands, there is no guarantee that children residing in Southern Highlands will be assigned the schools located in Southern Highlands.

5.     REGIONAL GAMING DISTRICT/GAMING OVERLAY.

It is the intention of SHDC to pursue those necessary entitlements to create a gaming designation site located generally in the vicinity of Lake Mead Boulevard west of Interstate 15.

6.     TREATED WASTEWATER.

Where possible, SHDC will utilize ecologically sensitive landscaping materials and irrigation techniques to help preserve Southern Nevada's precious natural resources. Because of the growing scarcity of water in the Las Vegas Valley, it is becoming imperative to find alternate means to irrigate landscaping in public places. It is likely that treated wastewater will be used to

Buyer's Initials:_____

irrigate common area streetscapes, parks and recreational areas and Southern Highlands Golf Club in the future. Purchasers of homes or homesites near such areas should expect treated wastewater to be used on landscaping in the future. Although such water will meet or exceed all requirements of state and local laws to protect public health, some may find the odor of treated wastewater to be offensive and should consider this when contemplating the purchase or construction of a home or homesite on or near a golf course or park area.

7.    LIGHTED FIELDS.

The high demand placed on active recreation parks containing baseball, softball and soccer fields, tennis courts and other outdoor sports facilities may necessitate the use of such areas after dark with high intensity lights. Outdoor lights may be erected on any parks designated for recreation or on the campus of any public school or private school located within Southern Highlands. Such lights and activities taking place on the fields at night may be considered a nuisance by some homeowners located adjacent to or in the vicinity of such lighted fields. If you have a concern about purchasing a home or homesite near a lighted field, please contact the homeowner association for the most current information regarding the location of such facilities.

8.    SOUTHERN HIGHLANDS PARKWAY AND MAJOR ARTERIAL CONSTRUCTION.

SHDC is in the process of constructing the Southern Highlands Parkway and other major arterial roadways providing access in and around Southern Highlands. Until such time as such construction is completed, homeowners should expect construction activities to create noise and dust in the areas near such construction. When completed, these major roadway improvements should significantly improve the traffic flow within Southern Highlands. In connection with the construction of the Southern Highlands Parkway and other major arterial roadways located within Southern Highlands, SHDC will conduct aggregate (gravel) processing and may operate concrete and asphalt plants to assist with the construction of such thoroughfares. Such operations will necessarily create some degree of noise, dirt and other nuisances until the construction has been completed. SHDC hereby reserves the right to realign, reconfigure, delete entirely or modify any roadway or arterial within Southern Highlands.

9.    SOUTHERN HIGHLANDS GOLF CLUB.

Southern Highlands Golf Club is located generally within The Enclave area; however, Southern Highlands Golf Club is not an amenity of The Enclave area nor an amenity for the Community in general. Southern Highlands Golf Club is a private 18-hole golf, dining and health facility club. Neither the purchase of a home or homesite within Southern Highlands shall provide the purchaser with any rights or privileges to become a member of Southern Highlands Golf Club, to play golf on the Southern Highlands Golf Club course or use any other facility inhering to Southern Highlands Golf Club, except the right to apply for a membership on the same basis as all other unsolicited membership candidates. Purchasers of homes or homesites in The Enclave will have their property subject to the Enclave Declaration which contain various additional covenants and specific disclosures, waivers and disclaimers concerning the Golf Club

Buyer's Initials:

as more fully set forth therein.  Homeowners in the vicinity of the Southern Highlands Golf Club may experience noise, dust and other nuisance resulting from the ongoing maintenance and operation of Southern Highlands Golf Club.  Purchasers of homes or homesites in The Enclave should carefully consider the immediate proximity of such home or homesites to the golf course when contemplating the purchase or construction of a home or homesite in such area, including but not limited to loss of privacy, impairment of views through growth of vegetation or new plantings, noise, sprinkler overspray, damage or destruction from flying golf balls or any other nuisance resulting from the Golf Club.

SHDC does not own the Golf Club, therefore, SHDC cannot control that the Golf Club will, in fact, always be a golf course or used for golf course purposes.  No sales person, agent, employee or other individual is authorized to make any representation on behalf of SHDC regarding the use, or continued use of the Golf Club as a golf course.  Purchasers of homes or homesites in The Enclave should carefully consider the foregoing when contemplating the purchase or construction of a home or homesite in such area.

10.    SECURITY SERVICES/PATROLS.

The installation or maintenance of any security or other types of barrier devices within Southern Highlands, any security guard patrol whether roving or otherwise, other security measures or traffic access control device, operation or method, shall not create any presumption or duty whatsoever of SHDC, Southern Highlands or the Community Association with regard to security or protection of person or property within Southern Highlands.  By accepting to purchase your particular lot within Southern Highlands, you have agreed to take any and all protective and security measures and precautions which a reasonably prudent person would undertake in the event any such security measures or other protective services within the Community had not been taken.  Further, you acknowledge that any gated entrances may restrict or delay entry into such area by law enforcement, fire protection and/or emergency medical care personnel and vehicles.  By accepting to purchase your particular lot within Southern Highlands, you agree to voluntarily assume all risks of such restricted delay or entry.  The provision of any security measures by SHDC, Southern Highlands or the Community Association does not guarantee that such services will be ongoing, any such services are expressly subject to modification, restriction or cancellation.

11.    VIEWS.

When selecting a new home or homesite, many purchasers choose a particular location because of its view of the mountains, the city vista, golf courses, parks or other attractive sights. Please be aware, however, that future construction, recontouring, decontouring or landscaping may impair or obstruct your view or otherwise remove your view altogether.  Neither SHDC, your Builder, the homeowner association nor anyone else can guarantee that views will be maintained in the future.  In particular, be aware that when trees mature, they may obstruct views from your home or homesite.

Buyer's Initials: _____

12.    VARIED ELEVATION.

Homes or homesites within Southern Highlands are subject to naturally occurring and manmade variances in elevation, which in some instances may be extreme. These changes in elevation gradient may result in the loss of privacy for lower lying homes or homesites. Additionally, SHDC is currently exploring the concept of providing a heliport for helicopter access to certain of the uppermost portions of a selected number of lots located in the Enclave area. Care should be taken in purchasing a home or homesite if you are particularly sensitive to any resulting loss of privacy from the naturally occurring or manmade differences in elevation gradient. Similarly, SHDC reserves the right to realign, relocate or otherwise revise any parcel or lot layout design located within Southern Highlands, the result of which may impinge the privacy for such other homes or homesites in the vicinity thereof. Purchasers of homes or homesites in areas subject to naturally occurring or man made elevation gradients should consider this when contemplating the purchase or construction of a home or homesite in such area.

13.    TOPOGRAPHICAL FEATURES/CONTOURING.

At present, Southern Highlands contains numerous naturally occurring topographical variances in elevation such as rock outcroppings, hills and mountains. SHDC reserves the right to recontour, decontour or otherwise remove altogether any such topographical feature within Southern Highlands. Purchasers of homes or homesites in the vicinity of any such topographical features should consider this when contemplating the purchase or construction of a home or homesite in such area.

14.    AIR TRAFFIC NOISE.

McCarran International Airport is located approximately seven miles to the north/ northeast of Southern Highlands. Because Southern Highlands lies within a Clark County avigation easement area, air traffic from McCarran International Airport may, from time to time, be routed over Southern Highlands. Located approximately three miles to the east of Southern Highlands is the Henderson Executive Airport which is largely a cargo and private plane airport facility. Similarly, the Clark County Department of Aviation owns or controls the Henderson Executive Airport which may also have certain rights to utilize the Clark County avigation easement area, and therefore, certain air traffic from Henderson Executive Airport may, from time to time, be routed over Southern Highlands. Because SHDC does not have the power or ability to control air traffic over the Community, whether from McCarran International Airport or the Henderson Executive Airport, purchasers of homes or homesites within Southern Highlands who are sensitive to the noise or nuisance created by air traffic should consider this when contemplating the purchase or construction of a home within Southern Highlands.

