# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| STEVEN FERGUSON, | ) |
|  Plaintiff, | ) Case No. 2:05-cv-0103-BES (PAL) |
| vs. | ) **ORDER** |
| SOUTHERN HIGHLANDS GOLF CLUB, LLC, et al., | ) (Plaintiff's M/Strike - #75) |
|  | ) (Defendants' M/Strike & For Leave - #97) |
|  Defendants. | ) |

This matter is before the court on Plaintiff's Motion to Strike Confidential and Improperly Obtained Documents (#75). Defendants Southern Highlands/Christopher Homes, LLC and Christopher Stuhmer ("Homes Defendants") filed an Opposition (#82), as did defendants Southern Highlands Golf Club, LLC, Garry V. Goett, and Jay Beckman ("Club Defendants") (#83). The Club Defendants filed an Errata (#95) correcting a citation error in their Opposition (#83). The plaintiff filed a Reply (#92), and the Club Defendants filed a Surreply (#98). Additionally, the plaintiff filed a Supplement to Motion to Strike (#103), and the Club Defendants filed a Response (#100). Also before the court is the Club Defendants' Motion to Strike Reply to Opposition to Strike Confidential and Improperly Obtained Documents or in the Alternative, Motion for Leave to File Surreply (#97).

## BACKGROUND

This is an action for intentional infliction of emotional distress, breach of contract, and breach of the covenant of good faith and fair dealing. The complaint (#1) in this matter was first filed February 1, 2005.

**I.    The Disputed Transcripts**

In his Motion to Strike, the plaintiff complains that the defendants obtained a copy of

1  confidential transcripts ("the California transcripts") of the plaintiff's paternity hearings, in case no.
2  BF020175.  The California transcripts include five separate transcripts of five separate hearings held
3  before the Honorable Robert A. Schnider of the Superior Court of California for the County of Los
4  Angeles.  The hearings are dated April 23, June 5, August 19, August 21, and September 3, 2002.  Each
5  of the five transcripts bears the same case number, BF020175.  The California transcripts are attached
6  to the Club Defendants' Supplement to Motion to Dismiss and/or for Summary Judgment (#54).
7  Following oral argument on a series of dispositive motions in which the District Judge noted the
8  transcripts had not been authenticated in accordance with the Ninth Circuit's decision in Orr v. Bank of
9  America, 285 F.3d 764 (9th Cir. 2002), the defendants obtained and filed certified copies of the
10 transcripts, which were delivered in a sealed envelope from the California court reporter who prepared
11 them, with this court (#86).

12      Plaintiff's motion to strike argues he does not know how the California transcripts were
13 obtained, but objects to the defendants referring to them, quoting from them, or using them for any
14 purpose, including impeachment at trial.  Plaintiff seeks an order "striking the transcript" and
15 precluding the defendants from using them for any purpose, including impeachment, in this case.
16 Plaintiff also requests that the court strike any document using or referring to the California transcripts,
17 but has not identified any specific documents or pleadings which have used or referred to them.  During
18 oral argument, counsel for plaintiff acknowledged that portions of the transcripts have been quoted in
19 papers filed with the Ninth Circuit on interlocutory appeal of one or more of the District Judge's orders.

20      Attached to the motion to strike is a copy of an order by Judge Pro Tem Robert Schnider finding
21 that the California paternity case was a "confidential case" and that the court reporter's transcript was
22 supplied to counsel, H. Elizabeth Harris, in error.  The order directed the return of the original
23 transcript, dated August 21, 2002, and any copies made.  The order also restrained the use of the
24 transcript in any other proceeding.  A copy of the minute order was mailed to H. Elizabeth Harris, Gary
25 K. Olsen, California counsel for Mr. Ferguson, and Felicia Ford, the petitioner.  Plaintiff's moving
26 papers do not disclose who Ms. Harris represented, and the transcripts which have been filed under seal
27 with the court contained no reference to her.  Additionally, plaintiff does not describe under what
28 circumstances this order was entered.  The order is not certified or otherwise authenticated.

1    In addition to seeking an order striking the transcripts themselves and any use of them, plaintiff's motion to strike seeks sanctions against the defendants if they obtained the transcripts knowing they were marked confidential. (Mot. at 2:9-11.)

Defendants respond that they first learned of the California transcripts' existence after the Club Defendants' counsel, Tami Cowden, saw a reference to them in a verified complaint filed in the U.S. District Court for the Central District of California. (Aff. of Tami D. Cowden, attached as Exhibit "A" to defendants' Opposition (#83), ¶6.) Ms. Cowden indicates that she contacted Stephen Welk at the U.S. Attorney's Office, who put her contact with Dan Parker, an agent with the Federal Bureau of Investigation ("FBI"), who ultimately gave her a copy of the California transcripts.[1] (Id., ¶5.) The defendants later obtained a certified copy of the California transcripts from the court reporter, which they lodged with this court under seal on September 20, 2005. (Club Defendants Opp. at 5:n.4.)