15.    OWNERSHIP OF "IN-FILL" PARCELS.

While SHDC, or related entities to SHDC, owns or controls the majority of the land within the boundaries of Southern Highlands, there are certain parcels of real property located within the boundaries of Southern Highlands owned by other persons or entities. These

Buyer's Initials:

2213-20          000527

additional parcels ("In-Fill Parcels"), while technically located within the area of Southern Highlands, are not subject to the same land use restrictions as the other portions of Southern Highlands. However, such In-Fill Parcels are subject to all federal, state, county and any local ordinances, rules and regulations regarding the use of real property. SHDC cannot control the use of such In-Fill Parcels and therefore, purchasers of homes or homesites near such areas should consider this when contemplating the purchase or construction of a home next to or in the vicinity of such an In-Fill Parcel.

16.    SURROUNDING LAND.

The majority of land surrounding Southern Highlands along the communities south, southwest and westerly boundaries are primarily owned by the United States Department of the Interior, Bureau of Land Management ("BLM"). While SHDC is not currently aware of any future development expected to occur by private parties on such surrounding land, SHDC does not and cannot make any representations regarding the future uses of such land. Purchasers of homes or homesites near such areas should consider this when contemplating the purchase or construction of a home in this area. Additionally, the Rendering attached hereto illustrates conceptual recreational and other uses regarding the BLM land surrounding the Community. SHDC cannot control nor guarantee such future uses and any such future uses are subject to approval and permitting processes as mandated by the BLM. SHDC shall not be required to apply for or otherwise procure any BLM approvals or permits regarding the BLM land surrounding Southern Highlands. For information regarding the surrounding BLM lands, please contact the Las Vegas District Office of the BLM office at (702) 647-5000.

17.    OVERHEAD POWER LINES.

In Southern Highlands, as in other developing communities, it may be necessary to construct overhead power transmission lines and substations on, in or in the immediate vicinity of the Community. The exact location of all of these facilities is not yet known; however, SHDC has entered into an agreement with Nevada Power Company regarding the relocation of the Arden-McCullough transmission lines from a location generally along the easterly boundary of the Community to a location mostly off of the land comprising Southern Highlands in the south along the desert mountains, thence along Jones Boulevard to a connection point along the Frias Avenue alignment to the existing Arden-McCullough No. 2. line. A portion of the relocated Arden-McCullough line may traverse a corner of land in the uppermost northwesterly corner of The Villages. More information regarding the relocation of the Arden-McCullough transmission line may be obtained by contacting Nevada Power at (702) 367-5555. The location of these facilities may be subject to change in the future and additional facilities may be constructed that are not currently anticipated.

Power transmission lines generate electromagnetic fields ("EMFs"). EMFs increase in intensity with closer proximity to transmission lines and with greater voltage carried by the lines. There is currently controversy in the scientific community over the health consequences of prolonged exposure to EMFs. Neither SHDC nor the Builder of your home have any expertise or special knowledge of such health effects and are not competent to advise you on such matters. You should not rely on any representations made by brokers or sales agents with respect to such

Buyer's Initials:

medical or scientific concerns. You may wish to contact your own health care professional for further advice. You may also contact Nevada Power Company at (702) 367-5555 for further information on future plans for overhead lines and substations.

18.  GAS TRANSMISSION LINE.

On or about October 21, 1960, Cal-Nev Pipeline Company received a Right-Of-Way Grant from the United States Department of the Interior, Bureau of Land Management, as BLM #N–056213, and on or about May 20, 1975, Cal-Nev Pipeline Company received a Right-Of-Way Grant from the United States Department of the Interior, Bureau of Land Management, as BLM #N–7100, both for the construction and operation of a subsurface petroleum products pipeline through a portion of the land in Southern Highlands. On or about September 22, 1997, Olympic Group, L.L.C., a predecessor-in-interest to SHDC, entered into a Superseding Right-Of-Way Grant concerning the former BLM grants regarding the Cal-Nev pipeline which was recorded in the land records of Clark County, Nevada on October 8, 1997 in Book 971008 as Instrument No. 00631. For convenience, the current location of the pipeline is shown on the attached map attached hereto as Exhibit B.

Because of the hazards posed by petroleum gas pipelines, some aspects of pipeline activity are regulated by the Federal Government. The Cal-Nev pipeline may be subject to such federal regulations. Despite such regulations, accidents do sometimes occur. Pipeline incidents that result in more than a specified dollar amount of property damage, or involve fatalities or injuries causing hospitalization, must be reported by the utility company operating the pipeline to the Office of Pipeline Safety. Data regarding certain specified accidents may be obtained from the Office of Pipeline Safety. Current federal law does not establish a minimum distance between a pipeline and a home. If you have any further questions concerning the Cal-Nev pipeline, it is recommended that you call the Environmental Review and Compliance Branch of the Federal Energy Regulatory Commission (202-208-0091), the Office of Pipeline Safety or Cal-Nev Pipeline Company (909-888-7771).

19.  BLM MATERIALS PIT.

On or about May 4, 1960 and August 1, 1960, State of Nevada Department of Highways ("NDOT") received a right-of-way grant from the United States Department of the Interior, Bureau of Land Management, as BLM #N-050840 and #N-055724 which was amended on or about April 8, 1993 for the construction and operation of a BLM materials site right-of-way and the provision of an access road thereto. Currently, the site is being utilized for the excavation and hauling of sand and gravel materials in connection with NDOT projects. Use of the site may create some degree of noise, dirt and other nuisances associated with the excavation and hauling of materials therewith. Purchasers of homes or homesites near such area should consider this when contemplating the purchase or construction of a home in this area. For additional information regarding the BLM materials pit, please contact the Las Vegas District Office of the BLM at (702) 647-5000.

Buyer's Initials:

20.    <u>FUTURE ANNEXATIONS</u>.

Today, the acreage of the land comprising Southern Highlands is approximately 1,875 acres.  SHDC may acquire certain lands surrounding SHDC which may ultimately be annexed into the community.  However, SHDC cannot guarantee that surrounding lands will ever be annexed into the community.  If you would like additional information from SHDC regarding any plans it may have regarding the possible annexation of future lands to Southern Highlands, please contact SHDC at (702) 616-3800.

21.    <u>PUBLIC OFFERING STATEMENT</u>

Nevada law requires a seller of a residential unit in a common interest community to provide certain important information to the purchasers thereof.  This information is required to be set forth in a document called a "Public Offering Statement" to be provided by the Builder or seller of your specific home or homesite.  SHDC is not responsible for the contents of any Public Offering Statement supplied by any Builder to you.  If you have not previously received a Public Offering Statement from your Builder, you should ask your sales representative for the Public Offering Statement.

22.    <u>FOR FURTHER INFORMATION</u>.

For further information about Southern Highlands, you may contact SHDC at (702) 616-3800.

**THIS NOTICE DESCRIBES IN GENERAL TERMS THE PLANS CURRENTLY UNDER CONSIDERATION FOR THE DEVELOPMENT OF SOUTHERN HIGHLANDS AND CERTAIN OTHER INFORMATION WHICH MAY BE RELEVANT TO PURCHASING A HOME OR HOMESITE IN SOUTHERN HIGHLANDS.  THE FOREGOING IS NOT MEANT TO CONSTITUTE AN EXHAUSTIVE LIST OF THE MATTERS WHICH MAY IMPACT YOUR DECISION TO PURCHASE A HOME OR HOMESITE IN SOUTHERN HIGHLANDS AND THEREFORE, YOU SHOULD UNDERTAKE ADDITIONAL INVESTIGATION DEEMED APPROPRIATE BY YOU TO DETERMINE IF PURCHASING A HOME OR HOMESITE IN SOUTHERN HIGHLANDS IS APPROPRIATE FOR YOUR PARTICULAR CIRCUMSTANCES.  ALL PLANS REGARDING SOUTHERN HIGHLANDS ARE SUBJECT TO CHANGE WITHOUT FURTHER NOTICE.  SHDC RESERVES THE RIGHT TO DEVELOP SOUTHERN HIGHLANDS IN ANY LAWFUL MANNER.  YOU SHOULD NOT RELY ON ANY ORAL OR WRITTEN REPRESENTATIONS OF A SALES REPRESENTATIVE OR BROKER WITH RESPECT TO FUTURE DEVELOPMENT WITHIN SOUTHERN HIGHLANDS.  SUCH PERSONS ARE NOT AGENTS OF AND HAVE NO AUTHORITY TO REPRESENT SHDC OR THE NATURE OF ANY FUTURE DEVELOPMENT OUTSIDE OF ITS SUBDIVISION.**

Buyer's Initials:

**IF ANY REPRESENTATION MADE BY A SALES AGENT OR REAL ESTATE BROKER APPEARS TO BE IN CONFLICT WITH THE INFORMATION CONTAINED IN THIS NOTICE, PLEASE CONTACT SHDC AT (702) 616-3800 FOR CLARIFICATION <u>BEFORE SIGNING ANY CONTRACT</u>.**

By signing below, you acknowledge you have read and understood this Notice to prospective homebuyers.