In his Supplement (#103), the plaintiff alleges that the Club Defendant's administrative assistant obtained the certified copy of the California transcripts from the court reporter by falsely claiming that her firm was representing Felicia Ford, the plaintiff in case no. BF020175. The Club Defendants respond that at no time have they ever claimed to represent Felicia Ford; instead, they stated that the firm's administrative assistant provided the court reporter with a scanned copy of the transcripts obtained from the FBI in an effort to expedite the process of obtaining a certified copy. The Club Defendants also point out that because the court reporter clearly forwarded the transcripts at issue to counsel for the Club Defendants in Las Vegas, the court reporter was obviously not mislead.

## II.    The Parties' Arguments

In his Motion to Strike, the plaintiff argues that the defendants are impermissibly using the California transcripts and quoting portions of the transcripts out of context for the purpose of impeaching him. (Mot. at 1:5-16.) The plaintiff believes that this situation is akin to an attorney using

---

[1] Ms. Cowden's affidavit refers to transcripts attached as exhibit "B." Exhibit "B" to the Opposition (#83) is a transcript of a hearing before Judge Mahan in this case on the defendants' motions to dismiss and for summary judgment, not the California transcripts. A review of the court record reflects that Ms. Cowden's affidavit attached to the Opposition (#83) is a copy of an affidavit attached to the Club Defendants' Supplement to Motion to Dismiss and/or for Summary Judgment (#54). Attachment "B" to the Supplement (#54) contains a copy of the California transcripts.

confidential information from a prospective client obtained during an initial consultation against that person in a later court action. (Mot. at 2:1-8.)

The Homes Defendants and the Club Defendants each filed oppositions. Both argue that judicial records are presumptively publicly accessible and that the plaintiff bears the burden of showing that documents should remain under seal. The Home Defendants analogize the present situation to that in <u>Omaha Indemnity Co. v. Royal American Managers, Inc.</u>, 140 F.R.D. 398 (W.D. Mo. 1991) in which a court conditioned using deposition transcripts protected by a civil protective order for the impeachment of a witness upon the witness choosing to testify. The Club Defendants are skeptical about the authenticity of the order, both because they do not believe the plaintiff, and because the court reporter has twice provided them with a copy of the official transcripts, one of which was certified and filed with this court. (Club Defendants' Opp. at 5:n.4.) In the alternative, they argue that if the order is indeed genuine, it cannot restrict all public access to the transcripts – even if that was Judge Schnider's intent when he wrote it – because they were not a party to the dispute which resulted in the entry of the order, and are, therefore, not bound by it. (Club Defendants Opp. at 7:1-14.) The Club Defendants contend that the use of these transcripts, confidential or not, is analogous to the use of statements obtained in violation of <u>Miranda</u> which may not be introduced against a defendant in a criminal case in the case in chief, but may be introduced to impeach a defendant if he testifies in a manner inconsistent with his statement at trial. (Club Defendants Opp. at 8:1-10.)

In his reply, plaintiff argues for the first time, that California Family Code § 17212(b)(1) makes the California transcripts confidential and not publicly accessible. (Repl. at 2:10-17.) He further argues that California Family Code § 17212(e) makes knowing unauthorized use of the transcripts a misdemeanor, and suggests that 18 U.S.C. § 1905 may make FBI agent Dan Parker's distribution of the transcript to the defendants a crime. (Repl. at 2:18-3:9.) Responding to the defendants' oppositions, he argues that <u>Omaha Indemnity</u> does not apply to this situation because it dealt with a civil protective order, not a statutory restriction. (Repl. at 4:8-13.) Furthermore, he believes that even if the case law allows the transcripts to be used for impeachment, the defendants are the ones who bear the burden of showing why the statutory protection should be lifted. (Repl. at 4:13-19.) Finally, he seeks sanctions including attorney's fees for bringing his Motion. (Repl. at 4:20-23.)

**DISCUSSION**

I.    **Confidentiality of Court Records**

The plaintiff's motion to strike relies on two cases which are wholly inapposite to the facts of the case at bar. The Banner v. Flint decision plaintiff cites involved a lawyer who was sanctioned for violating a Michigan Rule of Professional Conduct for disclosing the confidences and secrets of a person who consulted with him as a potential client. 99 Fed. Appx. 29 (6th Cir. 2004). The Grove Fresh decision involved a federal civil contempt conviction and a finding of Rule 11 sanctions against an attorney for violating multiple orders of the trial judge requiring confidentiality. The attorney made multiple disclosures of materials previously designated as confidential to generate unfavorable publicity against the opposing party in direct violation of the trial court's orders and had been repeatedly warned by the trial court about his attempts to circumvent his orders prohibiting certain disclosures. Grove Fresh Distributors, Inc. v. John Labatt, Ltd., 888 F. Supp. 1427 (N.D. Ill. 1995).