Name (please print): _Steven Ferguson_

Signature: _Steven Ferguson_

Date: _12/1/01_

Name (please print): _____

Signature: _____

Date: _____

Name (please print): _____

Signature: _____

Date: _____

Buyer's Initials _____

Page 11
Rev. 05/12/00
j \\scottsdale\data\jgf\general 2000\sthm hlnds homebuyers ntc13.doc

2213-20        000531

**CHRISTOPHER COMMUNITIES AT SOUTHERN HIGHLANDS GOLF CLUB**
**PUBLIC OFFERING STATEMENT**

**ATTACHMENT "D"**

**HOMEBUYER'S ACKNOWLEDGMENT, WAIVER AND RELEASE OF
CERTAIN GOLF COURSE MATTERS**

SOUTHERN HIGHLANDS/CHRISTOPHER HOMES I, L.L.C. , BUILDER OF THE CHRISTOPHER COLLECTION AT SOUTHERN HIGHLANDS ("CHRISTOPHER COLLECTION"), AND/OR SOUTHERN HIGHLANDS/CHRISTOPHER HOMES II, L.L.C. , BUILDER OF THE VILLAS ("THE VILLAS"), HEREBY PROVIDE THE FOLLOWING INFORMATION WHICH MAY BE RELEVANT TO A PROSPECTIVE PURCHASER'S DECISION TO PURCHASE A HOME IN THE CHRISTOPHER COMMUNITIES:

Golf Course Use and Access. A private 18-hole golf course, dining and private club, and related improvements and facilities, known as the Southern Highlands Golf Club (all, collectively, the "Golf Course") is or may be shown in the master plan of Southern Highlands, but the Golf Course is NOT A PART of the Southern Highlands Master Community and is NOT A PART of the Master Association Property. Neither ownership of property within the CHRISTOPHER COMMUNITIES nor membership in The Christopher Communities At Southern Highlands Golf Club Homeowners Association or the Southern Highlands Community Association will entitle any Owner or Resident to any use or ownership interest in the Golf Course or its related facilities. Further, there is no assurance that the Golf Course always will be owned by its present owner or always will be used as a golf course. In the future, it is possible that the Golf Course may be conveyed to other owner(s), and its use may be changed to a use other than a golf course.

Golf Course and/or Master Association Property Irrigation Water. Without in any way limiting the foregoing, the Golf Course and/or portions of the Master Association Property may be irrigated with treated effluent water. Such irrigation water may from time to time be wind-blown across and upon the CHRISTOPHER COMMUNITIES. The undersigned purchaser waives, releases and covenants never to prosecute any action or suit, in law or equity, or any claim or demand against Southern Highlands Development Corporation, Southern Highlands/Christopher Homes I, L.L.C., Southern Highlands Homeowners Association, The Christopher Communities At Southern Highlands Golf Club Community Association or the Southern Highlands Community Association, the Golf Course owner and/or operator, and their respective successors and assigns, and their respective affiliates, directors, officers, employees and agents, for any liability, loss, damage, costs, fees or expenses whatsoever for injury to or death of any person whomsoever or loss or destruction of or damage (including reduction in value) to any property whatsoever arising out of or resulting from the treated effluent water used for irrigation of the Golf Course and/or Master Association Property, including, without imitation, any such liabilities resulting from odors.

Cumulative. The foregoing shall be cumulative with, and shall not limit, any and all disclosures, acknowledgments, disclaimers, waivers and releases set forth in the Purchase Agreement, Public Offering Statement, and/or in the various documents attached as exhibits respectively thereto, including, but not limited to, the Governing Documents of The Christopher Communities At Southern Highlands Golf Club Homeowners Association and the Master Association Documents.

Undersigned Purchaser hereby acknowledges and agrees to the foregoing.

_____
Signature (Purchaser)

12/1/04
_____
Date

_____
Signature (Purchaser)

_____
Date

**Christopher Homes**
9500 Hillwood Drive, Suite 200
Las Vegas, NV 89134
Tel: (702) 360-3200        Fax: (702) 233-8062



# Homeowner Service Request List

Date 02/08/2005                                                                                            **Page**    1

| | Homeowner Data | | | |
|---|---|---|---|---|

| Project | CHRISTOPHER COLLECTION I | | Plan | Cambria (Plan 2) |
|---|---|---|---|---|
| Phase | Lot 092 | Tract | Closing Date 01/18/2002  Exp. Date 01/18/2003 |

| Homeowner | Ferguson, Steven | | | |
|---|---|---|---|---|
| Co Buyer | | | Home Phone | (310) 860-9595   X cell |
| Address | 12047 Oakland Hills | | Work Phone1 | (310) 860-1212   X fax |
| City | Las Vegas | State NV   Zip 89141 | Work Phone2 | (702) 614-0606   X ho |

| Request # | Request date | Service Rep | Rep Phone | Request Type | Completion Date | Age | Appt date/time: / |
|---|---|---|---|---|---|---|---|
| 17515 | 02/12/2002 | HARVEY REYNOLDS | (702) 210-8533 | EMER | 02/15/2002 | 3 | / |

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| 001 | Torn/Cracked Tile. Rip out pan due to water going uphill. Needs to be redone. Will take 2 days. | BATHMS | TN/CK TI | MGT | 02/15/2002 | 3 |
| | *** Appointment date/time: 02/12/2002 08:00am *** | | | | | |
| 002 | Doors/Hardware. Replace french doors due to scratches during walk.  Any questions call Harvey 210-8533. | INTER. | DR/HRDW | CHRISCARP | 02/15/2002 | 3 |
| | *** Appointment date/time: 02/12/2002 12:00pm *** | | | | | |
| 003 | HVAC. Air balance thru-out especially the office area. | INTER. | HVAC | SIERRA | 02/15/2002 | 3 |
| | *** Appointment date/time: 02/12/2002 12:00pm *** | | | | | |
| 004 | Electrical. Alarm wire cut at back patio. This ticket may have been completed. Please check.  Call Harvey if any questions. 210-8533. | INTER. | ELECTRIC | EAGLE | 02/15/2002 | 3 |
| | *** Appointment date/time: 02/12/2002 12:00pm *** | | | | | |

Notes:   02/27/2002 11:16 H/O called and requested items to be done.  He is sending in list today and I will set appointment for
Friday @ 10:30 am. for Harvey.
02/26/2002 16:07 Ferguson called and Harvey called him back.

**Christopher Homes**
9500 Hillwood Drive, Suite 200
Las Vegas, NV 89134
Tel: (702) 360-3200        Fax: (702) 233-8062



# Homeowner Service Request List

Date 02/08/2005                                                                    **Page**   2

| *Homeowner Data* | (Continued) |
|---|---|

| | | | | |
|---|---|---|---|---|
| **Project** | CHRISTOPHER COLLECTION I | | **Plan** | Cambria (Plan 2) |
| **Phase** | | Lot 092 | Tract | **Closing Date** 01/18/2002 **Exp. Date** 01/18/2003 |

| | | |
|---|---|---|
| **Homeowner** | Ferguson, Steven | |
| **Co Buyer** | | **Home Phone** (310) 860-9595  X cell |
| **Address** | 12047 Oakland Hills | **Work Phone1** (310) 860-1212  X fax |
| **City** | Las Vegas        State NV   Zip 89141 | **Work Phone2** (702) 614-0606  X ho |

| Request # | Request date | Service Rep | Rep Phone | Request Type | Completion Date | Age | Appt date/time: / |
|---|---|---|---|---|---|---|---|
| 17584 | 03/04/2002 | HARVEY REYNOLDS | (702) 210-8533 | SRV | 03/08/2002 | 4 | |