Plaintiff's reply brief cited a California statutory provision which he claims, for the first time, precludes the defendants from making any use of the transcripts of his paternity action at issue here. California Family Code § 17212(b)(1) provides in pertinent part that:

> Except as provided in subdivision (c), all files, applications, papers, documents, and records established or maintained by any public entity pursuant to the administration and implementation of the child and spousal support enforcement program . . . shall be confidential, and shall not be open to examination or released for disclosure for any purpose not directly connected with the administration of the child and spousal support enforcement program. No public entity shall disclose any file, application, paper, document, or record, or the information contained therein, except as expressly authorized by this section.

Section 17212(c) limits authorized use of documents made confidential by section b to those connected to the administration of the child and spousal support enforcement program, those affected by the program, and law enforcement. See also Cal. Code Regs. tit. 22, § 111440. Section 17212(b)(1) does not define the term "public entity," plaintiff did not provide the court with any authority on the issue,

and the court could not find a definition elsewhere in the California Family Code. Without defining the term "public entity," the court cannot ascertain whether this statutory provision applies to courts, or, as the Club Defendants argue, only to administrative agencies charged with overseeing child and spousal support enforcement programs. However, the court's review of the transcript of the June 5, 2002 hearing in the California court indicates that a representative of the Child Support Services Department was present and requested to be excused from further proceedings. Judge Schnider made a finding that the Department of Child Support Services declined to appear and that the petitioner, Ms. Ford, was represented by counsel and granted the Department's request that it need not appear in further proceedings. (Docket #86, 6/5/02 Transcript, pp. 12-13.) Thus, it seems clear that the paternity action was not brought by a public entity pursuant to the administration and implementation of a child and spousal support program. As such, the statutory provision cited by plaintiff, § 17212(b)(1), would not appear to apply to these transcripts.

The court's research did, however, uncover § 7643(a) which provides in pertinent part that in paternity cases,

> all papers and records, other than the final judgment, pertaining to the action or proceeding, whether ***part of the permanent record of the court*** or of a file in a public agency or elsewhere, are subject to inspection only in exceptional cases upon an order of the court for good cause shown.

(emphasis added) Unlike § 17212(b)(1), § 7643(a) clearly applies to court records, and specifically to paternity cases. Importantly, the statute makes such records subject to inspection only in exceptional circumstances by order of the court on good cause shown. Thus, the fact that Judge Schnider's order in the paternity case, no. BF020175, made a finding that the action was a "confidential case" and that the court reporter's transcript of the August 21, 2002 hearing was supplied to Ms. Harris in error does not limit the applicability of the statute to this transcript or Ms. Harris. Section 7643(a) makes all papers and records in a paternity action, other than the final judgment, unavailable for public inspection except in exceptional cases upon an order of the court for good cause shown. That Judge Schnider did not cite § 7643(a) in his order or that the defendants in this case were not subject to his order does not alter the effect of the statute. Section 7643(a) applies to all papers and records, including records of the court,

1  not just the August 21 transcript or the person restrained from using it in Judge Schnider's order.  The
2  statute makes an exception to this rule for "the parties to the action and their attorneys."  § 7643(b).
3  The  defendants in this case clearly do not fall within these exceptions.

4  **II.     Common Law Right of Access to Judicial Records**

5          The Ninth Circuit, like several other courts of appeal, recognizes a common-law right of access
6  to judicial records.  Valley Broadcasting Company v. U.S.D.C., 798 F.2d 1289, 1293 (9th Cir. 1986).
7  "The common-law right of access has historically developed to accomplish many of the same purposes
8  as are advanced by the first amendment.  For example, courts have recognized that exercise of the right
9  helps the public keep a watchful eye on public institutions, and the activities of government."  (internal
10 citations omitted.)  However, the common-law right of access to judicial records, is not absolute, and is
11 not entitled to the same level of protection afforded constitutional rights.  Id. (citing Nixon v. Warner
12 Communications, Inc., 435 U.S. 589, 597-98 (1978).)