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| 001 | Miscellaneous. See attached eval. | INTER. | MIS | HR | 03/08/2002 | 4 |

\*\*\* Appointment date/time: 03/04/2002
10:30am \*\*\*

**Notes:**

| Request # | Request date | Service Rep | Rep Phone | Request Type | Completion Date | Age | Appt date/time: / |
|---|---|---|---|---|---|---|---|
| 17631 | 03/12/2002 | HARVEY REYNOLDS | (702) 210-8533 | SRV | 03/21/2002 | 9 | |

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| 001 | Electrical. Go upstairs and the back of the house in the bedroom the cable outlet is in the closet.  Please check plan and put in an appropriate spot. | INTER. | ELECTRIC | EAGLE | 03/21/2002 | 9 |

\*\*\* Appointment date/time: 03/19/2002
08:30am \*\*\*

| | | | | | | |
|---|---|---|---|---|---|---|
| 002 | Painted Surface. Bad tape joint in m/bedroom please retape, retexture and paint. | BEDMS | PT SRF | T&RPAINT | 03/21/2002 | 9 |

\*\*\* Appointment date/time: 03/19/2002
08:30am \*\*\*

| | | | | | | |
|---|---|---|---|---|---|---|
| 003 | Plumbing. The scussions on the master lavs spin around and are scratching the granite when faucet is turned on.  Check all - 2) The master toilet does not flush properly and has pull up knob from top of lid of toilet. | BATHMS | PLUMBING | SILVERSTAR | 03/21/2002 | 9 |

\*\*\* Appointment date/time: 03/19/2002
08:30am \*\*\*

2213-20      000002

**Christopher Homes**
9500 Hillwood Drive, Suite 200
Las Vegas, NV 89134
Tel:  (702) 360-3200        Fax:  (702) 233-8062



# Homeowner Service Request List

Date 02/08/2005                                                                                                    **Page**    3

| *Homeowner Data* | (Continued) |
|---|---|

| Project | CHRISTOPHER COLLECTION I | | | Plan | Cambria (Plan 2) |
|---|---|---|---|---|---|
| Phase | | Lot  092 | Tract | Closing Date 01/18/2002  Exp. Date 01/18/2003 |

| Homeowner | Ferguson, Steven | | | | |
|---|---|---|---|---|---|
| Co Buyer | | | | Home Phone  (310) 860-9595 | X cell |
| Address | 12047 Oakland Hills | | | Work Phone1 (310) 860-1212 | X fax |
| City | Las Vegas | State NV  Zip 89141 | | Work Phone2 (702) 614-0606 | X ho |

Notes:     03/22/2002 12:50 No one at home for appt.  Hang tagged to call for another appt.

| Request #<br>17701 | Request date<br>04/01/2002 | Service Rep<br>HARVEY REYNOLDS | Rep Phone<br>(702) 210-8533 | Request Type<br>SRV | Completion Date Age<br>04/05/2002        4 | Appt date/time: /<br>/ |
|---|---|---|---|---|---|---|

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| 001 | Plumbing. Master Toilet won't flush correctly. | BATHMS | PLUMBING | SILVERSTAR | 04/05/2002 | 4 |
| | *** Appointment date/time: 04/03/2002 08:30am *** | | | | | |

Notes:

| Request #<br>17725 | Request date<br>04/05/2002 | Service Rep<br>HARVEY REYNOLDS | Rep Phone<br>(702) 210-8533 | Request Type<br>SRV | Completion Date Age<br>04/12/2002        7 | Appt date/time: /<br>/ |
|---|---|---|---|---|---|---|

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| 001 | Electrical. Go upstairs and the back of the house in the bedroom the cable outlet is in the closet.  Please check plan and put in an appropriate spot. | INTER. | ELECTRIC | EAGLE | 04/12/2002 | 7 |
| | *** Appointment date/time: 04/11/2002 08:30am *** | | | | | |
| 002 | Plumbing. The scussions on the master lavs spin around and are scratching the granite when faucet is turned on.  Check all of them.  2)  The master toilet does not flush properly and has pull up knob from top of lid of toilet. | BATHMS | PLUMBING | SILVERSTAR | 04/12/2002 | 7 |
| | *** Appointment date/time: 04/11/2002 08:30am *** | | | | | |
| 003 | Painted Surface. Bad tape joint in m/bedroom please retape, retexture and paint. 2)  At the wall next to the fireplace in the courtyard the wrong color paint was | BEDMS | PT SRF | T&RPAINT | 04/12/2002 | 7 |

**Christopher Homes**
9500 Hillwood Drive, Suite 200
Las Vegas, NV 89134
Tel: (702) 360-3200          Fax: (702) 233-8062



# Homeowner Service Request List

Date 02/08/2005                                                        **Page    4**

| *Homeowner Data* | (Continued) |
|---|---|

| | | | | | |
|---|---|---|---|---|---|
| **Project** | CHRISTOPHER COLLECTION I | | | **Plan** | Cambria (Plan 2) |
| **Phase** | | Lot 092 | Tract | **Closing Date** 01/18/2002 | **Exp. Date** 01/18/2003 |

| | | | | |
|---|---|---|---|---|
| **Homeowner** | Ferguson, Steven | | | |
| **Co Buyer** | | | **Home Phone** (310) 860-9595 | X cell |
| **Address** | 12047 Oakland Hills | | **Work Phone1** (310) 860-1212 | X fax |
| **City** | Las Vegas | State NV   Zip 89141 | **Work Phone2** (702) 614-0606 | X ho |

| Request # | Request date | Service Rep | Rep Phone | Request Type | Completion Date | Age | Appt date/time: / |
|---|---|---|---|---|---|---|---|
| 17725 | 04/05/2002 | HARVEY REYNOLDS | (702) 210-8533 | SRV | 04/12/2002 | 7 | / |

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| | used on edge of house. See Harvey 210-8533 - THANKS SO MUCH. | | | | | |
| | *** Appointment date/time: 04/11/2002 08:30am *** | | | | | |

Notes:

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| 001 | Painted Surface. Courtyard window frame needs touch-up paint. | EXTER. | PT SRF | T&RPAINT | 05/10/2002 | 7 |
| | *** Appointment date/time: 05/08/2002 09:00am *** | | | | | |
| 002 | Electrical. 1)  Address light box does not work.  2)  Dead plug in back yard | EXTER. | ELECTRIC | DESERTHOME | 05/10/2002 | 7 |
| | *** Appointment date/time: 05/08/2002 09:00am *** | | | | | |
| 003 | Doors/Hardware. Double doors in garage will not work.  Please fix any questions call Harvey at 210-8533. - Go this morning. | GARAGE | DR/HRDW | HARRISON | 05/10/2002 | 7 |
| | *** Appointment date/time: 05/07/2002 09:00am *** | | | | | |

Notes:

2213-20     000004

**Christopher Homes**
9500 Hillwood Drive, Suite 200
Las Vegas, NV 89134
Tel:  (702) 360-3200          Fax:  (702) 233-8062



# Homeowner Service Request List

Date 02/08/2005                                                                 **Page    5**

| | | | *Homeowner Data* | | | (Continued) |
|---|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| Project | CHRISTOPHER COLLECTION I | | | Plan | Cambria (Plan 2) |
| Phase | | Lot  092 | Tract | Closing Date 01/18/2002 | Exp. Date 01/18/2003 |

| | | | | |
|---|---|---|---|---|
| Homeowner | Ferguson, Steven | | | |
| Co Buyer | | | Home Phone | (310) 860-9595   X cell |
| Address | 12047 Oakland Hills | | Work Phone1 | (310) 860-1212   X fax |
| City | Las Vegas | State NV  Zip 89141 | Work Phone2 | (702) 614-0606   X ho |

| Request # | Request date | Service Rep | Rep Phone | Request Type | Completion Date | Age | Appt date/time / |
|---|---|---|---|---|---|---|---|
| **17934** | 05/24/2002 | HARVEY REYNOLDS | (702) 210-8533 | SRV | 05/31/2002 | 7 | / |

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| 001 | Floors-Cermaic/Marble. Fix holes in Travertine in kitchen per our visual inspection last month. - Clean floor as per our discussion and seal as necessary. | INTER. | FL CM/MR | CLOUDCARP | 05/31/2002 | 7 |
| | *** Appointment date/time: 05/30/2002 09:00am *** | | | | | |
| 002 | Plumbing. Please camera master toilet due to slow flush.  H/O has had this repaired 3 times previously - H/O thinks there is an obstruction in the line.  Does not flush like rest of toilets in the house. | BATHMS | PLUMBING | SILVERSTAR | 05/31/2002 | 7 |
| | *** Appointment date/time: 05/30/2002 09:00am *** | | | | | |
| 003 | Roof Leaks. Check roof several cracked tile. | EXTER. | ROOF LK | DAVEY | 05/31/2002 | 7 |
| | *** Appointment date/time: 05/30/2002 09:00am *** | | | | | |

Notes:

| Request # | Request date | Service Rep | Rep Phone | Request Type | Completion Date | Age | Appt date/time / |
|---|---|---|---|---|---|---|---|
| **17979** | 06/07/2002 | HARVEY REYNOLDS | (702) 210-8533 | SRV | 06/14/2002 | 7 | / |

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| 001 | Floors-Cermaic/Marble. Please seal floor ATTN: Mike | INTER. | FL CM/MR | CLOUDCARP | 06/14/2002 | 7 |
| | *** Appointment date/time: 06/10/2002 08:30am *** | | | | | |
| 002 | Plumbing. Seal shower head | BATHMS | PLUMBING | HR | 06/14/2002 | 7 |



**Christopher Homes**
9500 Hillwood Drive, Suite 200
Las Vegas, NV 89134
Tel: (702) 360-3200          Fax: (702) 233-8062

# Homeowner Service Request List

Date 02/08/2005                                                                    **Page**    6

| *Homeowner Data* | | (Continued) |
|---|---|---|

| Project | CHRISTOPHER COLLECTION I | | Plan | Cambria (Plan 2) | |
|---|---|---|---|---|---|
| Phase | Lot 092 | Tract | Closing Date 01/18/2002 | Exp. Date 01/18/2003 | |

| Homeowner | Ferguson, Steven | | |
|---|---|---|---|
| Co Buyer | | Home Phone (310) 860-9595 | X cell |
| Address | 12047 Oakland Hills | Work Phone1 (310) 860-1212 | X fax |
| City | Las Vegas          State NV   Zip 89141 | Work Phone2 (702) 614-0606 | X ho |

| Request # | Request date | Service Rep | Rep Phone | Request Type | Completion Date | Age | Appt date/time: / |
|---|---|---|---|---|---|---|---|
| 17979 | 06/07/2002 | HARVEY REYNOLDS | (702) 210-8533 | SRV | 06/14/2002 | 7 | / |

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| | *** Appointment date/time: 06/10/2002 08:30am *** | | | | | |

Notes:

| | | | Item Code | | | Age |
|---|---|---|---|---|---|---|
| 001 | Plumbing. Emergency From previous repair - Possible shower head leaking in the wall and hot and cold knobs loose.  THIS IS A REFAX WITH NEW DATE AND TIME. **************************Thanks, Go at 8:05 AM | BATHMS | PLUMBING | SILVERSTAR | 08/08/2002 | 10 |

*** Appointment date/time: 08/06/2002 08:05am ***

Notes:   08/08/2002 15:56 O Ring on back order through Moen.
08/05/2002 08:52 Ferguson called Steve C and told him to cancel the Monday appointment and Steve C. did not tell me.  Harvey went out to appointment but no one there.  Steve C. told him the appointment had been cancelled.
07/29/2002 13:31 Received a call from Min in Fergusons office and she said that she spoke to Mr. Ferguson and said he will call when he gets in town.  I asked is it a leak that would cause any damage and she said evidently not. Called Tony and Steve C. with message.  Called and left message on Harvey's phone.
07/29/2002 10:25 Spoke to Tony and he said he could not go over there and had Steve C. looked at it.   - Spoke to Rafael and he is going down there to check it out.  He will call me with the results.

2213-20       000006

**Christopher Homes**
9500 Hillwood Drive, Suite 200
Las Vegas, NV 89134
Tel:  (702) 360-3200          Fax:  (702) 233-8062



# Homeowner Service Request List

Date 02/08/2005                                                                          **Page**    7

| | *Homeowner Data* | (Continued) |
|---|---|---|

| Project | CHRISTOPHER COLLECTION I | | | Plan | Cambria (Plan 2) |
|---|---|---|---|---|---|
| Phase | | Lot 092 | Tract | Closing Date 01/18/2002  Exp. Date 01/18/2003 | |

| Homeowner | Ferguson, Steven | | |
|---|---|---|---|
| Co Buyer | | **Home Phone**  (310) 860-9595  X cell | |
| Address | 12047 Oakland Hills | **Work Phone1** (310) 860-1212  X fax | |
| City | Las Vegas        State NV   Zip 89141 | **Work Phone2** (702) 614-0606  X ho | |

| Request # 18261 | Request date 08/27/2002 | Service Rep HARVEY REYNOLDS | Rep Phone (702) 210-8533 | Request Type SRV | Completion Date 08/30/2002 | Age 3 | Appt date/time: / / |
|---|---|---|---|---|---|---|---|

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| 001 | Electrical. Chuck: Please check lights above garage and the address light as they are out again. Per Harvey R. 210-8533 | EXTER. | ELECTRIC | DESERTHOME | 08/30/2002 | 3 |

*** Appointment date/time: 08/28/2002 08:00am ***

**Notes:**  08/30/2002 08:10 Left message Courtesy call to see if work is completed.

| Request # 18320 | Request date 09/13/2002 | Service Rep HARVEY REYNOLDS | Rep Phone (702) 210-8533 | Request Type EMER | Completion Date 09/20/2002 | Age 7 | Appt date/time: / / |
|---|---|---|---|---|---|---|---|

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| 001 | HVAC. Condensor line leaking in garage - called in to Marsha Emergency - go before 3:30 PM, Thanks, | GARAGE | HVAC | SIERRA | 09/20/2002 | 7 |

*** Appointment date/time: 09/13/2002 03:30pm ***

**Notes:**

| Request # 18468 | Request date 10/23/2002 | Service Rep HARVEY REYNOLDS | Rep Phone (702) 210-8533 | Request Type SRV | Completion Date 10/25/2002 | Age 2 | Appt date/time: / / |
|---|---|---|---|---|---|---|---|

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| 001 | Fireplace. Attn: Joel.  1) Fireplace will not stay lit on the outside  - Please check all fireplaces throughout - | EXTER. | FIREPLAC | MAJORDIST | 10/25/2002 | 2 |

*** Appointment date/time: 10/24/2002 09:00am ***

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| 002 | Roofing/Skylights. Fix leak at garage lid due to dormer vent stack above garage. | EXTER. | RF/SKYLT | DAVEY | 10/25/2002 | 2 |

**Christopher Homes**
9500 Hillwood Drive, Suite 200
Las Vegas, NV 89134
Tel:  (702) 360-3200          Fax:  (702) 233-8062



# Homeowner Service Request List

Date 02/08/2005

| Homeowner Data | (Continued) |
| --- | --- |

| Project | CHRISTOPHER COLLECTION I | | Plan | Cambria (Plan 2) |
| --- | --- | --- | --- | --- |
| Phase | Lot 092 | Tract | Closing Date 01/18/2002 | Exp. Date 01/18/2003 |

| Homeowner | Ferguson, Steven | | | |
| --- | --- | --- | --- | --- |
| Co Buyer | | | Home Phone | (310) 860-9595   X cell |
| Address | 12047 Oakland Hills | | Work Phone1 | (310) 860-1212   X fax |
| City | Las Vegas | State  NV   Zip  89141 | Work Phone2 | (702) 614-0606   X ho |

| Request # | Request date | Service Rep | Rep Phone | Request Type | Completion Date | Age | Appt date/time: / |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 18468 | 10/23/2002 | HARVEY REYNOLDS | (702) 210-8533 | SRV | 10/25/2002 | 2 | / |

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
| --- | --- | --- | --- | --- | --- | --- |
| | Any questions call Harvey 210-8533. | | | | | |

*** Appointment date/time: 10/24/2002
09:00am ***

Notes:

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
| --- | --- | --- | --- | --- | --- | --- |
| 001 | Drywall. Repair 5" crack in garage ceiling from water damage - prime and paint.  Per bid $150.00 VPO submitted. | GARAGE | DRYWALL | T&RPAINT | 11/01/2002 | 8 |

*** Appointment date/time: 11/01/2002
09:00am ***

Notes:

| Request # | Request date | Service Rep | Rep Phone | Request Type | Completion Date | Age | Appt date/time: / |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 18605 | 11/27/2002 | HARVEY REYNOLDS | (702) 210-8533 | EMER | 12/06/2002 | 9 | / |

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
| --- | --- | --- | --- | --- | --- | --- |
| 001 | Plumbing. EMERGENCY - ATTN: MICHELE  The kitchen faucet was spraying everywhere so homeowner shut off at angle stop.  Please evaluate and repair as necessary.  Please call Harvey with Costs 210-8533 after work is done. GO AS SOON AS POSSIBLE Thanks. | KITCH | PLUMBING | BIG HORN | 12/06/2002 | 9 |

*** Appointment date/time:  / /    ***

**Christopher Homes**
9500 Hillwood Drive, Suite 200
Las Vegas, NV 89134
Tel: (702) 360-3200          Fax: (702) 233-8062



# Homeowner Service Request List

Date 02/08/2005                                                                                    **Page** 9

| | *Homeowner Data* | (Continued) |
|---|---|---|

| | | | |
|---|---|---|---|
| Project | CHRISTOPHER COLLECTION I | **Plan** | Cambria (Plan 2) |
| Phase | Lot 092 | **Tract** | **Closing Date** 01/18/2002  **Exp. Date** 01/18/2003 |

| | | | |
|---|---|---|---|
| Homeowner | Ferguson, Steven | | |
| Co Buyer | | **Home Phone** | (310) 860-9595   X cell |
| Address | 12047 Oakland Hills | **Work Phone1** | (310) 860-1212   X fax |
| City | Las Vegas          State NV   Zip 89141 | **Work Phone2** | (702) 614-0606   X ho |

Notes:  06/18/2003 10:01 Mr. Ferguson called and said the dishwasher was not working so I called Steve C. and he said that he would have to call GE so I called him back and gave him GE 800 number and also gave him Silver Stars number due to his saying that it was fixed before and now is leaking again and he is out of warranty so I suggested he call Silver Star gave him tele #.

| Request # | Request date | Service Rep | Rep Phone | Request Type | Completion Date | Age | Appt date/time: |
|---|---|---|---|---|---|---|---|
| 18787 | 01/23/2003 | HARVEY REYNOLDS | (702) 210-8533 | 11MON | 01/31/2003 | 8 | |

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| 001 | Plumbing. 1) Please check m/tub is still putting out sand and dirt when water is on. 2) Guest bathroom upstairs has shower and faucet control installed up side down. Please fix.  *** Appointment date/time: 01/30/2003 09:00am *** | BATHMS | PLUMBING | SILVERSTAR | 01/31/2003 | 8 |
| 002 | Doors/Hardware. 1) Door thresholds throughout need to be adjusted. Make sure there are no air gaps and may need some weatherstripping.  *** Appointment date/time: 01/30/2003 09:00am *** | INTER. | DR/HRDW | CHRISCARP | 01/31/2003 | 8 |
| 003 | Fireplace. Fireplace in living room is missing logs also set logs in other fireplaces so the have maximum (proper) operation.  *** Appointment date/time: 01/30/2003 09:00am *** | LIVING | FIREPLAC | MAJORDIST | 01/31/2003 | 8 |
| 004 | Cabinets. Replace hinges on cabinet sponge holders in kitchen area.  *** Appointment date/time: 01/30/2003 09:00am *** | KITCH | CABINETS | MERILLAT | 01/31/2003 | 8 |
| 005 | Stucco/Siding. Please check stucco (Mediterrian) where it is bubbling in courtyard by the fireplace. | EXTER. | STUCCO | GYPSUM | 01/31/2003 | 8 |

**Christopher Homes**
9500 Hillwood Drive, Suite 200
Las Vegas, NV 89134
Tel:  (702) 360-3200          Fax:  (702) 233-8062



# Homeowner Service Request List

Date 02/08/2005                                                                              **Page**  10

| Homeowner Data | (Continued) |
|---|---|

| | | | | |
|---|---|---|---|---|
| Project | CHRISTOPHER COLLECTION I | | Plan | Cambria (Plan 2) |
| Phase | Lot 092 | Tract | Closing Date 01/18/2002  Exp. Date 01/18/2003 |

| | | | |
|---|---|---|---|
| Homeowner | Ferguson, Steven | | |
| Co Buyer | | Home Phone | (310) 860-9595   X cell |
| Address | 12047 Oakland Hills | Work Phone1 (310) 860-1212   X fax |
| City | Las Vegas          State NV   Zip 89141 | Work Phone2 (702) 614-0606   X ho |

| Request # | Request date | Service Rep | Rep Phone | Request Type | Completion Date | Age | Appt date/time:  / |
|---|---|---|---|---|---|---|---|
| 18787 | 01/23/2003 | HARVEY REYNOLDS | (702) 210-8533 | 11MON | 01/31/2003 | 8 | / |

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| | *** Appointment date/time: 01/30/2003 09:00am *** | | | | | |
| 006 | Painted Surface. Exterior paint bubbling please check and repaint. | EXTER. | PT SRF | T&RPAINT | 01/31/2003 | 8 |
| | *** Appointment date/time: 01/30/2003 09:00am *** | | | | | |

**Notes:**    02/26/2003 07:52 Painting will be done - toilet will not be replaced due to nothing wrong.. Tree Brad is checking. Christian to install wood pieces on threshold. Insta-hot is being looked at by Tim Conway.
02/21/2003 14:41 Returned Mr. Ferguson call and left message that my boss would be very interested in listening to the tapes if you could get him a copy - Also please fax in list to 233-8062 and I will get another technician to take care of it.
02/21/2003 09:35 Mr. Ferguson called and said that he does not want to work with H. R. again and he has some items that are not completed and all he wants is a guarantee that if the tree dies that Christopher Homes will replace it and that he has tape recordings of harvey stating that this will be done.. Also that he would not like to have to go to an attorney or Chris Stuhmer on this item. Brad said that he would be interested in listening to the tapes if he would send a copy and for me to get a list of the items and I will send another tech as he does not want to deal with Harvey.
02/06/2003 12:29 Getting new insta hot for ferguson and the soft water is plumbed wrong so they called a guy to do that. Homeowner o.k.
02/06/2003 11:21 Mr. F. called and said that he had a leak, I called Harvey and he said to call Steve, I called Steve and he is going to take plumber over there as soon as he is finished with the Dunn leak.
02/05/2003 07:18 Steve C. called Ron at Botanical and requested a letter re:  Palm Tree - Ron said he would fax it to Faye.
02/04/2003 16:05 Mr. Ferguson called and wanted H. R. to call Him. Gave H. R. the message to call.
02/03/2003 15:05 Mr. Ferguson called and wanted H. R. to call him.  Gave H. R. the message to call Mr. Ferguson.
01/23/2003 12:39 Items that  were addressed but for record only m/bath toilet will now only flush completely when flushed w/plunger. Check and found standard. Harvey checking with Moen rep for sink stopper control lever in upstairs sink. Painting is needed where trees were removed in Courtyard near fireplace.  Harvey researching. Desert palm in front of house appears to be dying.  Botanical checked tree and it is find. S. C. to get letter from Botanical.

01/23/2003 12:17 End of year submitted before end of warranty.

2213-20          000010

**Christopher Homes**
9500 Hillwood Drive, Suite 200
Las Vegas, NV 89134
Tel: (702) 360-3200          Fax: (702) 233-8062



# Homeowner Service Request List

**Date** 02/08/2005                                                                    **Page** 11

| *Homeowner Data* | (Continued) |
|---|---|

| Project | CHRISTOPHER COLLECTION I | | Plan | Cambria (Plan 2) |
|---|---|---|---|---|
| Phase | Lot 092 | Tract | Closing Date 01/18/2002  Exp. Date 01/18/2003 |

| Homeowner | Ferguson, Steven | | |
|---|---|---|---|
| Co Buyer | | Home Phone  (310) 860-9595 | X cell |
| Address | 12047 Oakland Hills | Work Phone1 (310) 860-1212 | X fax |
| City | Las Vegas          State NV   Zip 89141 | Work Phone2 (702) 614-0606 | X ho |

| Request # | Request date | Service Rep | Rep Phone | Request Type | Completion Date Age | Appt date/time: / |
|---|---|---|---|---|---|---|
| 18888 | 02/26/2003 | Steve Commeau | (702) 210-8529 | SRV | 03/07/2003       9 | / |

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| 001 | Plumbing. 1) Per Tim - VPO $120.00 for labor only to install insta hot.  2) Please check m/toilet for 3rd time issue pending. Thanks, | INTER. | PLUMBING | SILVERSTAR | 03/07/2003 | 9 |
| | *** Appointment date/time: 03/07/2003 09:00am *** | | | | | |
| 002 | Doors/Hardware. Per Chris - Please check threshold strips and install 3 to 4 new ones. | INTER. | DR/HRDW | CHRISCARP | 03/07/2003 | 9 |
| | *** Appointment date/time: 03/07/2003 09:00am *** | | | | | |
| 003 | Painted Surface. Per Bill Staten ok'd - Touch up exterior door jambs at base where peeling.  Check to make sure that the base is done.  Thanks, | INTER. | PT SRF | T&RPAINT | 03/07/2003 | 9 |
| | *** Appointment date/time: 03/07/2003 09:00am *** | | | | | |
| 004 | Cabinets. 1) Dave removed sponge trays at kitchen sink to replace them with new ones, please do so.  Thanks, | KITCH | CABINETS | MERILLAT | 03/07/2003 | 9 |
| | *** Appointment date/time: 03/07/2003 09:00am *** | | | | | |

**Notes:**

02/26/2003 08:34 Items that need to be completed from end of year.  Any questions or problems please call Steve C. 210-8529 before the appointment. Thanks,.

**Christopher Homes**
9500 Hillwood Drive, Suite 200
Las Vegas, NV 89134
Tel:  (702) 360-3200                    Fax:  (702) 233-8062



# Homeowner Service Request List

Date 02/08/2005                                                                 **Page**   12

| *Homeowner Data* | (Continued) |
|---|---|

| Project | CHRISTOPHER COLLECTION I | | | Plan | Cambria (Plan 2) | |
|---|---|---|---|---|---|---|
| Phase | | Lot  092 | Tract | Closing Date | 01/18/2002  Exp. Date | 01/18/2003 |

| Homeowner | Ferguson, Steven | | | | |
|---|---|---|---|---|---|
| Co Buyer | | | Home Phone | (310) 860-9595 | X cell |
| Address | 12047 Oakland Hills | | Work Phone1 | (310) 860-1212 | X fax |
| City | Las Vegas | State NV  Zip 89141 | Work Phone2 | (702) 614-0606 | X ho |

| Request # | Request date | Service Rep | Rep Phone | Request Type | Completion Date | Age | Appt date/time: |
|---|---|---|---|---|---|---|---|
| 18922 | 03/07/2003 | Steve Commeau | (702) 210-8529 | SRV | 03/24/2003 | 17 | |

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| 001 | Plumbing. Attn: Rafael - Please pull m/bath toilet as not working properly. Whomever is responsible will pay bill. Any questions call Steve C. 210-8529. | BATHMS | PLUMBING | SILVERSTAR | 03/24/2003 | 17 |

*** Appointment date/time: 03/11/2003 09:00am ***

Notes:

| Request # | Request date | Service Rep | Rep Phone | Request Type | Completion Date | Age | Appt date/time: |
|---|---|---|---|---|---|---|---|
| 18949 | 03/25/2003 | Steve Commeau | (702) 210-8529 | SRV | 04/07/2003 | 13 | |

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| 001 | Plumbing. Put in upgraded insta hot from 40 to 60 cup - VPO for $280.00 submitted. Please do on 4-3-03 at 9:00 AM - Any questions call Steve C. 210-8529. | GARAGE | PLUMBING | SILVERSTAR | 04/07/2003 | 13 |

*** Appointment date/time: 04/03/2003 09:00am ***

Notes:

**Christopher Homes**
9500 Hillwood Drive, Suite 200
Las Vegas, NV 89134
Tel: (702) 360-3200          Fax: (702) 233-8062



# Homeowner Service Request List

Date 02/08/2005                                                              **Page** 13

| *Homeowner Data* | (Continued) |
|---|---|

| Project | CHRISTOPHER COLLECTION I | | Plan | Cambria (Plan 2) |
|---|---|---|---|---|
| Phase | Lot 092 | Tract | Closing Date 01/18/2002  Exp. Date 01/18/2003 |

Homeowner   Ferguson, Steven
Co Buyer
Address      12047 Oakland Hills                              Home Phone  (310) 860-9595   X cell
City         Las Vegas            State NV  Zip 89141         Work Phone1 (310) 860-1212   X fax
                                                             Work Phone2 (702) 614-0606   X ho

| Request # | Request date | Service Rep | Rep Phone | Request Type | Completion Date | Age | Appt date/time: / |
|---|---|---|---|---|---|---|---|
| 19002 | 04/09/2003 | Steve Commeau | (702) 210-8529 | SRV | 04/14/2003 | 5 | / |

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| 001 | Plumbing. 1) Insta hot leaks from the new install. 2) M/toilet still stops up. 3) Hot water faucet handle is loose in m/bath. Please fix, Any questions call Steve C. 210-8529. | INTER. | PLUMBING | SILVERSTAR | 04/14/2003 | 5 |
| | *** Appointment date/time: 04/11/2003 09:00am *** | | | | | |
| 002 | Grout/Caulk. Regrout threshold/tile about 3 feet by double french doors at entry. Grout is C-Cure #51 sand. Any questions call Steve C. 210-8529 | ENTRY | GROUT/CA | ALBRICARP | 04/14/2003 | 5 |
| | *** Appointment date/time: 04/11/2003 09:00am *** | | | | | |

Notes:

| Request # | Request date | Service Rep | Rep Phone | Request Type | Completion Date | Age | Appt date/time: / |
|---|---|---|---|---|---|---|---|
| 19068 | 04/28/2003 | Steve Commeau | (702) 210-8529 | EMER | 04/28/2003 | 0 | / |

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| 001 | Plumbing. Emergency call on 4-26-03 cost of call and new garbage disposal. Cost of $350.00 approved. Thanks, Joe & Nicole | KITCH | PLUMBING | SILVERSTAR | 04/28/2003 | 0 |
| | *** Appointment date/time: 04/28/2003 01:00am *** | | | | | |

**Christopher Homes**
9500 Hillwood Drive, Suite 200
Las Vegas, NV 89134
Tel:  (702) 360-3200          Fax:  (702) 233-8062



# Homeowner Service Request List

**Date** 02/08/2005                                                                 **Page**  14

| Homeowner Data | | (Continued) |
|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| Project | CHRISTOPHER COLLECTION I | | | **Plan** | Cambria (Plan 2) |
| Phase | | Lot  092 | Tract | **Closing Date** 01/18/2002 | **Exp. Date** 01/18/2003 |

| | | | | |
|---|---|---|---|---|
| Homeowner | Ferguson, Steven | | | |
| Co Buyer | | | **Home Phone** | (310) 860-9595   **X** cell |
| Address | 12047 Oakland Hills | | **Work Phone1** (310) 860-1212 | **X** fax |
| City | Las Vegas | **State** NV   **Zip** 89141 | **Work Phone2** (702) 614-0606 | **X** ho |

Notes:   05/06/2003 10:11 Shannon called E. Sentry and said they could go out on Thurs. 1:00 PM so I called Mr. Ferguson and
left another message that I would need to confirm the appt.
05/06/2003 09:47 Mr. Ferguson called and said that Eagle S. was out and three of his windows need a ITI recessed
micro sensors #6074195 White.  I said that he is concerned that his home will not be secure due to his leaving this
weekend.  Shannon said the home is secure they changed some things around and Mr. Ferguson could call him if he
wanted to.  I left a message for Mr. Ferguson with the tele#.  I also called S. C. to let him know.
04/28/2003 09:12 This was an emergency call on 4-26-03

| Request # | Request date | Service Rep | Rep Phone | Request Type | Completion Date | Age | Appt date/time:   / |
|---|---|---|---|---|---|---|---|
| 19104 | 05/08/2003 | Steve Commeau | (702) 210-8529 | SRV | 05/16/2003 | 8 | / |

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| 001 | Plumbing. ATTN: Rafael Snake m/toilet upstairs due to grout in drain and repair. Also shower handle needs new plastic insert broken Kohler master shower due to being put in backwards. Give Steve C. costs 210-8529.<br><br>\*\*\* Appointment date/time: 05/16/2003 09:00am \*\*\* | BATHMS | PLUMBING | SILVERSTAR | 05/16/2003 | 8 |

Notes:

| Request # | Request date | Service Rep | Rep Phone | Request Type | Completion Date | Age | Appt date/time:   / |
|---|---|---|---|---|---|---|---|
| 19206 | 06/12/2003 | Steve Commeau | (702) 210-8529 | SRV | 07/03/2003 | 21 | / |

| Item | Description | Room Code | Item Code | Subcontractor | Compl. Date | Age |
|---|---|---|---|---|---|---|
| 001 | Electrical. Add power from garage door opener to corner of garage - punch thru and add box on outside with w. p. outlet. This power to be run to conduit .  VPO for $325.00 submitted<br><br>\*\*\* Appointment date/time: 06/18/2003 11:00am \*\*\* | GARAGE | ELECTRIC | DESERTHOM E | 07/03/2003 | 21 |

Notes:

*From the Desk of*
## *Steven M. Ferguson*

*1 310 - 860 -959,*
*407 8629*
*310 - 466 -*
*423 )*

April 1, 2003

**Sent Via Facsimile (702) 360-4293 & U.S. Mail**

Christopher Stuhmer
Christopher Homes
9500 Hillwood Drive
Las Vegas, Nevada 89121

Dear Mr. Stuhmer:

I have repeatedly called your office and left messages for you to return my phone calls and have not received any response from you personally.

It is now over one year and the issues of repairs of defective workmanship with my home, located at 12047 Oakland Hills Drive at Southern Highlands, have still not been resolved. I have extended to you every patience and courtesy and have waited patiently for a return call from you and have apparently been ignored.

Be advised, that should I not receive a return call from you personally with in the next five days in order to finally resolve the issues at hand I will seek both legal and administrative redress for your failure to adhere to your express warranty and customer service policy.

Sincerely,

Steven M. Ferguson

Cc: Cochran, Cherry, Givens, Smith & Sistrunk /Johnnie L. Cochran Jr. Esq.

Cc: Gary Goett



*92*

*April 7, 2003*

*Sent Certified & U. S. Mail*

*Mr. Steven M. Ferguson*
*12047 Oakland Hills Drive*
*Las Vegas, Nevada 89141*

*Dear Mr. Ferguson:*

*Thank you for your recent letter dated April 1, 2003. You stated that it is over one year that issues of repairs have not been resolved. We have looked thru our file and show that nothing is open other than the issue of the palm tree replacement.*

*Please send to Christopher Homes in writing at the above address or fax the Customer Service Department at 702-233-0862 any issues that you feel have not been resolved. Thank you for your letter and we are looking forward to hearing from you.*

*Sincerely,*

*Brad M. Martin*
*Director of Operations*

*Cc: Steve Commeau, Warranty Technician*
*      File*

9500 Hillwood Drive • Suite 200 • Las Vegas, Nevada 89134 • (702) 360-3200 • Fax: 360-3232

ALBERT G. MARQUIS
PHILLIP S. AURBACH
WILLIAM A. LEVY
AVECE M. HIGBEE
DALE A. HAYES
JOHN E. DAWSON
TERRY A. COFFING
JAY YOUNG
SCOTT A. MARQUIS
JACK CHEN MIN JUAN
FRANK M. FLANSBURG III
MARY J. DRURY
DEVERIE J. CHRISTENSEN

CRAIG R. ANDERSON
LEE I. IGLODY

TERRY A. MOORE
DAVID A. COLVIN
MICAH S. ECHOLS
DONALD G. MARTIN
ANDREW L. REMPFER
GERALDINE BARRETTO-KO
JAMIE S. COGBURN
DALE A. HAYES, JR.
NICHOLAS D. CROSBY
NICHOLAS D. DRADER*
JULIE A. WHITMAN

JOHN M. SACCO
    OF COUNSEL
*Admitted only in WA

# MARQUIS & AURBACH

## ATTORNEYS AT LAW

direct line: (702) 942-2154
email: fflansburg@marquisaurbach.com

February 17, 2005


Ian E. Silverberg, Esq.
Hardy Law Group
96 & 98 Winter Street
Reno, NV 89503


Re:    Christopher Homes adv. Ferguson
       <u>Our File No. 2213-20</u>

Dear Mr. Silverberg:

       Thank you for taking the opportunity to discuss Mr. Ferguson's complaint. As we discussed, this law firm represents the interest of J. Christopher Stuhmer individually and Southern Highlands/Christopher Homes I, LLC.

       During our telephone call, we discussed Mr. Ferguson's complaint as it is drafted. I expressed concern over the allegations of the complaint because it is unclear as to what Mr. Ferguson is alleging against Southern Highlands/Christopher Homes I, LLC, or Mr. Stuhmer individually. Specifically against Mr. Stuhmer, there are no allegations that addressed any wrongdoing as a result of Mr. Stuhmer's actions or omissions. To avoid filing a motion to dismiss, I asked if you would be amending the complaint to provide some clarification. It is now my understanding that you intend to amend the complaint on short order.

       Although I know that you intend to amend the complaint to include allegations against Mr. Stuhmer, I still fail to see the relevance of Mr. Stuhmer's presence in this litigation. In our conversation, I believe it was clear that the central issue in this lawsuit (as far as you are concerned) is the Fair Housing Act. Based upon our discussions, it is my understanding that there will be allegations concerning refusal to make repairs to Mr. Ferguson's residence (presumably when he still owned the residence) that were the result of racial animus, violating the Fair House Act. Since Mr. Stuhmer did not individually build Mr. Ferguson's home, Mr. Stuhmer did not individually warrant Mr. Ferguson's home, and Mr. Stuhmer was not individually responsible for making any potential repairs to Mr. Ferguson's home, I still fail to see how Mr. Stuhmer's presence in this lawsuit is justified. Moreover, I have a two inch thick file of all the repairs made by Southern Highlands/Christopher Homes I, LLC to Mr. Ferguson's home (extending over a year) at his request.

Ian E. Silverberg, Esq.
February 17, 2005
Page 2

Thus, I would respectfully request that either in the amended complaint or in follow up correspondence to me that you identify specifically what Mr. Stuhmer's role is alleged to be, including his alleged actions or omissions toward Mr. Ferguson.  Without that specificity of information, I will have no other choice but to move forward with a motion to dismiss.

While we will be accepting service on behalf of Southern Highlands/Christopher Homes I, LLC and J. Christopher Stuhmer, it is my understanding that no response to that complaint will be necessary.  From our conversation, I understand that I have an open extension until the amended complaint is submitted to my office.  Once the amended complaint is submitted to my office, I will provide a response within 20 days.

In the end, I believe that we should all work toward Judge Mahan's stated goal of distilling out the proper parties to this lawsuit.  Based upon the allegations and our conversations today, I fail to see how Mr. Stuhmer would be a proper party under any conceivable set of facts.  Toward that end, I would respectfully request that you consider not including Mr. Stuhmer in the amended complaint unless you have specific information about his alleged individual, personal activities and omissions.  Should this letter not meet with your agreement or should you wish to clarify any of my misunderstandings, feel free to contact me.  Otherwise, I will presume that we will accept service of the original complaint, not respond to the original complaint, and await service of the amended complaint.

Sincerely,

MARQUIS & AURBACH

John M. Sacco, Esq. and
Frank M. Flansburg III, Esq.

FMF/ech

cc:   Steve Hackney
      Christopher Stuhmer
      Mark E. Ferrario, Esq.
      David G. Johnson, Esq.

M&A:02213-020 299491.1 021705 10:12