13         In the Valley Broadcasting decision, the court was asked to determine the scope and extent of
14 the common-law right of access in the context of a criminal case in which the trial court denied Valley
15 Broadcasting's request for access to a copy of all evidence in the criminal trial, including audio and
16 video tapes.  The Ninth Circuit concluded that the test adopted by the Seventh Circuit in United States
17 v. Edwards, 672 F.2d 1289 (7th Cir. 1982), appropriately balanced the competing interests at stake.
18 The court found that factors such as promoting the public's understanding of the judicial process and
19 significant public events justified creating a "strong presumption" in favor of allowing access.
20 Militating against public access to judicial records are such factors as the likelihood of improper use,
21 including publication of scandalous, libelous, pornographic or trade secret materials, interference with
22 fair trial rights, and residual privacy rights.  The Ninth Circuit held that the district court must weigh the
23 competing interests advanced by the parties in the light of the public interest and the duty of the courts.
24 The court cited the Seventh Circuit's decision in Edwards with approval:

25             . . . we hold there is a strong presumption in support of the common-law
26             right to copy and inspect the judicial records.  Where there is a clash
27             between the common-law right of access and a defendant's constitutional
28             right to a fair trial, a court may deny access, but only the basis of

articulable facts known to the court, not on the basis of unsupported hypothesis or conjecture. . . . We stress that it is vital for a court clearly to state the basis of its ruling, so as to promote appellate review of whether relevant factors were considered and given appropriate weight.

798 F.2d 1289, 1293, quoting, United States v. Edwards, supra, 762 F.2d 1289, 1294.

In this case, the general presumption that judicial records are publicly accessible applies. However, the California Legislature made a determination that files and records of certain categories of cases, specifically paternity cases, are subject to inspection only in exceptional cases upon an order of the court for good cause shown. The court accepts the representation of counsel for the Club Defendants that the transcripts at issue here were obtained through contact with Stephen R. Welk, an Assistant U.S. Attorney from the United States Attorney's Office ("AUSA"), who was counsel for plaintiff in a civil forfeiture action pending in the Central District of California. Access to the federal court PACER system confirms that a verified complaint for forfeiture was filed by the United States against the real property located at 12047 Oakland Hills Drive, Enterprise, Nevada, case number CV-03-6728 WMB(RnBx). This is the home in Southern Highlands where plaintiff's complaint in the case at bar alleges he has been a resident since December 2001, and that he purchased the home to "enjoy the benefits of residency . . . including . . . membership in the Southern Highlands Golf Club." (Compl. (#1) ¶12, 14.)

The verified complaint in the forfeiture action refers to testimony provided by Ferguson on August 21, 2002 in which he testified that the defendant property belonged to Global Venture Group, Inc., and its investors, and that he had no ownership interests in Global. After reviewing ¶ 16 of that verified complaint, and the transcript of the August 21, 2002 hearing in plaintiff's paternity action, it seems clear the U.S. Attorney's Office civil forfeiture division had a copy of the transcript and used it in connection with their civil forfeiture action. Thus, the court finds the representation of counsel for Club Defendants credible that they obtained the transcripts at issue after contacting Stephen Welk, the AUSA prosecuting the civil forfeiture action, who put them in touch with the FBI agent who provided a copy of the transcripts.

The court is not in a position to know how, or under what circumstances the U.S. Attorney's

1. Office and FBI obtained these transcripts. The transcripts of the California paternity action have been placed in the record in this case by counsel for the Club Defendants in a Supplement to Motion to Dismiss and/or for Summary Judgment (#54). They have been on file since June 6, 2005. The August 21 transcript was cited to the District Judge in oral arguments on the motion to dismiss and for summary judgment. References to these transcripts permeate this record and were included in the record on appeal to the Ninth Circuit. Plaintiff did not object to the transcripts or attempt to limit their use in these proceedings until filing the instant motion on September 1, 2005 after remand from the Circuit, and has made no attempt to identify the pleadings and papers in this record which cite, refer or attach the transcripts. Where, as here, plaintiff did not timely object to use of the transcripts or move to strike earlier, and the transcripts have been part of the public record for so many months, with no objection from the plaintiff, the strong presumption in favor of public access to judicial records outweighs the plaintiff's interests in maintaining the transcripts as confidential. Given the extent of their widespread dissemination and disclosure without prior objection, continuing to have these judicial records publicly accessible will promote the public's understanding of the judicial process in this case. The court has carefully reviewed each of the five transcripts on file and found no reference to the identity of the minor child or information about the paternity action that would interfere with the parties' fair trial rights or privacy rights. Accordingly, having reviewed and considered the matter,

**IT IS ORDERED:**

1. Plaintiff's Motion to Strike (#75) is DENIED.
2. Defendants' Motion to Strike or In the Alternative for Leave to File Surreply (#97) is GRANTED in part and DENIED in part. The motion to strike is DENIED, the motion for leave to file surreply is GRANTED.

Dated this 23rd day of December, 2005.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE